**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CARMEL SPITERI,

                    *Plaintiff,*

    *versus,*

JOHN LEO RUSSO; ARTHUR GEORGE TRAKAS; HONOURABLE SUPREME COURT JUDGE RICARDO CAMACHO, *sued in his official capacity only*; NEW YORK STATE GOVERNOR, HONOURABLE ANDREW M. CUOMO, *sued in his official capacity only*; NEW YORK STATE SEX OFFENDER BOARD OF EXAMINERS COMMISSIONER MICHAEL C. GREEN, *sued in his official capacity only*; THE NEW YORK STATE DIVISION OF CRIMINAL JUSTICE SYSTEM DIRECTOR, MICHELLE MULLIGAN, *sued in his official capacity only*, NEW YORK STATE; NEW YORK CITY POLICE DEPARTMENT SEX OFFENDER UNIT & Does 1-10, *Inclusive*,

                  *Defendants.*

---

CARMEL A. SPITERI
c/o Carealin Snartahvan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-84608
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorklrussotrakaslawsuit@gmail.com

Case No.: **12-CV-2780(MKB)(RM)**

# FIRST AMENDED COMPLAINT
### (Pursuant to Fed.R.Civ.P Rule 15)

**First Claim for Relief**
**(Unjust Enrichment, Fraud, Deceit and Misrepresentation)(Against Defendant Trakas)**

**Second Claim for Relief**
**(Liability Under-thirteenth Amendment to the United States Constitution)(Against defendant Trakas)**

**Third Claim for Relief**
**(Liability for Legal Malpractice)(Against defendant Trakas)**

**Fourth Claim for Relief**
**(Liability under Fair Labor Standards Act-** *Title 29 United States Code* **§ 201)(Against defendant Trakas)**

**Fifth Claim for Relief**
**(Unjust Enrichment, Fraud, Deceit and Misrepresentation)(Against defendant Russo)**

**Sixth Claim for Relief**
**(Liability Under-thirteenth Amendment to the United States Constitution)(Against Attorney Russo)**

**Seventh Claim for Relief**
**(Liability for Legal Malpractice)(Against Attorney Russo)**

**Eighth Claim for Relief**
**(Liability under Fair Labor Standards Act-** *Title 29 United States Code* **§ 201)(Against defendant Russo)**

---

CARMEL A. SPITERI
c/o Genelin Spartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.469.1508
Em: newyorkrussotrakaslawsuit@gmail.com



**Ninth Claim for Relief**
**(Violations of Rico, Title 18 United State Code § 1962(c))(Against Rico defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas)**

**Tenth Claim for Relief**
**(Conspiracy to Violate Rico, Violation of 18 U.s.c. § 1962(d))(Against Rico defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas)**

**Eleventh Claim for Relief**
**(Civil Conspiracy)(Against Rico defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas)**

**Twelfth Claim for Relief**
**(Violations of New York Judiciary Law § 487)(Against defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas)**

**Thirteenth Claim for Relief**
**(Violations of New York Judiciary Law § 487)(Against defendants Russo, Jl Russo P.c.;  Trakas and the Law Office of Arthur G. Trakas)**

**Fourteenth Claim for Relief**
**(Verified Petition for Writ of Mandate, Prohibition, Writ of Declaratory and Injunctive Judgment, in the Alternative Writ or Rule Nisi or Other Appropriate Relief Re: May 2011 Adjudication of Level Iii Classification by Defendant Hon. Camacho Is Unenforceable and Non-recognizable for a Violation of Plaintiff's Sixth and Fourteenth Amendments Constitutionally Protected Rights & Entitlement**
**(Against State Defendants)**

---

*Spiteri v. Russo, et al., etc.*                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

**Fifteenth Claim for Relief**
**(Verified Petition for Writ of Mandate,**
**Prohibition, Request for Declaratory and**
**Injunctive Judgment in the Alternative  Writ**
**or Rule Nisi or Other Appropriate Relief**
**and Memorandum of Points and Authorities**
**in Support of the Petition for Writ of**
**Mandate )**
**(Against State Defendants)**

| | |
|---|---|
| Filed: | May 31st, 2012 |
| Judge: | Hon. **MARGO K. BRODIE** |
| Magistrate: | Hon. **ROANNE L. MANN** |

Now comes **CARMEL SPITERI**, hereinafter, "Plaintiff', a non-attorney, appearing *in pro se*, complains against the above captioned Defendants.

## I.

## JURISDICTION AND VENUE

1.     This Honourable Court has subject matter jurisdiction, among other things, pursuant to *Title* 28 *United States Code* § 1332(a)(1)., on the basis, but not limited to, Plaintiff is a citizen of the State of California, the United States and a citizen of the European Union (*Universal Declaration on Human Rights*, UN GAOR, Supp. No. 16, UN Doc. A/6316 (1948); *Ware v. Hylton*, 3 U.S. (3 Dall.) 199, 281 (1796) ("[w]hen the United States declared their independence, they were bound to receive the law of nations, in its modern state of purity and refinement"); *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793); *United States Constitution*. Article II, § 2; *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 314 (1828) (Marshall, C.J.) (finding that international agreements entered into by the United States are "to be regarded in courts of justice as equivalent to an act of the legislature.")

2.     In addition, the matter in controversy exceeds seventy-five thousands ($75,000.00) dollars and is between citizens of different states and foreign country.

3.     Additionally, this Honourable Court has subject matter jurisdiction, among other things, pursuant to *Title* 28 *United States Code* § 1343, on the basis, but not limited to, deprivation of any right or privilege of a citizen of the United States, by any act done  in

CARMEL A. SPITERI
c/o Careiln Spartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialastawsuit@gmail.com

furtherance of any conspiracy mentioned in **Title** 42 **United States Code** § 1985, as fully stated below.

4.     Jurisdiction is also conferred upon this Honourable Court pursuant to **Title** 28 **United States Code** § 1651(a) and (b)[1].

5.     In addition, this Honourable Court has subject matter jurisdiction, among other things, pursuant to **Title** 28 **United States Code** § 1367(a).

6.     Furthermore, this Honourable Court has subject matter jurisdiction, among other things, pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act, at **Title** 18 **United States Code** §  1962, *et seq.,* ("Civil RICO"), as alleged against attorneys/defendants **JOHN L. RUSSO, ARTHUR G. TRAKAS** and their respectful law firm, associates and representatives.

7.     In addition, this Honourable Court has in personam jurisdiction on attorneys/defendants **JOHN L. RUSSO,** and **ARTHUR G. TRAKAS** pursuant to the **Thirteen Amendment** to the  United States Constitution, on the basis, among other things, stated hereinafter, that the " non-New York citizen and non-resident worker " employment provided by them, placed Plaintiff in a *de facto* 'involuntary servitude' through fraud, misrepresentations, deceit, lies, coercion, public humiliation, threats of criminal prosecution, threats of apprehension, arrest, detention and imprisonment, and numerous violations of the attorney-client privilege, designed to effectuate attorneys/defendant John L. Russo and Arthur G. Trakas' scheme to enrich themselves at the expense of Plaintiff and his friends/clients/victims of said lawyers.  (See **United States v. Kozminski**, 487 U.S. 931, 952 (1988); and **Manliguez v. Joseph**, 226 F.Supp.2d 377 (E.D.N.Y. 08/20/2002)

8.     Moreover, Plaintiff is informed and believes that jurisdiction is conferred upon this Honourable Court from factors arising from the claims set forth hereinafter, for relief

CARMEL A. SPITERI
c/o Garelein Spartanyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.401.1508
Em: newyorklawsuit@gmail.com

---

[1] **Title** 28 **United States Code** § 1651(a) states, "**The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law**: (b) **An alternative writ or rule nisi may be issued by a  justice or judge of a court which has jurisdiction.**"

---

*Spiteri v. Russo*, et al., etc.                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 4 of  149

arising under, but not limited to the *First*, *Fourth*, *Fifth* and *Fourteenth Amendments* to the Constitution of the United States, and under the Constitution, statutes and common law of the State of New York.

9.     Besides, this Honourable Court has pendant jurisdiction, pendant party jurisdiction and supplementary jurisdiction of the state and common law claims asserted herein pursuant to *Title 28 United States Code* § 1367 because such claims form part of the same case or controversy over which the this court has original subject matter jurisdiction.

10.     This action is also brought, among other things, pursuant to *Article* I of the *United States Constitution*, the *Fourteenth Amendment* to the *United States Constitution*, *Title 42 United States Code* § 1983, Americans with Disabilities Act/Rehabilitation Act of 1974, and pursuant to Declaratory Judgment Act. *Title 28 United States Code* §§ 2201, *et seq*[2].

## II.
## PARTIES
## (PLAINTIFF)

11.     Plaintiff, **CARMEL SPITERI**, (Plaintiff) is over the age of eighteen years.  He is and was at all times  mentioned herein a citizen of the State of California, the United States and also a citizen of the Republic of Malta, including a citizen of the Member States of the European Union.  Plaintiff has been classified and treated as a disabled Vietnam Era

CARMEL A. SPITERI
c/o Garelin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-84608
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialcaselawsuit@gmail.com

---

[2]*Title 28 United States Code* § 2201, allowing the issuance of declaratory judgments in cases with the courts' jurisdiction, is procedural and restricted to "cases" and "controversies" in the constitutional sense. See *Longshoremen's Union v. Boyd*, 347 U.S. 222 (1954); *Miller v. Udall*, 368 F.2d 548 (10th Cir. 1966). It is not available for the resolution of hypothetical, academic, or theoretical problems. See *Wirtz v. Fowler*, 372 F.2d 315 (5th Cir. 1966). The federal courts do not render advisory opinions. *Golden v. Zwickler*, 394 U.S. 103 (1969). However, assuming the requisite case or controversy is present, the United States, suing under *Title 28 United States Code* § 1345, can invoke the Declaratory Judgment Act to obtain a declaration of rights or other legal relationships. See, e.g., *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 201, 204 (1967); *State of Wyoming v. United States*, 310 F.2d 566 (10th Cir. 1962), cert. denied, 372 U.S. 953 (1963); *Universal Fiberglass Corp. v. United States*, 400 F.2d 926 (8th Cir. 1968).

---

Veterans arising from factors of his employment with the United States Department of the Air Force and the United States Department of Defence. Said conditions and disabilities were known to all the Defendants in this action, and that Plaintiff was thereby a recipient of the benefits, services and protection afforded through the Americans with Disability Act, the Rehabilitation Act of 1974, and the New York Human Rights Act.

12.    At all times mentioned herein, starting from November 2009 through May 2011, Plaintiff was a non-New York State citizen and non-New York citizen and non-resident worker within the Borough of Queens, City of Astoria, State of New York, United States of American, pursuant to *Correction Law* § 168-f(6). Pursuant to the legal advise of attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS**, two lawyers licensed and claimed to be experts in the S.O.R.A. procedures, requirements and application, Plaintiff was only subject to registration before the "Division", but not subject to a S.O.R.A. Level Classification, as a non-New York citizen and non-resident worker .

13.    At all times mentioned herein, Plaintiff was a civil and constitutional rights consultant with attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS**, and was also client to these attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS** with whom he formed a professional client/attorney privileged relationship.

14.    Plaintiff alleges that upon temporary residing in the Borough of Queens, City of Astoria, State of New York, United States of America, attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS** sought to enslave Plaintiff and keep him under their servitude through fraud, deception, misrepresentation and empty promises. Plaintiff alleges he was subjected to work in excess of sixty to seventy hours per week, as their civil rights and constitutional consultant, legal assistant, legal messenger, legal researcher, etc. Plaintiff alleges that attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS** had him travel back and forth on cases they undertook to represent out-of-state clients/victims in California, Montana, New Jersey and Pennsylvania with no monetary

CARMEL A. SPITERI
c/o Gareain Seanta/pan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

compensation for said services, as fully stated hereinafter.  In fact, in the ***Dr. Daniel Garcia v. County of Riverside***, Case #: 5:11-cv-00034-VAP -OP[3], filed January 04th, 2011., a United States Central District of California civil rights case, Plaintiff was also interviewed on behalf of attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS** on national television regarding the merits of the case.

15.    Furthermore, attorneys/defendants **JOHN L. RUSSO** and **ARTHUR G. TRAKAS** had Plaintiff travel back and forth from the State of New York to the State of California, County of Riverside, City of Indio, to observe and report back on the criminal prosecution/murder case of said Dr. Daniel Garcia victim/client.

16.    At all times mentioned herein, while  temporarily resided within the venue and jurisdiction of this Honourable Court, and that each and every act, omission and circumstance discussed and mentioned hereinafter in this First Amended Complaint took place within the venue and jurisdiction of this Honourable Court.

17.    Presently, Plaintiff resides overseas within the Member States of the European Union.

## (DEFENDANTS)

18.    Plaintiff alleges that attorney/defendant **JOHN LEO RUSSO** (Russo)is a licensed attorney authorized to practice law in the venue and jurisdiction of this Honourable Court. Plaintiff is informed and believes that attorney/defendant Russo, at all times mentioned herein also conducted his legal business as **JL. RUSSO, P. C.**, whose office are located at 31-19 Newtown Avenue, Suite 500, Astoria, New York 11102.

19.    At all times mentioned herein, Plaintiff alleges that attorney/defendant Russo associated with attorney/defendant Arthur G. Trakas, and together agreed to manipulate

---

[3]**PLEASE TAKE NOTICE** that in order to be retained as Dr. Garcia's civil rights lawyer, attorney/defendant Russo promised that if Dr. Garcia allowed him to represent him in said lawsuit, he (attorney/respondent Russo with attorney/respondent Trakas) would represent Dr. Garcia in his criminal case. That contingent provision was violated by attorney/defendant Russo, and ultimately Dr. Gracia fired attorney/respondent Russo from the civil rights lawsuit.

CARMEL A. SPITERI
c/o Gareshin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8608
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyork/russotrakaslawsuit[@]gmail.com

the Plaintiff to induce him, through the use of the United States Postal Service, internet, and the telecommunications system, an other interstate communication means, to accept a temporary position within their respective law offices, in order to enrich themselves from his knowledge of civil rights, criminal, and other fields of litigation, and subject Plaintiff to involuntary servitude at Plaintiff's personal, financial, emotional and psychological expense and those of his friends he referred to attorneys/defendants Russo and Arthur G. Trakas.

20.    Plaintiff alleges that attorney/defendant **ARTHUR GEORGE TRAKAS** (Trakas)is a licensed attorney authorized to practice law in the venue and jurisdiction of this Honourable Court.  Plaintiff is informed and believes that attorney/defendant Trakas, at all times mentioned herein also conducted his legal business as the Law Offices of Arthur G. Trakas, whose office are located at 31-19 Newton Avenue, Suite 500, Astoria, New York 11102.

21.    Plaintiff sues attorneys/defendants Russo and Trakas severely and jointly, in their personal capacity and  in their official capacity doing business as a law firm.

22.    Plaintiff alleges that attorneys/defendants Russo and Trakas conspired to infringe, harm, harass, lie, deceive, unjustly enrich themselves, deprive Plaintiff of effective assistance of counsel during pre-S.O.R.A., S.O.R.A. and post-S.O.R.A. proceedings, all to Plaintiff's injury and damage.  Then after they (attorneys/defendants Russo and Trakas) did all that, after the filing of initial lawsuit, pursue  a course of conduct to further harm, oppress, victimize, threaten and cause great physical and emotional distress upon the Plaintiff through the use of the internet, as fully stated hereinafter.

23.    In addition, Plaintiff alleges that because of the deceptions, lies, misrepresentations, blaming Judge Camacho and other misrepresentations made by attorneys/defendants Russo and Trakas, the time to file said (a) Motion for Reconsideration; (b) Pre-S.O.R.A. hearing Article 78 Petition; (c)  Post-S.O.R.A. hearing Article 78 Petition; and the (d) Notice of Appeal had elapsed. Plaintiff continues to suffer the collateral consequences, not even contemplated nor implemented the State of California in the 1998 conviction.

CARMEL A. SPITERI
c/o Gareth Smartavan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

Attorneys/defendants Russo and Trakas' used the interstate and international commerce, *i.e*. telephone system, e-mails and the internet, to commit their fraud, deceit, lies and misrepresentations to the Plaintiff that they were protecting his interest, and diligently representing him in the abovementioned S.O.R.A. process.

24.    Plaintiff had no reason not to rely or believe the veracity and truthfulness of attorneys/defendants Russo and Trakas because they represented themselves to him that they were experts in the S.O.R.A. arena and he should explicitly trust them.

25.    Furthermore, Plaintiff alleges that attorneys/defendants Russo and Trakas' acts and omission caused him to be subjected to involuntary servitude, physical, mental, emotional and psychological harm and torture, and are thereby liable to Plaintiff for all of his injuries and damage arising from factors of attorneys/defendants Russo and Trakas' acts and omissions, including sending threatening and oppressive e-mails through the interstate and foreign commerce.

26.    Moreover, Plaintiff alleges that attorneys/defendants Russo and Trakas acted as representatives and/or agents of one another, and therefore, each of them, is liable for the conduct, acts and omission of the other.

27.    Additionally, Plaintiff alleges that attorneys/defendants Russo and Trakas used Plaintiff's 1998 conviction to extort and induce Plaintiff to  involuntary servitude and work for them without compensation, and on the false promises that they would protect his interest in the pre-S.O.R.A., S.O.R.A. and post S.O.R.A. proceedings.   Plaintiff alleges that as revealed in these proceedings, the e-mails transmitted to interstate and foreign commerce that attorneys/defendants Russo and Trakas are using Plaintiff's 1998's conviction to secure his silence and abdicate his rights for redress , to intimidate him into submission from proceedings in this action, and from seeking to secure evidence and witnesses to prosecute this action, through threats of criminal prosecution, arrest and public humiliation.

28.    Due to the stress, deceptions, misinformation, failure to act, psychological abuse, extremely long hours at work without compensation, traveling back and forth to other




CARMEL A. SPITERI
c/o Gareain Sosrtalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

states for attorneys/defendants Russo and Trakas, the uncertainty of what attorneys/defendants Russo and Trakas were doing in opposing the S.O.R.A. Level Classification, Plaintiff began to suffer seizures, and chest pain, including intermittent paralysis to his left extremities. Plaintiff had to be hospitalize numerous times. During said seizures, which also occurred at attorneys/defendants Russo and Trakas' office, Plaintiff fell down and hit the floor very hard, causing problems with his lumbar and ended up in a wheelchair, and again hospitalized.

29.    The Honourable **QUEENS SUPREME COURT JUDGE RICARDO CAMACHO,** (Hon. Camacho) **Criminal Court, TAP A**, *sued in his official capacity only*.  Hon. Camacho is and was at all times mentioned herein the Judge who adjudicated the Level III Classification, notwithstanding that Plaintiff was a non-citizen of New York and non-resident worker, and that Plaintiff conviction was not a New York State conviction, and that Plaintiff had completed his non-resident work employment and returned back to his State of conviction, before Hon. Camacho issued his ruling.

30.    The **HONOURABLE ANDREW M. CUOMO**, (Hon. Cuomo) is sued in his official capacity, as the Governor of the State of New York and has authority over the executive agencies of the State of New York. His principal office is located at the State Capitol, Albany, New York 12224.

31.    Mr. **MICHAEL C. GREEN**, (Mr. Green) is sued in his official capacity, as the **NEW YORK STATE SEX OFFENDER BOARD OF EXAMINERS COMMISSIONER** and has authority over the subordinate agencies of the State of New York. His principal office is located at the State Capitol, Albany, New York 12224.

32.    **MICHELLE MULLIGAN**, (Ms. Mulligan) is sued in her official capacity, as the **THE NEW YORK STATE DIVISION OF CRIMINAL JUSTICE SYSTEM DIRECTOR** and has authority over the subordinate agencies of the State of New York Sex Offender's Registry. Her principal office is located at the State Capitol, Albany, New York 12224.



CARMEL A. SPITERI
c/o Gareth Snartalwan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1598
Em: newyorkrussotrakaslawsuit@gmail.com

---

33.    **STATE OF NEW YORK,** (NYS) is maintained pursuant to the State Constitution. Its principal office is located at the State Capitol, Albany, New York 12224.

34.    **NEW YORK CITY POLICE DEPARTMENT SEX OFFENDER UNIT** (NYCPD SOU) is maintained and operated as the supervising Unit for those recipients of registration located within its jurisdiction and venue.

35.    For all intended purpose the above named defendants in ¶¶ 28-33, shall hereinafter be referred to as "Defendant State."

36.    Plaintiff is unaware of the true names of those persons sued herein as Does 1 through 10 and therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes that said defendants are employed by attorneys/defendants Russo and Trakas and/or the State Defendants,  and that their wrongful acts proximately caused Plaintiff's injuries, damages and collateral consequence not contemplated nor endorsed under California law, Plaintiff 1998 state of conviction. Plaintiff shall substitute the true names of such defendants when they become known.

37.     All State defendants acted under color of law in committing the acts complained of herein.

**I.**
**PRELIMINARY STATEMENT**
**RE: ATTORNEYS/DEFENDANTS JOHN LEO RUSSO AND**
**ARTHUR GEORGE TRAKAS**

38.    Plaintiff is informed and believes, and thereon alleges that attorneys/defendants John Leo Russo "Russo" and Arthur George Trakas "Trakas" are individuals licensed to practice law in the State of New York. As such these two attorneys/defendants are skilled, trained and supervised by the State of New York Bar Associate in the field of civil, criminal, family, commercial, real estate, notary practices and other field of jurisprudence.

39.    Plaintiff is informed and believes that these two attorneys/defendants' practice of law is limited to the State of New York, unless they are authorize to practice outside the

CARMEL A. SPITERI
c/o Careain Scantavan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-2408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyork.russotrakaslawsuit@gmail.com

State of New York pursuant to a Petition for **Pro Hac Vice**, after being sponsored by that particular State's licensed attorney.

40.     Plaintiff is informed and believes, and thereon alleges that these two attorneys/defendants publicize there law practice in the community and through the world-wide-web, in order to secure clientele, whom they purportedly represent to protect their clients' civil and criminal rights, services, benefits and entitlements.

41.     In or about the early 2009, Plaintiff was lending emotional and moral support to his cousin, who resided in Borough of Queens, City of Astoria, State of New York, through a divorce proceeding.  It was then when Plaintiff was introduced to attorney/defendant Trakas, who was, at that time, representing Plaintiff's cousin in said divorce proceedings.

42.     Plaintiff was asked to assist attorney/defendant Trakas in a  case before the New York Board of Prison, were his client suffered an adjudication, where his "good time" was reduced or taken away by the New York Board of Prison.  Plaintiff immediately prepared and drafted a 'petition and opposition' raising several constitutional issues, to the New York Board of Prison's decision, which was overnighted to the New York Board of Prison. Thereafter, attorney/defendant Trakas notified the Plaintiff that the New York Board of Prison had reinstated said client's "good time."

43.     Attorney/defendant Trakas asked Plaintiff  if he (Plaintiff) was interested in working for attorney/defendant Trakas, as a civil rights and constitutional consultant, temporary legal assistant, researcher, investigator and process server.

44.     Plaintiff informed Attorney/defendant Trakas that he (Plaintiff) was a recipient of sex registration in the State of California.  That he (Plaintiff) had suffered a non-violent and non-forcible conviction with a willing participant over the age of fifteen years of age. Plaintiff informed attorney/defendant Trakas that the information published by the California Department of Justice about his demographic data and location was limited, due to the fact that as a first time offender not convicted of a violent, forcible and serious offence was entitled, as a matter of law, to certain publication restriction. Plaintiff wanted




to remain practicing administrative law and assisting several California and Montana attorneys and did not want to permanently change his residence.

45.   Attorney/defendant Trakas told Plaintiff that he (Plaintiff) would not be subject to the State of New York S.O.R.A. Level Classification as a  non-New York citizen and non-resident worker , pursuant to *Correction Law* § 168-f(6)[4]. Attorney/defendant Trakas told Plaintiff that he (attorney/defendant Trakas) had represented individuals with similar situations and had been successful in those legal endeavors.  However, attorney/defendant Trakas informed Plaintiff that he (attorney/defendant Trakas) wanted a second legal opinion and introduced Plaintiff to attorney/defendant Russo.

46.   Plaintiff also informed these two attorneys/defendants that pursuant to the State of California Supreme Court, individuals convicted of a similar offence, may Petition the trial court to be relieved from registering[5]. Per their request, Plaintiff was asked and did prepare a brief in support of his contentions.

47.   Both attorneys/defendants Russo and Trakas, recommended that Plaintiff would travel back and forth between the State of California and the State of New York, until they had time to research the issue of registration and level classification, to make sure that Plaintiff does not suffer any collateral consequence which could potentially expose him




CARMEL A. SPITERI
c/o Ganesin Srantahavan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

[4]*Correction Law* § 168-f(6)provides,"Any nonresident worker or nonresident student, as defined in subdivisions fourteen and fifteen of section one hundred sixty-eight-a of this article, shall register his or her current address and the address of his or her place of employment or educational institution attended with the division within ten calendar days after such nonresident worker or nonresident student commences employment or attendance at an educational institution in the state. Any nonresident worker or nonresident student shall notify the division of any change of residence, employment or educational institution address no later than ten days after such change. The division shall notify the law enforcement agency where the nonresident worker is employed or the educational institution is located that a non-resident worker or non-resident student is present in that agency's jurisdiction. (Emphasis added)

[5]*People v. Bradford* (1997) 15 Cal.4th 1229, 1334; *People v.  Harvey*  (1979) 25 Cal.3d 754; *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1207; *People v. Picklesimer*, No. S165680 (Cal. 03/15/2010); *People v. Ranscht* (2009) 173 Cal.App.4th 1369; *People v. Thompson*, 100 Cal.Rptr.3d 57, 177 Cal.App.4th 1424 (Cal.App. Dist.1 09/29/2009); *People v. West* (1962), 3 Ca1.3d 595; *People v. Westbrook* (1996) 43 Cal.App.4th 220, 223.

---

*Spiteri v. Russo*, *et al.*, *etc.*
Case:  **12-CV-2780(MKB)(RM)**          **FIRST AMENDED COMPLAINT**

to more severe restrict and public notification then he had been exposed in his home state of conviction.

48. During the following months, attorneys/defendants Russo and Trakas used the telephone system and the internet to keep in contact with Plaintiff and continued to encourage him to temporarily move to the State of New York as their civil and human rights/constitutional consultant temporary legal assistant, researcher, investigator and process server.. They both offered to help Plaintiff with find an apartment, pay rent and buy him furniture.

49. After several meetings, in person and via the telephone system, attorneys/defendants Russo and Trakas informed the Plaintiff that they had their legal research of the above mentioned issues re: S.O.R.A. registration and level classification, in addition to having spoken to other State of New York lawyers. They told Plaintiff that it was their professional and legal opinion that Plaintiff would not be subject to a S.O.R.A. level classification nor a posting on the State of New York Sex Registry Website, but only to notify the "Division" of his presence, employment address and his temporary residence address, pursuant to *Correction Law* § 168-f(6).  (See Note 1, *supra*)




CARMEL A. SPITERI
c/o Gerald Spartayan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

50. Plaintiff relied on the professional and legal opinion of the above two attorneys/defendants Russo and Trakas, and agreed that he would temporarily relocate to the State of New York, while continuing to assist the  California and Montana lawyers with the civil rights/criminal and administrative law cases.  It was made clear to these two attorneys/defendants that Plaintiff was not establishing a new residence based on State citizenship of the State of New York.

51. Pursuant to *California Penal Code* § 290, Plaintiff notified the Palm Springs Police Department that he was temporarily working in the State of New York and would have a secondary address, and that he would continue to have is primary residence in City of Palm Springs, State of California.

---

*Spiteri v. Russo*, *et al., etc.*                                        **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

52.    In or about the late month of November 2009, Plaintiff began to work, as a non-New York citizen and non-resident worker , with attorneys/defendants Trakas and Russo. As promised, attorney/defendant Trakas, on his way to the office, in Astoria, would pick Plaintiff up from the apartment in Flashing, New York up from it and took him back to it, so he could work at their offices.  In addition, when they could not pick him up and drop him off to his apartment, they paid for a taxi service.  Ultimately, they moved Plaintiff into an apartment closer to their office, in Astoria. In fact, they paid for the first month rent and security deposit, and attorney/defendant Trakas purchased Plaintiff his bed and furniture for his apartment from a friend/client of his, on Broadway Street, in Astoria, New York.   The apartment was only one block away from Bryant High School, and two blocks away from other public schools.

53.    However, although the apartment was in Astoria, it was still far from their offices, and therefore, everyday, they paid for a taxi to pick up Plaintiff from his apartment to their office, and back.  However, sometimes, either of them would drive Plaintiff back from work to his apartment on their way to their respective residence.

54.    Within ten (10) days of coming into the Borough of Queens, State of New York, Plaintiff went with attorney/defendant Trakas' paralegal Joyce Hamberger to the Division, located on the island of Manhattan.  Upon arriving at said Division, Plaintiff was called in by a parole agent and told that he had to physically register every ninety days.  Plaintiff informed said parole agent to contact the Albany Registry Headquarters because he was told he did not have to register with the Division every ninety days, but to just notify the Division of his presence as a non-New York citizen and non-resident worker . The parole agent contacted the Albany Registry Headquarters and it was verified that Plaintiff was to just register once, and date his registration if he changes employer or relocates.

55.    Prior to commencing his temporary non-New York citizen and non-resident worker employment with attorneys/defendants Russo and Trakas, it was agreed to the following, but not limited to:




CARMEL A. SPITERI
c/o Ganesh Sreenivasan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-04408
(For Mailing Purposes Only)
Tel: 202.409.1598
Em: newyorkrussotrakaslawsuit@gmail.com

---

a.      Plaintiff would temporary work for attorneys/defendants Russo and Trakas, at Plaintiff's customary rate of $75.00 per hour. ( Reference: PACER filing March 10th, 2005 Order of U.S. District Judge Lloyd D. George, Township of Las Vegas, State of Nevada, in the case entitled *Jeremy Beard, et Al., v. Clark County School District*, Case No.: CV-S-04-0570-LDG(RJJ)(Document 13-2746764 Filed 03/16/2005)indicating that Plaintiff's non-attorney advocate/legal assistance fees were at $120.00 per hour.)

b.      Plaintiff would be paid ten percent (10%) commission on any case he brought in for attorneys/defendants Russo and Trakas. In addition, Plaintiff would be paid, yet another ten percent (10%) on any judgement and/or settlement per each case. Furthermore, Plaintiff would be paid his hourly weekly fees of $75.00 per hour.  Please note that the practice of awarding a ten (10%) referral fee is customary with these two attorneys/defendants[6].

c.      Attorneys/defendants Russo and Trakas would pay for transportation to and from Plaintiff's apartment to their offices.

d.      Any out-of-state travel, food and lodging arising from a case being handled by attorneys/defendants Russo and/or Trakas or both, would be paid by them.

56.     At all times mentioned herein, Plaintiff alleges that attorney/defendant Trakas associated with attorney/defendant Russo, and together agreed to manipulate the Plaintiff to induce him, through the use of the United States Postal Service, internet, and the telecommunications system, an other interstate communication means, to accept a position within their respective law office, in order to enrich themselves from his knowledge of civil rights, criminal, and other fields of litigation, at Plaintiff's expense and those of his



CARMEL A. SPITERI
c/o Garedin Sharbabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-9408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

[6]Here are some of the examples, which are not limited to: (1) attorney/defendant Trakas, paid C.B., for referring her mother's car accident case.  In a case involving the New York Department of Consumer Affairs, were attorneys/defendants Russo and Trakas represented several "towing companies", (approximately 14 companies) charging them between $4,500.00 to $3,000.00 retainer, attorneys/defendants Russo and Trakas paid the Union Representative, who referred said cases, ten (10%) percent per each client, in cash.

friends he referred to attorneys/defendants Trakas and Russo.

57.    Plaintiff is informed and believes that attorneys/defendants Russo and Trakas are ethically and statutorily bound by certain applicable New York laws, which are not limited to:

*New York Judicial Law* § 487/*New York Code* § 487 provides:

An attorney or counselor who:

1.    *Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,*

2.    *Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for, Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.*

*New York Deceptive Practice Statutes* § 349(a) Business Law Statute, pertinently states, "*Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful*."

In addition, § 349(f) states:

"*. . . any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney`s fees to a prevailing plaintiff*."

58.    Furthermore, Plaintiff is informed and believes that by using the interstate communication systems, such as facsimile, United States Postal Service Mail, the internet and the telephone, to induce prospective clients/victims to deposit thousands of dollars as



CARMEL A. SPITERI
c/o Genesin Sravtalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

a retainer, so  said clients/victims would be represented by attorneys/defendants Russo and/or Trakas or both, and using Plaintiff through inducement and misrepresentation to secure such clients/victims. Suddenly, Plaintiff was being contacted by the clients/victims, identified below and told that attorneys/defendants Russo and Trakas were not responding to their e-mail and telephone messages. Ultimately, Plaintiff discovered that attorneys/defendants Russo and Trakas had abandoned all of Plaintiff's friends (attorneys/defendants Russo and Trakas' clients/victim). When Plaintiff discovered attorneys/defendants Russo and Trakas' deception and fraud, he contacted his friends (clients/victims) and told them to ask for a full accounting and reimbursement of their deposit.   However, Plaintiff is informed and believes, as of the filing of this FAC, attorneys/defendants Russo nor Trakas has provided any accounting for their services and have refused to reimburse the said clients/victims  retainers.  Plaintiff alleges that the acts and omissions of attorneys/defendants Russo and Trakas violate the ***Civil   Federal Racketeer Influenced and Corrupt Organizations Act***, at ***Title*** 18 ***United States Code*** § 1962, *et seq*., and attorneys/defendants Russo and Trakas are liable for their unjust enrichment, fraud and deceit,  either in equity or through a formal New York State Bar investigation and/or a criminal investigation by federal and state law enforcement authorities.

59.    The following is an accounting per each date and event involving or related to attorneys/defendants Russo and Trakas' purported representation of Plaintiff pre-S.O.R.A., S.O.R.A., and post-S.O.R.A, which are not limited to the following e-mails and correspondence.  **PLEASE NOTICE** the offensive, humiliating, oppressive, foul and malicious language used by attorney/defendant Russo, when corresponding with the Plaintiff.

/ / /

/ / /

*Spiteri v. Russo, et al., etc.*                                                          **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**              Page 18 of  149

Email Plaintiff wrote with prior approval of attorneys/defendants Russo and Trakas, dated 9/23/2010 at 11:59 PM, the NYS Ecourts Administrator.

**CARMEL A. SPITERI**
c/o Garelin Spartakyan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8408
(For Mailing Purposes Only)
Tel: 202.469.1598
Em: newyorkrussotrakaslawsuit@gmail.com

Honourable Sir/Madam:

I was researching my case and found what appears to be the following misinformation listed on the website:

CL 168K 00 **TOP CHARGE** E Felony, 1 count, Not an arrest charge, Not an arraignment charge Description: Indictment Count: 1 Date Added: 07/29/2010

I do not understand why I am being charged with an "E Felony" and that the Felony was the result of an Indictment dated 07/29/2010. Once I came to New York, I immediately registered with Albany and notified State of California of my new address to comply with Megan Law in both states. So, how and why am I being published as (1) a defendant, (2) when I have committed no crime and charged with the E Felony.

I am concerned, and I apologize for any inconvenience, because this information is accessible to the entire world, and I am being portrayed as a defendant pending criminal prosecution via an indictment on an E Felony charge, indicating it is a **TOP CHARGE**, rather than a civil/administrative proceeding under Art 78 to determine if I should register because of the changes in California law and if I am ordered to so do, what will be my level.

Can you please correct the record.

I thank you in advance. If you need any further information regarding this request, feel free to call me. However, you if have

*Spiteri v. Russo*, et al., etc.                                                    **FIRST AMENDED COMPLAINT**
Case: **12-CV-2780(MKB)(RM)**

questions regarding my petition/response, I am represented by Mr. John L. Russo, attorney at law, and that correspondence should be addressed to him.

Email for the NYS Ecourts Administration dated Friday, September 24, 2010 3:35 PM

Mr. Spiteri:

I have compared the information displayed in WebCrims with what was entered by the court, and the two are in agreement. Given that, I can only suggest that your attorney discuss this with the court if you have concerns about the way in which the information is being presented.

On October 10th, 2010, Plaintiff mailed a letter to the NYS Ecourts:

Dear Ms. Zahler:

1. I want to first thank you for accepting my call and providing me with the guidance necessary to address my issues. I truly thank you for your professional acumen and the manner in which you you responded to my inquiry.

2. I am a respondent in an action before the Supreme Court, an extract copy of the Case Details is below. This hearing is for a level determination. I was surprised to read that I am being charged with a "TOP CHARGE" E FELONY INDICTMENT - 1 COUNT", when in fact, I have not been charged with any violation of the criminal code. My understanding this is an SORA hearing and not a criminal proceedings, but a proceedings arising from an administrative determination by the Board of Examiners.

3. I believe that a reasonable reader would conclude from both the broader context and the immediate context that I am being

*Spiteri v. Russo*, et al., etc.
Case:  **12-CV-2780(MKB)(RM)**

**FIRST AMENDED COMPLAINT**

charged that I have been indicted for an E Felony, and that information contained on the Honourable Court's website is untrue. (***Davis v. Ross***, 754 F.2d 80, 86 (2d Cir. 1985) (quoting ***Hotchner v. Castillo-Puche***, 551 F.2d 910, 913 (2d Cir. 1977).

4. Such knowledge of falsity constitute a "negative characterization" presented on the website http://iapps.courts.state.ny.us/webcrim_attorney/Defendant Search) "is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader." (***Davis*** 754 F.2d at 85–86.)

5. I am requesting correction of the data contained in the above identified website, to show that the case is an administrative proceedings rather than a criminal proceedings, to review the Board of Examiners' recommendation.

6. Once again thank you for your kindness and look forward for your response.

**You are a deeply sick pathological sociopath**.

**SHOULD I CC: YOUR FAMILY AND CONTACTS ON ALL OF THE SORDID PUBLIC MATERIALS SURROUNDING YOUR CONVICTION AND INCARCERATION FOR MOLESTING YOUNG BOYS IN CALIFORNIA?**

**THAT TYPE OF THING IS BENEATH ME.** (Actually attorney/defendant Russo has showed otherwise)

Email from attorney/defendant Russo dated Tuesday, February 7, 2012 5:15 PM

CARMEL A. SPITERI
c/o Gareفي Spartapian
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8460β
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

***Spiteri v. Russo***, *et al., etc.*
Case: **12-CV-2780(MKB)(RM)**

**FIRST AMENDED COMPLAINT**

**CHUCK - YOU ARE A LYING DISTURBED PIECE OF SHIT. PLEASE PLEASE PLEASE RETURN TO NEW YORK. PLEASE. I AM BEGGING YOU. I CAN'T WAIT TO SEE YOU AGAIN - IN PERSON OR ON THE INTERNET SEX OFFENDERS REGISTRY.**

Email from attorney/defendant Russo dated Wednesday, February 8, 2012 10:39 PM

**I hope you are receiving all the medical care you require for your sordid ailments and mental disorders.** I really am interested in your return to New York. Please let me know when you'll be arriving.

There are so many opportunities and friends waiting for you here in New York.

Make sure you update your Sex Offender Registry picture and address as soon as you get back.

Email from Plaintiff dated Sunday, July 24, 2011 8:44 PM

John, Here is a case on point.

People v Laboy (Edmilio) 2011 NY Slip Op 50086(U) [30 Misc 3d 134(A)] Decided on January 20, 2011 Appellate Term, Second Department Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. Decided on January 20, 2011

SUPREME COURT OF THE STATE OF NEW YORK APPELLATE TERM: 2nd, 11th and 13th JUDICIAL DISTRICT

PRESENT: : PESCE, P.J., WESTON and GOLIA, JJ   2009-70 RI C.

CARMEL A. SPITERI
c/o Garelain Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Eml: newyorkrussotrialaslawsuit@gmail.com

---

*Spiteri v. Russo, et al., etc.*
Case: **12-CV-2780(MKB)(RM)**

**FIRST AMENDED COMPLAINT**

CARMEL A. SPITERI
c/o Garelin Spartayan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-84608
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotriakaslawsuit@gmail.com

The People of the State of New York,

Respondent,

against

Edmilio Laboy, Appellant.

Appeal from an order of the Criminal Court of the City of New York, Richmond County (Alan J. Meyer, J.), rendered October 28, 2008. The order designated defendant, after a hearing, a level two sex offender pursuant to Correction Law article 6-C.

ORDERED

that the order is reversed, without costs, and defendant is designated a level one sex offender.

Defendant pleaded guilty to sexual misconduct, stemming from his having had sexual intercourse with a 13-year-old victim. At the Sex Offender Registration Act (SORA) hearing, defendant did not dispute the 75 points assessed in the risk assessment instrument but argued that a downward departure was warranted based upon his acceptance of responsibility for his conduct, that no force was used by him during the incident, and that he was 19 years old at the time he committed the offense. The hearing court, without setting forth any findings of fact and conclusions of law upon which it based its determination (cf. Correction Law § 168-n [3]), denied defendant's application for a downward departure and classified him as a level two sex offender. Ordinarily, where a court fails

---

*Spiteri v. Russo*, et al., etc.
Case: **12-CV-2780(MKB)(RM)**

**FIRST AMENDED COMPLAINT**

CARMEL A. SPITERI
c/o Garelick Spartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-84608
(For Mailing Purposes Only)
Tel: 202.409.1598
Em: newyorkrussofrakaslawsuit@gmail.com

to address the factors raised by a defendant in support of an application for a downward departure, the resulting order denying such application should be reversed and the matter remitted for further proceedings (see ***People v Flax***, 71 AD3d 1451 [2010]). However, remittal is not required here since the record on appeal is sufficient for this court to make its own findings of fact and conclusions of law (see ***People v Rivera***, 73 AD3d 881 [2010]). [*2]

Although defendant was classified as a level two sex offender pursuant to the risk assessment instrument, we conclude, based on the record before us, that there is clear and convincing evidence of the existence of special circumstances to warrant a downward departure, which circumstances were not adequately taken into account by the guidelines (Sex Offender Registration Act: Guidelines and Commentary at 4 [2006 ed]; see ***Rivera***, 73 AD3d at 881; ***People v McKee***, 66 AD3d 854 [2009]). Defendant was 19 years old at the time that he engaged in sexual activity with the underage victim. There was no allegation or evidence of forcible compulsion. Moreover, the underlying conviction was defendant's first conviction. Under the circumstances, we conclude that defendant is not at a high risk of reoffending (see Correction Law § 168-l [6]; ***People v Goossens***, 75 AD3d 1171 [2010]).

The order designating defendant a level two sex offender is reversed and defendant is designated a level one sex offender.

Pesce, P.J., Weston and Golia, JJ., concur.

---

***Spiteri v. Russo***, *et al., etc.*                    **FIRST AMENDED COMPLAINT**
Case: **12-CV-2780(MKB)(RM)**

Decision Date: January 20, 2011.

| | |
|---|---|
| Email from Plaintiff dated Saturday, October 01st, 2011 12:58 PM | Mr. Russo,<br><br>Attached is my proposed appeal that I intended to file.  You are fired.  You are not to take any action in this case.  You have mislead me, lied and misrepresent the facts that you have filed a motion for reconsideration and appeal.  I have demanded copies which you have refused to provide.  I have sent my cousin to pick up the file and you have failed and refused to give it to me.  I am addressing both yours and that fraud Trakas ineffective assistance of counsel, in particular the fraud and unjust enrichment and fraud.  Let him know that I intended to contact each victim and get affidavits to submit to the Court of Appeals.<br><br>His time to act in good faith has ran out, so has yours. |

60.    During the above temporary working period, relevant to this complaint, Plaintiff referred the following cases to attorneys/defendants Russo and Trakas, for which, on information and belief, these two attorneys/defendants Russo and Trakas received a retainer, to wit:

a.    **ATTORNEY/DEFENDANT TRAKAS**:

i.    S.M., a New Jersey traffic accident and property liability case: (Trakas was not licensed in New Jersey, and never revealed that fact to the client.  Ultimately, he was terminated and the case was referred to a New Jersey lawyer.  He never reimbursed S.M.)

CARMEL A. SPITERI
c/o Careein Spartabon
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

*Spiteri v. Russo*, et al., etc.                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

Retainer:     **$3,500.00**

ii.     N.B. a New York family court matter.  (In this case, attorney/defendant Trakas was fired by N.B. for incompetence and representing the interest of opposition party, creating a real and substantial conflict of interest.  Attorney/defendant Trakas refused to fully reimburse N.B.)

Retainer:     **$8,000.00**

b.     **ATTORNEY/DEFENDANT RUSSO**:

i.     P.C. and M.C., New York, a Title VII, wrongful termination and discrimination case: (In this case attorney/ defendant Russo represented these two clients against his previous employer/client NYRA.  He was NYRA's general counsel.  U.S. Senior District Judge Weinstein disqualified attorney/defendant Russo on the basis of 'conflict of interest." Yet, attorney/defendant Russo ignored the disqualification order, by dismissing the complaint in federal courts, so he could file a new action in the State Court.  However, by the time, P.C. and M.C. caught up with the "con" by attorney/defendant Russo, their case was lost due to the statute of limitation.  Demand for the reimbursement of the **$5,000.00** was made, but refused by attorney/defendant Russo.  Instead, Plaintiff was informed while writing this FAC, that in or about August 08th, 2012, attorney/defendant Russo sent a threatening letter to P.C. and M.C., intended to harass and intimidate them from being witnesses in this action, and retaliating against them for filing a complaint with U.S. Senior District Judge Weinstein.)

CARMEL A. SPITERI
c/o Garelin Spartakvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

*Spiteri v. Russo, et al., etc.*
Case:  **12-CV-2780(MKB)(RM)**          Page 26 of  149          **FIRST AMENDED COMPLAINT**

ii.    G.S., a FBI/IRS criminal investigation out of Las Vegas, Nevada. G.S. consulted with attorney/defendant Russo, and Plaintiff is informed and believes that G.S. revealed sensitive and trade secrets information during said consultation. Attorney/defendant Russo demanded a **$25,000.00 retainer**. However, G.S. did not hire because he had learned that attorney/defendant Russo was retained by J.K., an witness that was potentially adverse to G.S. Plaintiff is informed and believes that attorney/defendant Russo was not license to practice law in the State of Nevada.

iii.    J.K., a witness in a State of Nevada, FBI/IRS criminal investigation. (In this case, although attorney/defendant Russo was in Las Vegas, Nevada, for the pre-scheduled conference with agents of the FBI/IRS, he did not show up at the conference. Plaintiff is informed and believes that instead attorney/defendant Russo went and played his favourite game of "**poker**." When J.K. demanded reimbursement of his money, attorney/defendant Russo refused.)

Retainer:    **$5,000.00**

iv.    ***California v. Garcia*** (Palm Springs, California) murder case of a gay senior citizen. Plaintiff encouraged Mr. Garcia and Mr. Garcia did hire attorney/defendant Russo to represent Mr. Garcia in a **$200,000,000.00** federal civil rights lawsuit against the County of Riverside and its Sheriff for unlawful recordings of Mr. Garcia's telephone communications with his attorneys and spiritual advisors.(***Garcia v. County of Riverside***, CASE #: 5:11-cv-00034-VAP -OP, filed January 04th, 2011) Since, attorney/defendant

CARMEL A. SPITERI
c/o Garelzin Soartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-34608
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialkaslawsuit@gmail.com

Russo was not authorized to practice law in the State of California, Plaintiff asked attorney David L. Wright to sponsor attorney/defendant Russo via a Pro Hac Vice Petition, which was approved by the U.S. Central District Judge. Again, attorney/defendant Russo neglected this case, and he was fired by Mr. Garcia.

      c.    **JOINT REPRESENTATION BY ATTORNEYS/DEFENDANTS RUSSO AND TRAKAS:**

      i.    A.W., R. A., and Sovereign International Group, California, Arizona and Illinois security fraud case, In the Matter of The Omicron Group (C-07506. In this case attorneys/defendants Russo had Plaintiff do all the work, including discussing substantive matters with **CAROLANN GEMSKI**, Esq.,Senior Attorney, Division of Enforcement, **U.S. SECURITY AND EXCHANGE COMMISSION**, Chicago Regional Office, 175 West Jackson Boulevard • Suite 900, Chicago, Illinois 60604, then abandoned the clients and never reimbursed their retainer nor provided them with an accounting as they had demanded. **PLEASE TAKE NOTICE** that attorney/defendant Russo was not licensed to practice law in either California, Arizona nor Illinois. These two clients A.W. and R.A., actually flew into New York to retain attorneys/defendants Russo and Trakas, and neither of these attorneys made aware at the dinner meeting (Plaintiff was present) that attorneys/defendants Russo and Trakas' license to practice law did not include California, Arizona or Illinois.)

      Retainer:    **$65,000.00**

CARMEL A. SPITERI
c/o Garedin Spartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-2408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

ii.     S.P. and L.P. Montana civil rights U.S. 9TH Circuit Court of Appeals case.  (In this case, Plaintiff prepared the appeal, researched all issues, typed it up and served it on the parties.   Attorney/defendant Russo just placed his hancock on it. However, the U.S. 9th Circuit of Appeals Justice, Portland, Oregon, refused 'oral argument' and ruled against the clients.  The included travel arrangements for both attorney/defendant Russo and Plaintiff to fly to Oregon to orally argue the case before the Justices.   When these two clients demanded an accounting and reimbursement, attorney/defendant Russo claimed he spent **$15,000.00** in fees and that the clients had only **$10,000.00** left  in his trust.  However, when the clients asked to for the **$10,000.00**, attorney/defendant Russo refused to return the balance and never gave them a written accounting on how he spent the remaining **$15,000.00**.)

CARMEL A. SPITERI
c/o Garedin Scratchyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 212.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

Retainer:      **$25,000.00**

iii.     D.M.C., a Montana/Pennsylvania Mann Act criminal case. **(Attorney/defendant Russo also associate counsel with attorney/defendant Trakas.** Attorney/defendant Russo was scheduled to appear at two separate hearings but did not show up on both occasions, notwithstanding that the parents of D.M.C. drove twice, all the way from Lewistown, Montana to Erie, Pennsylvania.  When attorney/defendant realized that attorney/defendant  Russo had enriched himself through the referral, but abandoned the client, attorney/defendant Trakas withdrew from the case, by having  D.M.C., sign and pre-date a "substitution of attorney," notwithstanding that the parents of D.M.C., had put

up their home and ranch to secure a loan from the bank. Neither attorneys/defendants reimbursed D.M.C.):

Retainer:     <b>$85,000.00</b>

61.    During the time relevant herein, Plaintiff worked approximately fifty (50) to (60) hours per week.   Plaintiff traveled to Pennsylvania, Montana and New York, on attorneys/defendants Russo and Trakas' cases, most of the time at Plaintiff's expense, and never been reimbursed for said expenses by either attorney/defendant Russo or Trakas.

62.    On June 01st, 2010, approximately seven (7) months after Plaintiff registered with the Division, the State of New York Government Defendants notified him that "Pursuant to the New York State Sex Offender Registration Act, the Board of Examiners of Sex Offenders has reviewed your conviction in another jurisdiction and has determinated that you are required to register with the New York State Sex Offender Registry. . . The Board has also forwarded the risk level recommendation to the Court and District Attorney in the jurisdiction in which you currently reside."

63.    Plaintiff immediately replied indicating that under *Correction Law* § 168-f(6) he was only obligated to register with the Division and that nothing in said section authorized the New York Government Defendants to refer the matter to the Court and District Attorney for a Level Classification.

64.    Plaintiff also informed attorneys/defendants Russo and Trakas of the New York Government Defendants' notification.  Both attorneys/defendants Russo and Trakas told

CARMEL A. SPITERI
c/o Gareth Smartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

Plaintiff not to worry and that the most he could be classified is a "level I." It was agreed between attorneys/defendants Russo and Trakas, that attorney/defendant Trakas would file an Article 78 Petition to challenge the New York Government Defendants' decision. Plaintiff drafted said Article 78 and gave it to attorney/defendant Trakas for his final review and filing. However, several weeks passed, and it was not until Plaintiff was notified that a S.O.R.A. hearing for a Level Classification was scheduled before New York Supreme Court Judge Camacho. Initially, Judge Camacho assigned the S.O.R.A. hearing to attorney Kennedy. However, attorneys/defendants Russo and Trakas wanted to represent Plaintiff in the proceedings, another ploy of manipulation and deceit on the part of attorneys/defendants Russo and Trakas .

65.    Plaintiff confronted attorney/defendant Trakas and requested the reason(s) why he misled the Plaintiff to believe that he, attorney/defendant Trakas had filed and served the Article 78 Petition.   Attorney/defendant Trakas told Plaintiff that his associate attorney/defendant Russo would handle the situation at the S.O.R.A. and registration hearing, and not to worry.

66.    Plaintiff relied on the legal advice of attorney/defendant Trakas and agreed to have attorney/defendant Russo represent Plaintiff in the S.O.R.A. and registration hearing, with the agreement and understanding that attorney/defendant Trakas would be "second chair" and continue to represent Plaintiff as the need arise. In fact, attorney/defendant Trakas also made appearance during the S.O.R.A. and registration hearing before Judge Camacho.

*Spiteri v. Russo, et al., etc.*                                         **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 31 of  149

67.    Attorneys/defendants Russo and Trakas advised the Plaintiff that they intended to delay the adjudication process, so that it would not interfere with Plaintiff's out-state-case which were solicited by attorneys/defendants Russo and Trakas, fully described in above ¶ 18.  However, some of the delay was also caused by Plaintiff's seizure disorder, and other medical complications, which included hospitalization at the New York Veterans Administration Hospital.

68.    Plaintiff discovered that the Queens Supreme Court had posted on its NEW YORK STATE CRIMINAL WEBSITE (NYS CRIMWEB)  that Plaintiff had been charged with a Felony in regards to the New York registration. However, this was false. Plaintiff immediately e-mailed attorney/defendant Russo, as follows:

> I was surfing the NYS Crimweb and discovered that they have listed the following information about me, which is now public record.   The information is inflammatory on the basis that I have committed no "E Felony-TOP CHARGE", 1 count, nor was I indicted on an "E Felony" Charge.  In fact, CL § 168K is absent any such indication.   On the contrary, CL § 168K deems the action purely civil not even quasi-criminal proceedings.

> The Court Administrative Office appears to have exceeded their authority or discretion by placing a criminal notation that as a matter of law, should not have been done.

> I want your permission, to write to the Chief, Administrative Judge, Hon. Ann Pfau is the Chief Administrative Judge of the Courts. On behalf of the Chief Judge, the Chief Administrative Judge supervises the administration and operation of the State's trial courts, and seek deletion of this erroneous information.  The public that potentially could review such entry will assume that I have been charged with a "TOP CHARGE - E FELONY, 1 COUNT" through an Indictment dated July 29[th], 2010.

CARMEL A. SPITERI
c/o Geneslin Spartanyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

69.    Attorney/defendant Russo allowed Plaintiff to write to the above Chief Administrative Judge of the Courts.  Plaintiff received a response indicated that the information on its NYS CRIMWEB was correct.  Plaintiff informed attorneys/defendants Russo and Trakas of the response.  They promised that either of them would take it up with Judge Camacho in the next appearance.  However, they never did, in any of the appearances.  Instead, attorneys/defendants Russo and Trakas, instructed Plaintiff to draft an Article 78 Petition with an Order to Show cause, and they would bring that action to force the Court to correct its NYS CRIMWEB entries.  Plaintiff prepared said Petition, but neither of attorneys/defendants Russo and Trakas ever filed it, although they claimed, "It has been taken care of.  Don't worry."

70.    During attorneys/defendants Russo and Trakas' representation of Plaintiff at the registration and S.O.R.A. Level Classification appearances, they did not submit any of the motions, Petitions and pleadings prepared by Plaintiff at their request.  However, they led Plaintiff to believe that they, in fact, had submitted said legal documents for Judge Camacho's consideration.  In one specific instance, attorneys/defendants Russo and Trakas were informed by the California Department of Corrections Central Records Division that they had located Plaintiff's central and parole file containing the exculpatory evidence that refuted the  New York State Board of Examiners for Sex Offender Deputy Commissioner Condo's recommendation of a Level III Classification[7] and which the Queens District

---

[7]**PLEASE TAKE NOTICE** that a Level III Classification is reserved for the most heinous, violent and egregious individuals convicted of a sex offence, who actually and through their course of criminal

CARMEL A. SPITERI
c/o Careelin Spartakyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

Attorney's Office had also supported. However, neither of attorneys/defendants Russo and Trakas paid the approximate thirty-six ($36.00) dollars that was request to copy said central and parole file to be mailed to them.

71.    In addition, an approximately nine-six (96) page socio-psyche report had been prepared to submit to Judge Camacho refuting the Level III Classification, and that Plaintiff posed no danger to the public[8]. Plaintiff brought to the attention of attorneys/defendants Russo and Trakas, the statutory violations noted in Note 4 below. Again, they indicated that in the next appearance, attorney/defendant Russo or Trakas would bring it up to the attention of Judge Camacho. Of course, that never happened.

72.    Plaintiff is informed and believes that during this period of time, the Queens County Prosecutor Rosenbaum was in constant contact with the district attorneys for the Counties

---

conduct/recidivism are a high risk of repeat offense and a threat to public safety exists. In the fourteen some odd years that Plaintiff had been convicted in California, not once has he ever been convicted of any other crime, whether an infraction, misdemeanor or felony. In addition, for almost fourteen some odd years, Plaintiff was classified one of the lost classification in the State of California, including vereceiving a letter from the California Attorney General Office to his then attorney/defendant Trakas, informing them that Plaintiff was entitled to file a Petition to Relief from registration, as fully stated herein.

    [8]**PLEASE TAKE NOTICE** that Plaintiff's apartment was located only one (1) block away from Bryant High School, two (2) blocks away from other Mid-High School, were he temporary resided for more than twelve (12) months. However, notwithstanding that the New York State Board of Examiners for Sex Offender was mandated by *Correction Law* § 168-k(2) that "*No later than thirty days prior to the board making a recommendation*", (it took the Board approximately seven (7) months) "*. . . the sex offender shall be notified that his or her case is under review and that he or she is permitted to submit to the board any information relevant to the review*", when Plaintiff submitted his information relevant to the review, Examiner Condo wrote to Plaintiff and said that he should "<u>take it up with the New York Supreme Court Judge [Camacho]</u>). . . "*the board shall within sixty calendar days make a recommendation regarding the level of notification*" (again it seven (7) months had passed not sixty (60) calender days.)

---

*Spiteri v. Russo, et al., etc.*                          **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 34 of  149

of Riverside and Sonoma. During this period of time, Plaintiff was being maliciously prosecuted by these two counties for allegedly failure to register. However, on both prosecutions the law enforcement officers who brought the charges against the Plaintiff withheld exculpatory evidence from the two different judges who were induced to issue the two separate arrest warrants, i.e. law enforcement and then the prosecutors of both Counties withheld the certificate of registration issued by the registry personnel indicating that Plaintiff had in fact registered and gave the true and correct address. Both cases were dismissed with prejudice.

73. Upon all charges being dismissed with prejudice in the Counties of Riverside and Sonoma, State of California, Plaintiff instructed attorneys/defendants Russo and Trakas to subpoena[9] both law enforcement and prosecutor's files in said two cases, and see if the New York Board of Examiners Condo and Queens County prosecutor were being influenced by Riverside and Sonoma Counties law enforcement to force and seek a Level III Classification, a classification that as a matter of California law could never been assessed against the Plaintiff. Plaintiff suggested that if his suspicion were right, he wanted attorneys/defendants Russo and Trakas to bring a Motion to Dismiss the S.O.R.A.

CARMEL A. SPITERI
c/o Garcelin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorktrussotrakaslawsit@gmail.com

---

[9]In pertinent parts, *Correction Law* § 168-k(2)provides, "*Where there is a dispute between the parties concerning the determinations, the court shall adjourn the hearing as necessary to permit the sex offender or the district attorney to obtain materials relevant to the determinations from the state board of examiners of sex offenders or any state or local facility, hospital, institution, office, agency, department or division. Such materials may be obtained by subpoena if not voluntarily provided to the requesting party*."

Level Classification for Vindictive Prosecution[10]. However, attorneys/defendants Russo and Trakas never sought to obtain said subpoena for said records, and never filed said Motion, as Plaintiff had demanded of them. Attorney/defendant Russo always stated that, "I went to law school. I have a law degree and I worked as Special Counsel for the New York Racing Association. I know what motions I should or should not file. I'm telling you "Chuck" (Plaintiff) there is no way in hell that Judge Camacho can classify you as a Level III. The most he will do is a Level I. Don't worry. I'll take care of it."

74.    In or about last week of May 2011, Plaintiff was to appear before Judge Camacho, however, due to a seizure he had suffered arising from the emotional stress and trauma relating to the conduct of both attorneys/defendants Russo and Trakas, he was treated at the Veterans Hospital in New York City. Per the request of attorneys/defendants Russo and Trakas, Plaintiff had drafted a fifty-nine (59) page "**MOTION FOR AN ORDER TO SHOW CAUSE - ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES**," a copy of which will be provided at either the ***Federal Rules of Civil Procedure*** Rule 26(f) process or time of trial, under seal of court. Please note that attorneys/defendants Russo and Trakas never filed said document, although they led Plaintiff to believe they so did.

75.    While at the hospital, Plaintiff received a telephone call from attorney/defendant Russo who told Plaintiff that Judge Camacho wanted to see Plaintiff the next day and that

---

[10]**"Actual vindictiveness must play no part in a prosecutorial or sentencing decision and, since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his rights, the appearance of vindictiveness must also be avoided**." ***United States v. King***, 126 F.3d 394, 397 (2d Cir.1997) (internal quotation marks and brackets omitted).

Judge Camacho had been given prior notice that Plaintiff was returning to his home State of California.

76.    Plaintiff reminded attorney/defendant Russo that he was the one who scheduled and paid for Plaintiff to fly back to his home State of California.    Attorney/defendant Russo advised Plaintiff that he does not have to appear, because attorney/defendant Russo had given prior adequate notice to Judge Camacho and the Office of the District Attorney, that Plaintiff had completed his non-resident work assignments and returning to the law office of David L. Wright, at his home State of California. Plaintiff asked attorney/defendant Russo if he (Plaintiff) should reschedule his flight, but attorney/defendant Russo advised Plaintiff that as long as he returned back to his home State of California, the New of York would not have jurisdiction over him, and therefore, the S.O.R.A. hearing would be cancelled, because Judge Camacho would also no longer have jurisdiction to adjudicate the Plaintiff for a Level Classification.  In addition, attorsoney/defendant Russo told Plaintiff, something to the effect that he had already paid for Plaintiff's flight . . . "***Don't worry, I will take care of it  tomorrow.  There is no way in hell that Judge Camacho can issue a ruling.  He will not have any jurisdiction.  I will call you after the hearing***."

77.    The next day, Plaintiff left for his home State of California.  While at the Newark Airport, State of New Jersey, Plaintiff received a call from attorney/defendant Russo, who told Plaintiff that to his surprise, Judge Camacho upon the recommendation of the Deputy District Attorney Rosenblum issued an Order classifying Plaintiff as a Level III.  Plaintiff

asked attorney/defendant Russo if Plaintiff should return to New York and appear before Judge Camacho.  However, attorney/defendant Russo told Plaintiff he did not have to, because attorney/defendant Russo was going to first file (a) a Motion for Reconsideration (after Judge Camacho returned from his holiday), and straightaway file (b) an Article 78 Petition and (c) a Notice of Appeal.   Attorney/defendant Russo guaranteed Plaintiff that Plaintiff had nothing to worry about, that attorney/defendant Russo had it under his control.

78.     Upon arriving in the City of Palm Springs, County of Riverside, State of California, Plaintiff with his lawyer, David L. Wright, went to the Police Department and registered. Immediately, Plaintiff made copies of the registration business card provided by the registry officer, scanned it and sent it to the New York Sex Offender's Registry in Albany and to attorney/defendant Russo to file it before Judge Camacho and provide a to the Assistant District Attorney Rosenblum, as required under New York S.O.R.A., *California Penal Code* § 290 and S.O.R.NA. (*Adam Walsh Child Protection Act of 2006*, H.R. 4472, 109th Cong. (2d Sess.2006) (the Act) into law. Title I of the Act, entitled the Sex Offender Registration and Notification Act.(SORNA),. See *Title* 42 *United State Code* §§ 16901-16962.

79.     From the day of Plaintiff's return to his home State of California, last week of May through June 28th, 2011, Plaintiff made numerous calls to attorney/defendant Russo, spoke with attorney/defendant Russo on the telephone and wrote several e-mails to each other

regarding (a) the Motion for Reconsideration, (b) Article 78 Petition and (c) the Notice of Appeal. Attorney/defendant Russo assured Plaintiff, that attorney/defendant Russo "was on top of everything", and that he had prepared drafts of said documents, and that attorney/defendant Russo had discussed the matter with attorney/defendant Trakas and other attorneys, all of whom, according to attorney/defendant Russo was a "slam dunk," . . . Plaintiff would be relieved from the Level III Classification.

80.    On June 29th, 2011, Plaintiff e-mailed attorney/defendant Russo asking him if "Has Camacho withdrawn his Order?" Attorney/defendant Russo responded, "*Camacho is out until after the fourth of July. The ADA will get 20 days to respond and the matter will be decided*." Clearly, attorney/defendant Russo implied and led the Plaintiff to believe that attorney/defendant Russo, had in fact, filed (a) the Motion for Reconsideration, and that the Assistant District Attorney would have "20 days to respond." In fact, in an e-mail sent by the New York Appellate Court Clerk, that attorney/defendant Russo had not filed said (a) Motion for Reconsideration, (b) Article 78 Petition, and/or (c) Notice of Appeal.

81.    Plaintiff is informed and believes that attorney/defendant Russo deception and conduct violates *New York Judicial Law* § 487, *New York Code* § 487 and *New York Deceptive Practice Statutes* § 349(a) Business Law Statute, for "**Deceptive acts or practices in the conduct of any business, trade or commerce . . .**" which is a predicate to a criminal and civil R.I.C.O. violation. Furthermore, Plaintiff is informed and believes that the deception and conduct exhibited, planned, executed and implemented by

attorneys/defendants Russo and Trakas in the  clients/victims' cases listed below (S.M., a New Jersey traffic accident and property liability case; N.B. a New York family court matter; P.C. and M.C., New York, a Title VII, wrongful termination and discrimination case; G.S., a FBI/IRS criminal investigation out of Las Vegas, Nevada.; J.K., a witness in a State of Nevada, FBI/IRS criminal investigation. California v. Garcia (Palm Springs, California) murder case of a gay senior citizen - (***Garcia v. County of Riverside***, Case #: 5:11-cv-00034-VAP-OP, filed January 04th, 2011); A.W., R. A., and Sovereign International Group, California, Arizona and Illinois security fraud case, In the Matter of The Omicron Group (C-07506); S.P. and L.P. Montana civil rights U.S. 9TH Circuit Court of Appeals case; and D.M.C., a Montana/Pennsylvania Mann Act criminal case. (Attorney/defendant Russo also associate counsel with attorney/defendant Trakas) constitute the required predicates pursuant to the  Federal Racketeer Influenced and Corrupt Organizations Act (R.I.C.O), at ***Title*** 18 ***United States Code*** §  1962, *et seq.,*

82.    Until the time to file (a) Motion for Reconsideration, (b) Article 78 Petition and (c) a Notice of Appeal had elapsed, attorneys/defendant Russo and Trakas kept leading on the Plaintiff to believe that they had performed the above obligations, duties and responsibilities owed to Plaintiff as their client.  In fact, attorneys/defendants Russo and Trakas did completely nothing as they had represented to the Plaintiff, all to his injuries and depravity.

---

*Spiteri v. Russo, et al., etc.*                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

83.     After attorney/defendant Russo realized that he had done completely nothing to perform any of the requests demanded by Plaintiff, as fully stated above, urged Plaintiff to take attorney Wright's request to go back to his home state and residence, in the City of Palm Springs, State of California, and that attorney/defendant Russo would pay for his flight back to Plaintiff's home State, which attorney/defendant Russo did, as it is confirmed through several of his e-mails with Plaintiff.    A meeting ensued with both attorneys/defendants Russo and Trakas, including Plaintiff, were attorneys/defendants Russo and Trakas told Plaintiff that once he goes back to his home State of California, in light of the fact, that his work with them had now been completed, New York State would not have jurisdiction to have Judge Camacho adjudicate a Level Classification.  So, it was agreed that Plaintiff would return back to his home State of California. Attorneys/defendants Russo and Trakas, also agreed that they would financially assist Plaintiff to ship his belongs at his apartment to his Palm Springs, California address, which they never did, and Plaintiff lost in access of one hundred thousand ($100,000.00) of his personal belongings, computer, air-conditioner, furniture, expensive cowboy designer cloths and cowboy hats, wheelchair, Canadian walking cains, etc.

84.     Plaintiff is informed and believes that attorney/defendant Russo gave written notice of Plaintiff's relocation to his home State of California to both the prosecutor and Judge Camacho.  Plaintiff is informed and believe that attorney/defendant Russo provide a copy of California attorney Wright's letter confirming  that Plaintiff was returning to that law firm.  In addition, Plaintiff contacted the Division and notified him of his departure.

---

*Spiteri v. Russo*, et al., etc.                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**              Page 41 of  149

85.    It appears that Judge Camacho had ordered attorney/defendant Russo to tell Plaintiff to appear on or about the same day Plaintiff was leaving for his home State of California. Attorney/defendant Russo kept this information secret from the Plaintiff, and unknown to what Judge Camacho had requested departed to his home State of California.

86.    While waiting for his flight at the Newark Airport, Plaintiff received a telephone call from attorney/defendant Russo, who told Plaintiff that Judge Camacho had classified Plaintiff a Level III.  Plaintiff asked attorney/defendant Russo if he (Plaintiff) should cancel his flight and get a later flight, to appear before Judge Camacho.  However, attorney/defendant Russo assured Plaintiff that there was no need, and that Judge Camacho's decision was wrong . . . "the topic of registration is politically very sensitive. These Judges don't want to create the appearance they are being lenient.  He is up for re-election. I will file a Request for Reconsideration, an Article 78 Petition and Notice of Appeal. We have to wait we have his written decision."   In a follow-up e-mail by attorney/defendant Russo, he reinstated his intentions of  doing what is necessary to overturn Judge Camacho's "outrageous and baseless decision", as attorney/defendant Russo had put it, in many of the telephone conversations with the Plaintiff.

87.    Thereafter, Plaintiff made numerous calls to attorneys/defendants secretaries, all of whom told Plaintiff that attorneys/defendants Russo and Trakas were in conference, out of the office, in trial or at some court hearing.

88.    As Plaintiff began to become more suspect of that  attorneys/defendants Russo and Trakas might have not acted in his best interest, and did not file (a) the Motion for

Reconsideration; (b) the Article 78 Petition and (c) the Notice of Appeal, Plaintiff contacted the the clerk of the Supreme Court.  Plaintiff was told that there was no Motion for Reconsideration filed by attorneys/defendants Russo and Trakas.  He then contacted the chambers of Judge Camacho and was told the same thing.   He then contacted to clerk of the appellate division.  Plaintiff was told there was no Article 78 Petition filed by attorneys/defendants Russo and Trakas.    He then contacted the New York Court of Appeals' Clerk.   The Clerk told Plaintiff that "I will look around and see if anything has been accidently misfiled, and call you back."   When the Clerk called back he informed Plaintiff that he had checked with different departments and the result was that there was nothing that had been filed by attorneys/defendants Russo and Trakas.  The Clerk also notified Plaintiff, that he (the Clerk) had even contacted attorney/defendant Russo's office and left several messages, which attorney/defendant Russo never returned.

89.    Plaintiff immediately contacted  attorneys/defendants Russo and Trakas and requested an explanation.  Instead,  attorneys/defendants Russo and Trakas executed and implemented a course of harassing, oppressive, humiliating and offensive e-mails and other responses[11], designed to intimidate, coerce and subjugative the Plaintiff, which were not

_____

[11]**PLEASE TAKE NOTICE** that the use of offensive, humiliating and oppressive, sexual, and other personal attacks on clients' was customary to both attorneys/defendants Russo and Trakas, which were not limited to, (a)  describing women client's autonomy as "giving them an erection or wanting to f . . . them in the ass or vagina"; (b) women with big breasts as "want to suck on their tits and cum all over their necks,"; (c)  gay or transsexual clients as "sick mother . . . f . . . .  and sick in the head and sociopaths (re: T.K)"; (d) telling their female assistants and paralegal "how much they would love to f . . . . them"; (e) calling certain minor students with disabilities, "as f . . . ed in the head," and in particular as to Mrs. D, attorney/defendant Russo called her "a f . . . ed up sociopath"; (f) as to attorney/defendant Trakas he always expressed how he wished his present "bitch" wife would die, so he could marry his paralegal J.H. (Office Manager), and always wished that his wife would be run over by a vehicle. However, when

CARMEL A. SPITERI
c/o Gareain Snartahian
9790 Prescott Creek Court
Las Vegas, Nevada 89117-3408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

limited to:

  a.  Calling the Plaintiff "piece of shit."

  b.  Calling the Plaintiff "a lair."

  c.  Threatening Plaintiff to have him arrested and prosecuted for "fleeing the States," when it was attorney/defendant Russo that paid for the flight, as he swears to in his emails.

  d.  Calling the Plaintiff "a child molester" to other clients,

  e.  Calling Plaintiff "a deeply sick pathological sociopath", and

  f.  Revealing attorney-client privileged information to third parties, including clients.

90.  Plaintiff was told that the time to file had elapsed.

91.  This lawsuit followed.

**FIRST CLAIM FOR RELIEF**
**(Unjust Enrichment, Fraud, Deceit and Misrepresentation)**
**(Against ATTORNEY/DEFENDANT TRAKAS)**

92.  Plaintiff realleges and incorporates herein by reference each and every applicable above paragraphs of this Complaint as if set forth in full.

---

attorney/defendant Trakas found out that J.H. was a lesbian who had been in a sexual and intimate relationship with another female assistant in his office, he fired the other female. In addition, to "show his love to her", attorney/defendants paid her wages partially by check and half by cash. He also paid J.H. for her college education; (g) Using the phrases, "Pain in my ass and I love you" to female clients, espcially P.C.. This type of offensive attitude and conduct towards clients was almost only daily basis, and created a hostile work environment full of discrimination, prejudice and oppression. Moreover, when Plaintiff would suffer a seizure in the office, and/or ended up in a wheelchair and/or used his canadian cain, attorneys/defendants Russo and Trakas would make fun of him in the presence of not only the workers, but at times in the presence of the clients.

CARMEL A. SPITERI
c/o Garedin Soartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Eml: newyorkrussotrakaslawsuit@gmail.com

93.    In or about the late month of November 2009, Plaintiff began to work, as a non-New York citizen and non-resident worker , with attorneys/defendants Trakas and Russo. As promised, attorney/defendant Trakas, on his way to the office, in Astoria, would pick Plaintiff up from the apartment in Flashing, New York up from it and took him back to it, so he could work at their offices.  In addition, when they could not pick him up and drop him off to his apartment, they paid for a taxi service.  Ultimately, they moved Plaintiff into an apartment closer to their office, in Astoria. In fact, they paid for the first month rent and security deposit, and attorney/defendant Trakas purchased Plaintiff his bed and furniture for his apartment from a friend/client of his, on Broadway Street, in Astoria, New York.  The apartment was only one block away from Bryant High School, and two blocks away from other public schools.

94.    However, although the apartment was in Astoria, it was still far from their offices, and therefore, everyday, they paid for a taxi to pick up Plaintiff from his apartment to their office, and back.  However, sometimes, either of them would drive Plaintiff back from work to his apartment on their way to their respective residence.

95.    Prior to commencing his temporary non-New York citizen and non-resident worker employment with attorney/defendant Trakas, it was agreed to the following, but not limited to:

a.    Plaintiff would temporary work for attorney/defendant Trakas, at Plaintiff's customary rate of $75.00 per hour.  (Reference the above March 10th, 2005 Order of U.S. District Judge Lloyd D. George) indicating that Plaintiff's non-attorney advocate/legal

assistance fees were at $60.00 per hour.)    Said fees  were assessed approximately eight years ago, and with the cost of living and more experience Plaintiff raised his fees to $120.00 per hour, but agreed to only charge attorneys/defendants Russo and Trakas $75.00 per hour.

      b.     Plaintiff would be paid ten percent (10%) commission on any case he brought in for attorney/defendant Trakas. In addition, Plaintiff would be paid, yet another ten percent (10%) on any judgement and/or settlement per each case.  Furthermore, Plaintiff would be paid his hourly weekly fees of $75.00 per hour.  Please note that the practice of awarding a ten (10%) referral fee is customary with these two attorneys/defendants[12].

      c.     Attorney/defendant Trakas would share to pay for transportation to and from Plaintiff's apartment to his offices with attorney/defendant Russo.

      d.     Any out-of-state travel, food and lodging arising from a case being handled by attorneys/defendants Russo and/or Trakas or both, would be paid by them.

96.    At all times mentioned herein, Plaintiff alleges that attorney/defendant Trakas associated with attorney/defendant Russo, and together agreed to manipulate the Plaintiff to induce him, through the use of the United States Postal Service, internet, and the telecommunications system, an other interstate communication means, to accept a position within their respective law office, in order to enrich him from his knowledge of civil rights, criminal, and other fields of litigation, at Plaintiff's expense and those of his friends he

---

[12]Here are some of the examples, which are not limited to: (1) attorney/defendant Trakas, paid C.B., for referring her mother's car accident case.  In a case involving the New York Department of Consumer Affairs, were attorneys/defendants Russo and Trakas represented several "towing companies", (approximately 14 companies) charging them between $4,500.00 to $3,000.00 retainer, attorneys/defendants Russo and Trakas paid the Union Representative, who referred said cases, ten (10%) percent per each client, in cash.

referred to attorney/defendant Trakas.

97.     While temporary employed with attorney/defendant Trakas, Plaintiff worked on the following cases, not limited to:

a.     S.M., a New Jersey traffic accident and property liability case. Retainer: **$3,500.00**.  (100 hours, including visiting and interviewing the client in her house in New Jersey and at her place of business in New York City)[13]

b.     N.B. a New York family court matter.   Retainer:  **$8,000.00**.  (267 hours, including airfare, lodging and back and forth from California to New York for hearings and other meetings with attorney/defendant Trakas and the client.)

c.     A.W., R. A., and Sovereign International Group, California, Arizona and Illinois security fraud case, In the Matter of The Omicron Group (C-07506. Illinois.) Retainer: **$65,000.00**.  (320 hours, including airfare, lodging and back and forth from California to New York for hearings and other meetings with attorney/defendant Trakas and the client.)

d.     D.M.C., a Montana/Pennsylvania Mann Act criminal case.   (D.M.C.), Retainer: **$85,000.00.** (620 hours, including airfare, lodging and back and forth from California to Montana, from New York to Montana, from California to New York, then New York to Pennsylvania, then by vehicle to the federal court in Erie, Pennsylvania,  for hearings and other meetings with attorney/defendant Trakas and the client.  Plaintiff also

---

[13]Plaintiff has rounded off the hours he has worked on each case for attorney/defendant Trakas.

CARMEL A. SPITERI
c/o Garedin Srartalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

traveled to the FBI Regional Office in New York City to inspect evidence on client's computer in the possession and control of the U.S. Department of Justice.)

      e.    M.B.  Wrongful suspension from her teaching position.  (30 hours)

      f.    M.B.  Criminal prosecution.  (15 hours)

      g.    M.B. and her mother, unlawful property possession, a civil matter.  (65 hours. Plaintiff also traveled to the court for hearings, and made one appearance on behalf of attorney/defendant Trakas to continue the matter due to a calendar conflict)

      h.    P.S. Individual with Disabilities Education Act/Rehabilitation Act 1974 case against the New York City Board of Education.  (375 hours.  Appeared several times for the administrative trial.  Numerous interviews with client.  Inspected the new education institution per administrative law judge's order; met on numerous of occasions with school officials.  Appeared and defended client at the New York Board of Education disciplinary trial pending expulsion of client from the school and placing him in a detention facility, etc.)

      i.    M.M.  (sic) slip and fall case on the steps of a church. (10 hours)

      j.    S.W.  (sic) Hit by a moving vehicle.  (37 hours.  Went with client to clinic, rehabilitation and several visits to her home, per request of attorney/defendant Trakas)

      k.    A.B.  Hit by vehicle in the street.  (10 hours)

      l.    S.J.  Criminal prosecution failure of sex offender to register in New Jersey. (8 hours)

CARMEL A. SPITERI
c/o Ganelin Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

m.    S.J. Petition to be relieved from sex registration.  (37 hours)

n.    J.K.  Veterans' administration benefits. (4 hours)

o.    Attorney/defendant Trakas' niece.   Violation of the Individual with Disabilities Education Act.  (1 hour)

p.    A.P.  Copyright infringement, Unlawful eviction, Fraud case.  (168 hours)

q.    and Other cases.

98.    During the time relevant herein, Plaintiff worked approximately fifty (50) to (60) hours per week, not only at attorney/defendant Trakas' office but Plaintiff also worked out of his house.   Plaintiff traveled to Pennsylvania, Montana and New York, on attorneys/defendants Russo and Trakas' cases, most of the time at Plaintiff's expense, and never been reimbursed for said expenses by either attorney/defendant Russo or Trakas.

99.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss,

that attorney/defendant Trakas admits to the fraud[14] through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from criminal cases.  Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

100.   By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the below Fn 12 , to avoid liability.   Plaintiff alleges that

---

[14]In their Motion to Dismiss, attorneys/defendants Russo and Trakas affirm, state and swear pursuant to *Federal Rules of Civil Procedure* Rule 11, "*For example, Plaintiff refers to himself, at least a dozen times, as a "non-resident worker'". Plaintiff, by his own admissions, lived and worked in New York City; and unless he was commuting daily from California or another State, he was not, and could not be, a "non-resident worker.*"  (Id. page7, ¶ 1, Fn 5). Then, "*. . . he has failed to articulate any reason that he should not have been required to register as a convicted sex offender in New York or that given his record of conviction and sexual molestation of minor children in California he should not have been classified as a Level III Sex Offender by New York Supreme Court Justice Camacho.*" (Id. page 9, ¶ 1, lines 6-10).  Then, page 9, ¶ 3, lines 5-7 and Page 10, lines 1-2,, "*. . . plaintiff did not (and cannot) allege that he would have "been successful" in either action. To wit, a convicted sex offender residing in New York. is required to register and be photographed after classification. Mr. Spiteri fits foursquare within the  applicable  in New York State which is why he was properly posted on the sex offender registry here in New York and in California before.*"

---

these attorneys/defendants Russo and Trakas' hands are not only "unclean[15]", but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

101.    Plaintiff is informed and believes and based on his calculation of time spent on working on attorney/defendant Trakas' case, the total basic amount due to Plaintiff from attorney/defendant Trakas is **$145,525.00**.

102.    Plaintiff further alleges that since the failure to pay Plaintiff his due wages of **$145,525.00** arising from factors of attorney/defendant Trakas's *New York Judicial Law* § 487 and *New York Code* § 487 attorney/defendant Trakas forfeits to the Plaintiff injured treble damages, to be recovered in this action for the amount of **$436,575.00.**

103.    In addition, Plaintiff is entitled pursuant to *New York Deceptive Practice Statutes* § 349(f) Business Law Statute, recovery of his actual damages of **$145,525.00**, an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney`s fees to a prevailing plaintiff.

104.    Furthermore, Plaintiff contends that pursuant to trebled according to statute, *Title 18 United States Code* § 1964(c) in the amount of **$436,575.00 multiplied by three times**

CARMEL A. SPITERI
c/o Garelith Snartahuan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkvrussottrakaslawsit@gmail.com

---

[15]See *Holland v. Ryan*, 307 A.D.2d 723 (4th Dept. 2003) There is no doubt that based on the facts in this FAC, the acts and omissions planned, designed, executed by attorneys/defendants Russo and Trakas were '. . . immoral and one to which equity will not lend its aid.'" Id. 307 A.D.2d at 725 (quoting *Janke v. Janke*, 47 A.D.2d 445, 450 (4th Dept. 1975), aff'd for reasons stated, 39 N.Y.2d 786 (1976), and *Muscarella v. Muscarella*, 93 A.D.2d 993 (4th Dept. 1983), respectively). They in fact, admit in their aforementioned Motion to Dismiss as reference in Fn 12 of this FAC, that they commit fraud through and by the use of interstate commerce and the telecommunication system.

---

for an approximately due amount of **$1,309,725.00**;  prejudgment interest according to statute; and for Plaintiff's reasonable attorneys' fees and costs according to statute, *Title 18 United States Code* § 1964(c).

105.   Plaintiff opines and alleges that principles of equity and good conscience mandate that this Honorable Court prevent attorney/defendant Trakas from ripping off the Plaintiff for services he has performed and not been paid for, and from reaping thousands of dollar windfall and any benefits arising out of the fraudulent litigation practices of securing large amounts of monetary retainers with the intent not to prosecute the victims/clients cases in an effective manner or just abandoning the victims/clients, as detailed herein.  Therefore, Plaintiff respectfully requests that attorney/defendant Trakas, should post a bond not to exceed **$1,309,725.00** as security before he brings his defence to this action, in order to guarantee this Honourable Court and the people of the State of New York, that attorney/defendant Trakas will not continue his course of conduct to deceit or enter or contemplate a collusion, or consents to any deceit or collusion, with intent to deceive this Honourable Court or the Plaintiff in this action.

106.   In addition, Plaintiff seeks an Order from this Honourable Court commanding attorney/defendant Trakas to provide a copy of this complaint to the State Bar and subject himself to that jurisdiction for the appropriate disciplinary action.

107.   Wherefore, Plaintiff seeks judgement in his favour as stated herein, and for any other relief this Honourable Court deems just and proper.

/ / /

CARMEL A. SPITERI
c/o Ganelin Spartakyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

## SECOND CLAIM FOR RELIEF
### (Liability under-Thirteenth Amendment to the United States Constitution)
### (Against ATTORNEY/DEFENDANT TRAKAS)

108.    Plaintiff realleges and incorporates herein by reference each and every applicable above paragraphs of this Complaint as if set forth in full.

109.    The **Thirteenth Amendment** declares that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." The Amendment is "self-executing without any ancillary legislation, so far as its terms are applicable to any existing state of circumstances," **Civil Rights Cases**, 109 U.S. 3, 20, 3 S.Ct. 18, 28,27 L.Ed. 835 (1883) "Precedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion" .... "The express exception of involuntary servitude imposed as a punishment for crime provides some guidance. The fact that the drafters felt it necessary to exclude this situation indicates that they thought involuntary servitude includes at least situations in which the victim is compelled to work by law". **United States v. Kozminski**, 483 US 931 (US Supreme Court, 1988)

110.    The coercion used by attorney/defendant Trakas, as did attorney/defendant Russo, was that in New York, Plaintiff could not be classified other than a Level I, because the conviction did not satisfy all the elements of a comparable crime in New York, since it involved a willing participant, and that Plaintiff would be entitled not to register. Attorney/Defendant Trakas told Plaintiff  not to move back to his home State and stay in

New York.   Plaintiff stated to attorney/defendant Trakas that he was close to his family in North Las Vegas, and that with attorney/defendant Trakas helping him to file his Petition to be relieved from registration in California as recommended by the California Attorney General's letter to attorney/defendant Trakas, Plaintiff wanted to move back.   However, attorney/defendant Trakas told Plaintiff that since he was already "in the system in New York" he would have to also register in New York if he moved back to his home State of California, no matter what.   Plaintiff would have left the temporary service of attorney/defendant Trakas but if it was not for his "placing the free of God" in the Plaintiff that he would have to travel back to New York and register every year, if he had left.   Of course, that was not the truth.

111.   Plaintiff alleges that the conduct, restrains, deceit, misrepresentation, and having Plaintiff work without appropriate financial compensation for the service rendered, he was otherwise entitled, constitutes involuntary servitude in violation of the Thirteenth Amendment to the United States Constitution[16].

112.   If Plaintiff had moved upon the notice from the Board that they were referring his case for a Level Classification under S.O.R.A., he would not have found himself in the predicament that he now faces, and would have stopped attorney/defendant Trakas from taking advantage of him and his friends (clients/victims).

   **WHEREFORE**, Plaintiff seeks judgement in his favour as follows:

---

   [16]In ***McGarry v. Pallito***, et al., 2nd U.S. Circuit Court of Appeals, No. 10-669 (August 03rd, 2012), Justice Parker, who drafted the Honourable Court's Opinion stated ."The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery."

*Spiteri v. Russo*, et al., etc.                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

a.    **$1,309,725.00**   for   actual   wages   earned   under   the   FLSA   from attorney/defendant Trakas, which includes the treble damages in accordance with applicable federal and state statutes.

b.    Plaintiff seeks **$1,000,000.00** in actual damages.

c.    **$10,000,000.00** in punitive damages.

d.    In addition, Plaintiff seeks an Order from this Honourable Court commanding attorney/defendant Trakas to provide a copy of this complaint to the State Bar and subject himself to that jurisdiction for the appropriate disciplinary action.

e.    Plaintiff seeks any other relief which this Honourable Court deems just and proper.

f.    Plaintiff prays for leave to amend this complaint as necessary.

### THIRD  CLAIM FOR RELIEF
### (Liability for Legal Malpractice)
### (Against ATTORNEY/DEFENDANT TRAKAS)

113.   Plaintiff realleges and incorporates herein by reference each and every applicable above paragraphs of this Complaint as if set forth in full.

114.   Plaintiff hired attorney/defendant Trakas to represent him in a pre-S.O.R.A. proceeding, which was based attorney/defendant Trakas' professional legal opinion and promise to Plaintiff, that Plaintiff could not be subjected for a Level Classification under S.O.R.A., as a  non-New York citizen and non-resident worker  pursuant to *Correction Law* § 168-f(6).

---

*Spiteri v. Russo, et al., etc.*                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 55 of  149

115.   After Plaintiff had been a  non-New York citizen and non-resident worker , performing work for attorney/defendant Trakas, the Board of Sex Offender's Examiners notified Plaintiff that he would have to register and be adjudicated a Level III Classification based on their recommendation.

116.   Plaintiff immediately notified attorney/defendant Trakas of the situ ation. attorney/defendant Trakas told Plaintiff, "Don't worry.  I'll take care of it.  We'll file an Article 78 Petition.  I want you to prepare me a draft of it."

117.   Under attorney/defendant Trakas' supervision Plaintiff prepared an approximately 97 page Article 78 Petition, which he gave to attorney/defendant Trakas for his review, editing and finalization.

118.   Attorney/defendant Trakas promised Plaintiff that he would file the Article 78 Petition, and told Plaintiff, once more "Don't worry."

119.   Plaintiff relied on the representations made by attorney/defendant Trakas, and that was no reason to belief that attorney/defendant Trakas would lie to the Plaintiff or steer him wrong.

120.   However, approximately after several weeks,  Plaintiff was notified by the Board, Plaintiff was notified by the Queens County Supreme Court that his case was scheduled for a S.O.R.A. Level III Classification hearing before Judge Fernando Camacho, and that Judge Comacho assigned attorney Kennedy to represent the Plaintiff in said hearing.

121.   Plaintiff asked attorney/defendant Trakas about the aforementioned Article 78 Petition.  Attorney/defendant Trakas told Plaintiff that the time to file said Petition had

CARMEL A. SPITERI
c/o Geralin Scantlavan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyork/russotrakaslawsuit@gmail.com

elpased and that attorney/defendant Russo would represent Plaintiff in the S.O.R.A. Level III Classification hearing before Judge Camacho.

122.    Plaintiff contends that if it was for Attorney/defendant Trakas' failure to file the aforementioned Petition and seeking a stay of the S.O.R.A. Level III Classification hearing before Judge Camacho, Plaintiff would not have been subjected to such process, but would have immediately returned to his home State of California.

123.    Plaintiff alleges that the acts and omissions of attorney/defendant Trakas were deliberate acts, contemplated on hold Plaintiff to involuntary servitude and conspiring with attorney/defendant Russo to secure thousands of dollars of retainers from friends of the Plaintiff who sought expert legal opinion, to which attorney/defendant Trakas attested to in conning Plaintiff's friends who are listed above, to pay thousands of dollars in retainer to both attorneys/defendants Trakas and Russo, with what ultimately appeared to be scheme of fraud, deceit, misrepresentation and abandonment and violation of the R.I.C.O. Act and provisions.

124.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss,

CARMEL A. SPITERI
c/o Gareslin Snartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

that attorney/defendant Trakas admits to the fraud (See Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from criminal cases. Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

125.   By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above Fn 12 , to avoid liability. Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean", but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

126.   Therefore, Plaintiff seeks compensatory, punitive and general damages to be determined at time of trial, against attorney/defendant Trakas, and for any other relief this Honourable Court.

**FOURTH  CLAIM FOR RELIEF**
**(Liability Under Fair Labor Standards Act- *Title 29 United States Code*  § 201)**
**(Against ATTORNEY/DEFENDANT TRAKAS)**

127.   Plaintiff realleges and incorporates herein by reference each and every applicable above paragraphs of this Complaint as if set forth in full.

CARMEL A. SPITERI
c/o Gareth Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

128.    The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. ***Real v. Driscoll Strawberry Assocs***., 603 F.2d 748(9th Cir.1979). The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." ***Rutherford Food Corp. v. McComb***, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947). The touchstone is "economic reality." ***Goldberg v. Whitaker House Cooperative, Inc***., 366 U.S. 28, 33,81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

129.    The US Supreme Court's Economic Reality test's requirements under ***Goldberg v. Whitaker House Co-op., Inc***. 366 U.S. 28 must be met.

130.    The economic reality test includes inquiries into, whether the alleged employer:

        a.      Had the power to hire and fire the employees;

        b.      Supervised and controlled employee work schedules or conditions of employment;

        c.      Determined the rate and method of payment, and

        d.      Maintained employment records.

131.    In the instant case, attorney/defendant Trakas employed Plaintiff.  As stated within this FAC:

        a.      Plaintiff interviewed prospective clients, active clients and made numerous court and administrative law hearing appearance for attorney/defendant Trakas, including traveling out-of-state on cases assigned to the Plaintiff.

b.      Attorney/defendant Trakas exercised the power to hire and fire Plaintiff and other employees.

c.      Attorney/defendant Trakas  paid Plaintiff and other workers.

d.      Attorney/defendant Trakas maintained employment records, which were used to file attorney's fees and services in several of the cases being handled by the Plaintiff.

e.      Attorney/defendant Trakas counseled Plaintiff on job performance and getting along with coworkers.

f.      Attorney/defendant Trakas assigned work and assigned an office desk, computer, and telephone for Plaintiff.  In fact, attorney/defendant Trakas informed Plaintiff that a conflict arose between attorney/defendant Trakas and his landlord, who wanted attorney/defendant Trakas to pay a higher renting rate since, Plaintiff was using the law library and the desk.

g.      Attorney/defendant Trakas agreed on a $75.00 per hour  rate of payment.

132.   Attorney/defendant Trakas has liability under the FLSA for pay at $75.00 per hour for hours of work by Plaintiff.

133.   Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and

go back and forth on cases for his State of California employer, the Law Offices of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from criminal cases. Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

134.   By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above Fn 12 , to avoid liability.   Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

/ / /

/ / /

CARMEL A. SPITERI
c/o Garedin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

**WHEREFORE**, Plaintiff seeks judgement in his favour as follows:

a.      **$1,309,725.00** for actual wages earned under the FLSA from attorney/defendant Trakas, which includes the treble damages in accordance with applicable federal and state statutes.

b.      Plaintiff seeks **$1,000,000.00** in actual damages.

c.      **$10,000,000.00** in punitive damages.

d.      In addition, Plaintiff seeks an Order from this Honourable Court commanding attorney/defendant Trakas to provide a copy of this complaint to the State Bar and subject himself to that jurisdiction for the appropriate disciplinary action.

e.      Plaintiff seeks any other relief which this Honourable Court deems just and proper.

f.      Plaintiff prays for leave to amend this complaint as necessary.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment, Fraud, Deceit and Misrepresentation)
### (Against ATTORNEY/DEFENDANT RUSSO)

135.   Plaintiff realleges and incorporates herein by reference each and every applicable above paragraphs of this Complaint as if set forth in full.

136.   In or about the late month of November 2009, Plaintiff began to work, as a non-New York citizen and non-resident worker , with attorneys/defendants Trakas and Russo. As promised, attorney/defendant Trakas, on his way to the office, in Astoria, would pick Plaintiff up from the apartment in Flashing, New York up from it and took him back to it, so he could work at their offices.  In addition, when they could not pick him up and drop

him off to his apartment, they paid for a taxi service.  Ultimately, they moved Plaintiff into an apartment closer to their office, in Astoria. In fact, they paid for the first month rent and security deposit, and attorney/defendant Trakas purchased Plaintiff his bed and furniture for his apartment from a friend/client of his, on Broadway Street, in Astoria, New York. The apartment was only one block away from Bryant High School, and two blocks away from other public schools.

137.   However, although the apartment was in Astoria, it was still far from their offices, and therefore, everyday, they paid for a taxi to pick up Plaintiff from his apartment to their office, and back.  However, sometimes, either of them would drive Plaintiff back from work to his apartment on their way to their respective residence.

138.   Prior to commencing his temporary non-New York citizen and non-resident worker employment with attorney/defendant Russo, it was agreed to the following, but not limited to:

a.      Plaintiff would temporary work for attorney/defendant Russo, at Plaintiff's customary rate of $75.00 per hour.  (Reference the above  March 10th, 2005 Order of U.S. District Judge Lloyd D. George)

b.      Plaintiff would be paid ten percent (10%) commission on any case he brought in for attorney/defendant Russo. In addition, Plaintiff would be paid, yet another ten percent (10%) on any judgement and/or settlement per each case.  Furthermore, Plaintiff would be paid his hourly weekly fees of $75.00 per hour.  Please note that the practice of

awarding a ten (10%) referral fee is customary with these two attorneys/defendants[17].

    c.    Attorney/defendant Russo would share to pay for transportation to and from

    d.    Any out-of-state travel, food and lodging arising from a case being handled

by attorneys/defendants Russo and/or Trakas or both, would be paid by them.

139.   At all times mentioned herein, Plaintiff alleges that attorney/defendant Russo associated with attorney/defendant Trakas, and together agreed to manipulate the Plaintiff to induce him, through the use of the United States Postal Service, internet, and the telecommunications system, an other interstate communication means, to accept a position within their respective law office, in order to enrich him from his knowledge of civil rights, criminal, and other fields of litigation, at Plaintiff's expense and those of his friends he referred to attorney/defendant Russo.

140.   While temporary employed with attorney/defendant Russo, Plaintiff worked on the following cases, not limited to:

CARMEL A. SPITERI
c/o Gareelin Spartakyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

    [17]Here are some of the examples, which are not limited to: (1) attorney/defendant Russo, paid C.B., for referring her mother's car accident case. In a case involving the New York Department of Consumer Affairs, were attorneys/defendants Russo and Trakas represented several "towing companies", (approximately 14 companies) charging them between $4,500.00 to $3,000.00 retainer, attorneys/defendants Russo and Trakas paid the Union Representative, who referred said cases, ten (10%) percent per each client, in cash. Most criminal cases that attorney/defendant Russo retains are paid in cash, especially the drug cases. Plaintiff is informed and believes that attorney/defendant Russo had kept thousands of dollars which are not taxed, arising from drug cases, that he bought a huge house in Dominica Republic to avoid paying taxes or being discovered. Plaintiff is informed and believe that by transporting in excess of $10,000.00, attorney/defendant Russo has violated the Bank Secrecy Act (**Title** 12 **United States Code** § 1813 et seq., and **Title** 12 **Code of Federal Regulations** § 326 and Patriot Act (**Title** 31 **United States Code** §§ 5311-5330 and **Title** 31 **Code of Federal Regulations** Chapter X.) Plaintiff is further informed and believes that attorney/defendant Russo did not file the U.S. Customs Form 4790.21. On the other hand, attorney/defendant Trakas appears to be responsible enough to claim his earned income, and even when I observed him obtain cash, he immediately deposit it in the bank, making Plaintiff believe that attorney/defendant Trakas claims his earned income for tax purposes.

---

a.    A.W., R. A., and Sovereign International Group, California, Arizona and Illinois security fraud case, In the Matter of The Omicron Group (C-07506. Illinois.) Retainer: **$65,000.00**.  (320 hours, including airfare, lodging and back and forth from California to New York for hearings and other meetings with attorney/defendant Russo and the client.)

b.    D.M.C., a Montana/Pennsylvania Mann Act criminal case.  (D.M.C.), Retainer: **$85,000.00.** (620 hours, including airfare, lodging and back and forth from California to Montana, from New York to Montana, from California to New York, then New York to Pennsylvania, then by vehicle to the federal court in Erie, Pennsylvania,  for hearings and other meetings with attorney/defendant Russo and the client.  Plaintiff also traveled to the FBI Regional Office in New York City to inspect evidence on client's computer in the possession and control of the U.S. Department of Justice.)

c.    DeRea. Individual with Disabilities Education Act/Rehabilitation Act 1974 case against the New York City Board of Education.  (375 hours.  Appeared several times for the administrative trial. Numerous interviews with client.  Inspected the new education institution per administrative law judge's order; met on numerous of occasions with school officials.  Appeared and defended client at the New York Board of Education disciplinary trial pending expulsion of client from the school and placing him in a detention facility, etc.)

d.    Julio Sanchez (aka: "Matacuts," "Mats," "Mata Earring") -US S.DC Docket No.: 09 CR 591-07(NRB) (42 hours)

e.   Daniel Carlos Garcia - Civil Rights case out of U.S. Central District California (415 hours)

f.   Weiss/Albernaty - Security Exchange (120 hours)

g.   Wender Lugo -  US S.DC Docket No. 10 CR 739 (RPP)  (145 hours)

h.   West Hemptons Lawsuit - (65 hours)

i.   Polesky - (347 hours)

j.   Cerda - (445 hours)

k.   NYC Consumer Affairs v. Several Towing Companies   (65 hours)

l.   Dr. Lambrakis   (140 hours)

m.   J. Kennedy (30 hours)

n.   G. Spartalian (15 hours)

o.   and Other cases.

141.   During the time relevant herein, Plaintiff worked approximately fifty (50) to (60) hours per week, not only at attorney/defendant Russo' office but Plaintiff also worked out of his house. Plaintiff traveled to Pennsylvania, Montana and New York, on attorneys/defendants Russo and Trakas' cases, most of the time at Plaintiff's expense, and never been reimbursed for said expenses by either attorney/defendant Russo or Trakas.

142.   Plaintiff is informed and believes and based on his calculation of time spent on working on attorney/defendant Russo' case, the total basic amount due to Plaintiff from attorney/defendant Russo is **$235.800.00**.

143.   Plaintiff further alleges that since the failure to pay Plaintiff his due wages of **$235.800.00**. arising from factors of attorney/defendant Russo's ***New York Judicial Law*** § 487 and ***New York Code*** § 487 attorney/defendant Russo forfeits to the Plaintiff injured treble damages, to be recovered in this action for the amount of **$707,400.00.**

144.   In addition, Plaintiff is entitled pursuant to ***New York Deceptive Practice Statutes*** § 349(f) Business Law Statute, recovery of his actual damages of **$235.800.00**, an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney`s fees to a prevailing plaintiff.

145.   Furthermore, Plaintiff contends that pursuant to trebled according to statute, ***Title*** 18 ***United States Code*** § 1964(c) in the amount of **$707,400.00 multiplied by three times** for an approximately due amount of **$2,122,200.00**;   prejudgment interest according to statute; and for Plaintiff's reasonable attorneys' fees and costs according to statute, ***Title*** 18 ***United States Code*** § 1964(c).

146.   Plaintiff opines and alleges that principles of equity and good conscience mandate that this Honorable Court prevent attorney/defendant Russo from ripping off the Plaintiff for services he has performed and not been paid for, and from reaping thousands of dollar windfall and any benefits arising out of the fraudulent litigation practices of securing large amounts of monetary retainers with the intent not to prosecute the victims/clients cases in an effective manner or just abandoning the victims/clients, as detailed herein.  Therefore, Plaintiff respectfully requests that attorney/defendant Russo, should post a bond not to exceed **$2,122,200.00** as security before he brings his defence to this action, in order to

CARMEL A. SPITERI
c/o Garedin Srantabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-04403
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialaslawsuit@gmail.com

---

guarantee this Honourable Court and the people of the State of New York, that attorney/defendant Russo will not continue his course of conduct to deceit or enter or contemplate a collusion, or consents to any deceit or collusion, with intent to deceive this Honourable Court or the Plaintiff in this action.

147.   In addition, Plaintiff seeks an Order from this Honourable Court commanding attorney/defendant Russo to provide a copy of this complaint to the State Bar and subject himself to that jurisdiction for the appropriate disciplinary action.

148.   Wherefore, Plaintiff seeks judgement in his favour as stated herein, and for any other relief this Honourable Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
### (Liability under-Thirteenth Amendment to the United States Constitution)
### (Against ATTORNEY/DEFENDANT RUSSO)

149.   Plaintiff realleges and incorporates herein by reference each and every applicable above paragraphs of this Complaint as if set forth in full.

150.   The *Thirteenth Amendment* declares that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." The Amendment is "self-executing without any ancillary legislation, so far as its terms are applicable to any existing state of circumstances," *Civil Rights Cases*, 109 U.S. 3, 20, 3 S.Ct. 18, 28,27 L.Ed. 835 (1883) "Precedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion" . . . . "The express exception of involuntary servitude imposed as a punishment for crime provides some guidance. The fact that the drafters felt it necessary

to exclude this situation indicates that they thought involuntary servitude includes at least situations in which the victim is compelled to work by law". *United States v. Kozminski*, 483 US 931 (US Supreme Court, 1988)

151.   The coercion used by attorney/defendant Russo, as did attorney/defendant Russo, was that in New York, Plaintiff could not be classified other than a Level I, because the conviction did not satisfy all the elements of a comparable crime in New York, since it involved a willing participant, and that Plaintiff would be entitled not to register. Attorney/Defendant Russo told Plaintiff  not to move back to his home State and stay in New York, as did attorney/defendant Trakas.   Plaintiff stated to attorney/defendant Russo that he was close to his family in North Las Vegas, and that with attorney/defendant Russo helping him to file his Petition to be relieved from registration in California as recommended by the California Attorney General's letter to attorney/defendant Trakas, Plaintiff wanted to move back.  However, attorney/defendant Russo told Plaintiff that since he was already "in the system in New York" he would have to also register in New York if he moved back to his home State of California, no matter what, as did attorney/defendant Trakas.  Plaintiff would have left the temporary service of attorney/defendant Russo but if it was not for his "placing the free of God" in the Plaintiff that he would have to travel back to New York and register every year, if he had left.   Of course, that was not the truth.

152.   Plaintiff alleges that the conduct, restrains, deceit, misrepresentation, and having Plaintiff work without appropriate financial compensation for the service rendered, he was otherwise entitled, constitutes involuntary servitude in violation of the Thirteenth

CARMEL A. SPITERI
c/o Gareldn Sparkavan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

Amendment to the United States Constitution[18].

153.    If Plaintiff had moved upon the notice from the Board that they were referring his case for a Level Classification under S.O.R.A., he would not have found himself in the predicament that he now faces, and would have stopped attorney/defendant Russo from taking advantage of him and his friends (clients/victims).

154.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (See Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from  criminal cases.  Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

CARMEL A. SPITERI
c/o Garnelin Spartakyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

[18]In *McGarry v. Pallito*, et al., 2nd U.S. Circuit Court of Appeals, No. 10-669 (August 03rd, 2012), Justice Parker, who drafted the Honourable Court's Opinion stated ."The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery."

---

155.   By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above  Fn 12 , to avoid liability.   Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

**WHEREFORE**, Plaintiff seeks judgement in his favour as follows:

a.      **$2,122,200.00**   for   actual   wages   earned   under   the   FLSA   from attorney/defendant Russo, which includes the treble damages in accordance with applicable federal and state statutes.

b.      Plaintiff seeks **$1,000,000.00** in actual damages.

c.       **$10,000,000.00** in punitive damages.

d.      In addition, Plaintiff seeks an Order from this Honourable Court commanding attorney/defendant Russo to provide a copy of this complaint to the State Bar and subject himself to that jurisdiction for the appropriate disciplinary action.

e.      Plaintiff seeks any other relief which this Honourable Court deems just and proper.

CARMEL A. SPITERI
c/o Gareth Svartsteyn
9790 Prescott Creek Court
Las Vegas, Nevada 89117-9408
(For Mailing Purposes Only)
Tel: 202.409.J1508
Em: newyorkrussotrakaslawsuit@gmail.com

f.      Plaintiff prays for leave to amend this complaint as necessary.

## SEVENTH CLAIM FOR RELIEF
### (Liability for Legal Malpractice)
### (Against ATTORNEY/DEFENDANT RUSSO)

156.   Plaintiff realleges and incorporates herein by reference each and every applicable above paragraph of this Complaint as if set forth in full.

157.   Plaintiff hired attorney/defendant Russo to represent him in a the S.O.R.A. and Post S.O.R.A. proceedings, which was based attorney/defendant Russo' professional legal opinion and promise to Plaintiff, that Plaintiff could not be subjected for a Level Classification under S.O.R.A., as a  non-New York citizen and non-resident worker pursuant to *Correction Law* § 168-f(6).

158.   Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (See Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from  criminal cases.  Plaintiff had been trained and taught

CARMEL A. SPITERI
c/o Garrelin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

159.  By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above  Fn 12 , to avoid liability.  Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

160.  After Plaintiff had been a  non-New York citizen and non-resident worker , performing work for attorney/defendant Russo, the Board of Sex Offender's Examiners notified Plaintiff that he would have to register and be adjudicated a Level III Classification based on their recommendation.

161.  However, approximately after several weeks,  Plaintiff was notified by the Board, Plaintiff was notified by the Queens County Supreme Court that his case was scheduled for a S.O.R.A. Level III Classification hearing before Judge Fernando Camacho, and that Judge Camacho assigned attorney Kennedy to represent the Plaintiff in said hearing.

162.  Plaintiff immediately notified attorney/defendant Russo, as he had done with attorney/defendant Trakas, of the situation. attorney/defendant Russo told Plaintiff, "Don't

CARMEL A. SPITERI
c/o Garedin Srantabian
9790 Prescott Creek Court
Las Vegas, Nevada 89117-2408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsui t@gmail.com

worry.  I'll take care of it. I know Judge Camacho.  I'll talk with him."

163.   Attorney/defendant Russo instructed Plaintiff to prepare an opposition to the Board's recommendation, which he did.  He gave it to attorney/defendant Russo to file, but eventually Plaintiff learned that attorney/defendant Russo never filed it.

164.   Plaintiff also gave a copy of the approximately 97 page Article 78 Petition, which he prepared and given to attorney/defendant Trakas, for attorney Russo' review, editing and finalization to be filed with Judge Camacho.  Attorney/defendant Russo informed Plaintiff that attorney/defendant Trakas had committed malpractice by allowing the time to file said Petition to elapse. Attorney/defendant Russo told Plaintiff to prepare a different Article 78 Petition, addressing the jurisdiction of the court to adjudicate a Level III Classification upon a  non-New York citizen and non-resident worker  in violation of *Correction Law* § 168-f(6), and that attorney/defendant Russo would file it.  However, once again after the time to so do had elapsed Plaintiff learned that attorney/defendant Russo did not file the aforementioned Petition.

165.   Plaintiff relied on the representations made by attorney/defendant Russo, and that was no reason to belief that attorney/defendant Russo would lie to the Plaintiff or steer him wrong.

166.   Plaintiff appeared with attorney/defendant Russo in several hearings before Judge Camacho.  It was clear to Plaintiff that attorney/defendant Russo had not studied nor reviewed any of the legal briefs, evidences and facts that he had prepared for attorney/defendant Russo, and appeared so incompetent at the hearings, that

attorney/defendant Russo would ask for a continuance.    However, some of the continuances arose from Plaintiff's seizures and hospitalization.

167.    Plaintiff contends that if it was for Attorney/defendant Russo' failure to file the aforementioned Petition and seeking a stay of the S.O.R.A. Level III Classification hearing before Judge Camacho, Plaintiff would not have been subjected to such process, but would have immediately returned to his home State of California.

168.    Attorney/defendant Russo set up a socio/psychological test with Dr. Neil E. Busuttil, a forensic psychologist, whom both attorneys/defendants Russo and Trakas had used in numerous cases they were handling, which Plaintiff had also been assigned to.  In his report, Dr. Busuttil wrote, among other things:

a.    Plaintiff was diagnosed with Post Traumatic Stress Disorder arising from factors of his U.S. Air Force and U.S. Department of Defense assignments including severe headaches, paralysis to his left extremities, loss of bowel control, intermittent blindness and speech impairment.

b.    Diagnosed with a cerebrovascular accident (CVA) which is the rapidly developing loss of brain function(s) due to disturbance in the blood supply to the brain. He was hospitalized  and during an angiogram procedure he was diagnosed with cardiomyopathy and mitral prolapse valve syndrome.

c.    Diagnosed with irritable bowel syndrome. During an endoscopy procedure, the surgeon discovered several lesion in his colon.  After a biopsy, it was determined that some of the lesions were cancers.  Underwent  surgery and treatment.

CARMEL A. SPITERI
c/o Geralin Spartakan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsut@gmail.com

d.    Diagnosed with advance degenerative spine decease and scoliosis, asthma and intermittent blindness and loss of speech arising from the mass in his brain.

e.    Diagnosed with abnormal heart rhythm; Bilateral migraine with palsy; Blackouts and passing out; Bony remodeling of the skull; Cardiomyopathy; Cerebral Vascular Accident (stroke) with weakness to the left body extremities; Degenerative spine disease in L2, L3, L4, L5 and S1 with protrusions and some herniation; Displacement of the petrous cavernous internal carotid artery medially in the brain; 3.5cm x 1.5cm x 2 cm Mass in the brain; Gastrointestinal bowel syndrome; Hypercholesterolemia; Hyperglycemia; Intermittent blindness; Mid scapular lipoma; Mitro-valve prolapse syndrome; Positive papillary atrophy; Possible bilateral 6th nerve palsy (nml OCN/OKN) with Dec upward gaze; Post Traumatic Stress Disorder related to United States Air Force and Department of Defense; Remodeling of the bowl of the brain extensively; Remodeling of the right petrous extensively; Remodeling of the sphenoid extensively; Remodeling of the territory regions of the brain extensively; Remodeling of the floor of the middle cranial fossa of the brain; Resultant right-side proptosis; Right cavernous sinus; Right Meckel's cave enlargement of the brain; Transient Ischemic Attacks; and Angina pectoris.

f.    Underwent a cardiovascular procedure where several stints were placed in his arteries.

169.   Dr. Busuttil also noted, that "It is important to note that Mr. Spiteri, notwithstanding all the adversaries he faced during these past twelve (12) years, he never stopped volunteering himself to assist lawyers, handling indigent civil and human rights cases.  He

continued to represent military personnel facing administrative discipline and court martial. He continued to represent injured workers before federal and State Worker's Compensation entities, in several States, including represented discriminated workers' before various Human Rights Commissions, Department of Fair Employment & Housing and the Equal Employment & Opportunity Commission. He traveled to various states conducting forensic investigations and paralegal work for attorneys whose clients could not afford to pay for this type of work."

170.    Attorneys/defendants Russo and Trakas' response to Dr. Busuttil was, "Chuck (Plaintiff) you are really f....ed up. No idea how the hell you are still living." Both laughed hard at the Plaintiff, and from time to time, they would bring the Plaintiff's medical condition up not only before other workers but also different clients . . . making it a joke. Plaintiff contends that such conduct in the workplace violated the Americans with Disabilities Act and the New York Civil Rights Act.

171.    Plaintiff alleges that the acts and omissions of attorney/defendant Russo were deliberate acts, contemplated on hold Plaintiff to involuntary servitude and conspiring with attorney/defendant Russo to secure thousands of dollars of retainers from friends of the Plaintiff who sought expert legal opinion, to which attorney/defendant Russo attested to in conning Plaintiff's friends who are listed above, to pay thousands of dollars in retainer to both attorneys/defendants Russo and Trakas, with what ultimately appeared to be scheme of fraud, deceit, misrepresentation and abandonment and violation of the R.I.C.O. Act and provisions.

CARMEL A. SPITERI
c/o Garelick Sportatvan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

172.  The events that lead up to discovering that attorney/defendant Russo had been disingenuous, deceitful and withheld the truth from the Plaintiff are as follows:

a.    07/29/2010, the State Defendants posted on their e-court crimweb that Plaintiff was being charged with Correction Law § 168K, ** TOP CHARGE**, E Felony, 1 count.  When in fact, Plaintiff did not violate such law, nor was he arrest, booked and brought before any judge for said charges.

b.    08/20/2010, court assigned defence attorney Kennedy was substituted by attorney/defendant Russo.

c.    09/20/2010, Assistant District Attorney: Rosenbaum, was assigned to the case.

d.    10/27/2010, Plaintiff made his first appearance for a RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Griffin, J.

e.    10/27/2010, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Latella, J.  It was adjourned.

f.    12/06/2010, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Griffin, J.  It was adjourned.

g.    01/24/2011,  Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

h.    01/24/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

i.    02/01/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

j.     02/01/2011,  Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

k.     02/25/2011, Plaintiff prepared a Motion for Declaratory and Injuncitve relief against the false posting on the court's CrimWeb for attorney/defendant Russo to file. Attorney/defendant Russo promised to review, edit and file it.   Plaintiff is informed and believes that attorney/defendant Russo never filed it.

l.     02/28/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

m.     03/17/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

n.     04/08/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

o.     04/18/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

p.     04/18/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

q.     05/24/2011, Plaintiff is informed and believe that Judge Camacho, F, issued a tentative ruling for a RISK LEVEL III CLASSIFICATION without explanation and/or fact finding analysis how he reached that determination.

r.     10/01/2011, Plaintiff  sent attorney/defendant Russo a Notice of Appeal, including the Plaintiff's Opening Brief to file.  Plaintiff is informed and believe that

CARMEL A. SPITERI
c/o Geraldin Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussolawsuit@gmail.com

attorney/defendant Russo never filed the Notice of Appeal and/or the Opening Brief, notwithstanding that attorney/defendant Russo represented to the Plaintiff that he (attorney/defendant Russo) had filed (a) Motion for Reconsideration before Judge Camacho; (b) Article 78 Petition before the Supreme Court; and (c) Notice of Appeal before the Appellate Court . . . all of which was a lie.

173.    At every stage of the above proceedings, attorneys/defendants Russo and Trakas kept reassuring the Plaintiff that he had nothing to worry about.  "Everything is under control. Don't worry."  However, after terminating attorney/defendant Russo from representing the Plaintiff, Plaintiff discovered the lies, fraud, misrepresentations to the Court and to the Plaintiff and the blatant disregard of the attorney/client privileged communication.

174.    Thereafter, Plaintiff discovered that his demographics were placed on the Defendant State's Megan Law Registry Website.  Plaintiff discovered that the posting contained false information which included and not limited to asserting that Plaintiff was convicted of a sex offence with a child 13 years of age, and that he continued to reside at the Borough of Queens, City of Astoria, State of New York (Astoria), which neither were true.

175.    Plaintiff spoke with attorney/defendant Russo regarding the above posting, and attorney/defendant Russo promised that he would immediately write and move for an injunction to force the State Defendants to remove said posting.  However, it was one of his conning and disingenuous promise that never came true.

176.    Plaintiff wrote to Defendant State and requested that they remove the false information.  Plaintiff recalls it took Defendant State a couple of two to three months to

remove the false information from their Website, but continued to falsely post that Plaintiff resided at the aforementioned Astoria, continuing the false advertisement and dissemination of false information through the international and interstate commerce to exist.

177.   In addition, Defendant State informed Plaintiff that he would have to register in person every ninety (90) days with the local Astoria Police Precinct.

178.   The deception, lies, disingenuous rationalization, the fraud and the failure to protect the interest, constitutionally and statutory protected rights of the Plaintiff by attorney/defendant Russo, shaped the life and future of the Plaintiff to such an extent that Plaintiff has and continues to be subjected to much greater severe and punitive colletteral consequence of his 1998 State of California first-time, non-violent, non-serious conviction arising from the participation of a willing participant, as declared and adjudicated by the State of California Judiciary and the State of California Attorney General.

179.   Therefore, Plaintiff seeks compensatory, punitive and general damages to be determined at time of trial, against attorney/defendant Russo, and for any other relief this Honourable Court.

### EIGHTH  CLAIM FOR RELIEF
#### (Liability Under Fair Labor Standards Act- *Title 29 United States Code* § 201) (Against ATTORNEY/DEFENDANT RUSSO)

180.   Plaintiff realleges and incorporates herein by reference each and every applicable above paragraph of this Complaint as if set forth in full.

---

*Spiteri v. Russo*, et al., etc.                                          **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 81 of  149

181.   The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. ***Real v. Driscoll Strawberry Assocs***., 603 F.2d 748 (9th Cir.1979). The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." ***Rutherford Food Corp. v. McComb***, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947). The touchstone is "economic reality." ***Goldberg v. Whitaker House Cooperative, Inc***., 366 U.S. 28, 33,81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

182.   The US Supreme Court's Economic Reality test's requirements under ***Goldberg v. Whitaker House Co-op., Inc***. 366 U.S. 28 must be met.

183.   The economic reality test includes inquiries into, whether the alleged employer:

   a.   Had the power to hire and fire the employees;

   b.   Supervised and controlled employee work schedules or conditions of employment;

   c.   Determined the rate and method of payment, and

   d.   Maintained employment records.

184.   In the instant case, attorney/defendant Russo employed Plaintiff. As stated within this FAC:

   a.   Plaintiff interviewed prospective clients, active clients and made numerous court and administrative law hearing appearance for attorney/defendant Russo, including traveling out-of-state on cases assigned to the Plaintiff.

b.      Attorney/defendant Russo exercised the power to hire and fire Plaintiff and other employees.

c.      Attorney/defendant Russo  paid Plaintiff and other workers.

d.      Attorney/defendant Russo maintained employment records, which were used to file attorney's fees and services in several of the cases being handled by the Plaintiff.

e.      Attorney/defendant Russo counseled Plaintiff on job performance and getting along with coworkers.

f.      Attorney/defendant Russo assigned work and assigned an office desk, computer, and telephone for Plaintiff.

g.      Attorney/defendant Russo agreed on a $75.00 per hour  rate of payment.

185.    Attorney/defendant Russo has liability under the FLSA for pay at $75.00 per hour for hours of work by Plaintiff.

186.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (See Fn 12 above) through the use of

interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from criminal cases. Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

187.    By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above  Fn 12 , to avoid liability.   Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

**WHEREFORE**, Plaintiff seeks judgement in his favour as follows:

a.    **$1,309,725.00** for actual wages earned under the FLSA from attorney/defendant Russo, which includes the treble damages in accordance with applicable federal and state statutes.

b.    Plaintiff seeks **$1,000,000.00** in actual damages.

c.    **$10,000,000.00** in punitive damages.

d.    In addition, Plaintiff seeks an Order from this Honourable Court commanding attorney/defendant Russo to provide a copy of this complaint to the State Bar and subject himself to that jurisdiction for the appropriate disciplinary action.

e.    Plaintiff seeks any other relief which this Honourable Court deems just and proper.

f.    Plaintiff prays for leave to amend this complaint as necessary.

### NINTH CLAIM FOR RELIEF
### (Violations of RICO, TITLE 18 UNITED STATE CODE § 1962(c))
### (Against RICO ATTORNEYS/DEFENDANTS RUSSO, JL RUSSO P.C.; TRAKAS AND THE LAW OFFICE OF ARTHUR G. TRAKAS)

188.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraphs, except for the State Defendants, of this Complaint as if set forth in full.

189.    At all relevant times, Plaintiff is a person within the meaning of *Title* 18 *United State Codes* §§ 1961(3) and 1962(c).

190.    At all relevant times, each RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas and the Law Office of Arthur G. Trakas are persons within the meaning of *Title* 18 *United State Codes* §§ 1961(3) and 1962(c).

A.    *The Rico Enterprise*

191.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since

CARMEL A. SPITERI
c/o Gareth Snartabian
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from criminal cases. Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

192.    By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above Fn 12 , to avoid liability. Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

193.    The RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas and their co-conspirators are a group of persons associated together

in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a multi-faceted campaign of lies, fraud, oppression and misrepresentation, and the use of their license to practice law in the State of New York, to secure out-of-state clients, obtain a monetary  retainers into the thousands of dollars,  to be paid to the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas and their co-conspirators. These RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas and their coconspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in the United States, in particular, the State of New York, the State of New Jersey, the State of California, the State of Arizona and the State of Montana.  Plaintiff alleges that in the past twenty-four to twenty-seven months, RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas have adapted their scheme to changing circumstances, soliciting new out-of-state clients, and expanding the scope and nature of their legal representation to induce new-of-state clients to pay thousands of dollars for retainer. The criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme:

a.    Attorneys/Defendants Russo and Trakas have been responsible for oversight of the scheme to defraud out-of-state clients, and have directed others conspirators and unintended  innocent  conned  participants  to  take  actions  necessary  to  accomplish  the overall aims of the criminal enterprise--namely, obtaining thousands of dollars as retainers

CARMEL A. SPITERI
c/o Garedin Srantabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

to represent out-of-state clients, by using Plaintiff to secure said representation and inducing Plaintiff to perform all legal work, such as, writing pleadings, traveling to various States to interview said out-of-state clients, promising him a ten percent referral fee, and a $75.00 per hour for services Plaintiff would render in each respective referred case. Designing and implement the spread of false and misleading information about Plaintiff, and obstructing Plaintiff's efforts at uncovering the truth of RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas criminal scheme; i.e. securing the thousands of dollars from out-state-clients, and refusing to pay Plaintiff for services and out-of-pocket expenses for the sole purpose to enrich themselves, without actually, properly or effectively representing the out-of-state clients, by abandoning them, and enriching themselves by keeping their retainers, as indicated, but not limited to the below:



CARMEL A. SPITERI
c/o Garelin Snartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-9408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsui@gmail.com

| b. | S.M. | Retainer: | **$3,500.00** |
| **c.** | N.B. | Retainer: | **$8,000.00** |
| d. | P.C. and M.C. | Retainer: | **$5,000.00** |
| e. | G.S. | Retainer: | **$25,000.00** |
| f. | J.K. | Retainer: | **$5,000.00** |
| g. | Garcia | | ***Secured representation by promising client if he retained the RICO attorney/defendant Russo in the $200,000,000.00 federal civil rights lawsuit (Garcia v. County of Riverside, CASE #: 5:11-cv-00034-VAP -OP, filed January 04th, 2011) RICO attorney/defendant Russo would represent client in his murder case in*** |

*Spiteri v. Russo, et al., etc.*                                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

*California, with RICO attorney/defendant Russo's associate RICO attorney/defendant Trakas. In order to secure said representation attorney/defendant Russo actually traveled from New York to Indio, California to complete his RICO scheme.*

h.   A.W., & R.A. and Sovereign International Group(Matter of The Omicron

Group (C-075060)          Retainer:   **$65,000.00** *RICO attorneys/defendants Russo and Trakas had A.W. & R.A. travel from California and Arizona, respective to New York City, to complete their R.I.C.O. scheme*

i.   S.P. and L.P.   Retainer:   **$25,000.00**

j.   D.M.C.   Retainer:   **$85,000.00**

194.   The following cases for which services were rendered and not paid for.  To achieve their scheme R.I.C.O. attorneys/defendants Russo and Trakas induced Plaintiff, through the  interstate communications and commerce to temporary move from the City of Palm Springs, County of Riverside, State to California to the Borough of Queens, State of New York, to wit:

a.   S.M.                          hours worked       100

b.   N.B.                          hours worked       267

c.   A.W., R. A., et al.,          hours worked       320

d.   D.M.C.                        hours worked        620

e.   M.B.                          hours worked       30

f.   M.B.                          hours worked       15

CARMEL A. SPITERI
c/o Gareln Snartajvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-84408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

| g. | M.B. | hours worked | 65 |
| h. | P.S. | hours worked | 375 |
| i. | M.M. | hours worked | 10 |
| j. | S.W | hours worked | 37 |
| k. | A.B. | hours worked | 10 |
| l. | S.J. | hours worked | 8 |
| m. | S.J. | hours worked | 37 |
| n. | J.K. | hours worked | 4 |
| o. | Attorney/defendant Trakas' niece | hours worked | 1 |
| p. | A.P. | hours worked | 168 |
| q. | A.W., R. A., et al., | hours worked | 320 |
| r. | D.M.C. | hours worked | 620 |
| s. | DeRea. | hours worked | 375 |
| t. | Julio Sanchez | hours worked | 42 |
| u. | Daniel Carlos Garcia | hours worked | 415 |
| v. | Weiss/Albernaty | hours worked | 120 |
| w. | Wender Lugo | hours worked | 145 |
| x. | West Hemptons Lawsuit | hours worked | 65 |
| y. | Polesky | hours worked | 347 |
| z. | Cerda | hours worked | 445 |



*Spiteri v. Russo*, et al., etc.
Case: **12-CV-2780(MKB)(RM)**

**FIRST AMENDED COMPLAINT**

| aa. | NYC Consumer Affairs, et al | hours worked | 65 hours |
| bb. | Dr. Lambrakis | hours worked | 140 |
| cc. | J. Kennedy | hours worked | 30 |
| dd. | G. Spartalian | hours worked | 15 |

195.   The failure, refusal, coercion, subjugation and deliberate indifference of not paying the Plaintiff for services he rendered constitutes a violation of the ***Thirteenth Amendment*** of the United States Constitution, thereby the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas are guilty of involuntary servitude, by means and through the use of the interstate and international commerce.

196.   RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas has been primarily responsible for promising to represent the out-of-state clients, pay the Plaintiff his commission and hourly wages, was a sham and served as one purpose . . . RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas enrich themselves at the expense of said clients/victims.

197.   The RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas and their co-conspirators constitute an association-in-fact enterprise within the meaning of ***Title*** 18 ***United States Code*** §§ 1961 (4) and 1962(c), referred to hereinafter as the "Enterprise." Each of the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas participated in the operation or management of the Enterprise.

198.   At all relevant times, the Enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of *Title* 18 *United States Code* § 1962(c). Pattern of Racketeering Activity.

199.   The RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of *Title* 18 *United States Code* § 1961 (5) and in violation of *Title* 18 *United State Codes* § 1962(c), to wit:

B.   *Pattern of Racketeering Activity: Extortion in Violation of Hobbs Act, Title 18 United State Codes § 1951.*

200.   At all times material to this Complaint, Plaintiff was engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce.

201.   As described herein, the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas have engineered a wide ranging campaign of inducing Plaintiff to work without compensation to enrich themselves; inducing out-of-state clients/victims to retain them for thousands of dollars, knowing that RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas were not licensed to practice law in certain particular State were jurisdiction and venue was within the sole authority of that respective State; public attacks based on false and misleading statements, threatening to trump up criminal charges, threatened fraudulent civil judgments, investigations by government agencies, and ongoing harassment and

CARMEL A. SPITERI
c/o Ganelin Svartsbyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

*Spiteri v. Russo, et al., etc.*                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

disruptions of Plaintiff's peace, tranquility and enjoyment of his constitutionally protected right under the ***First Amendment*** of the United States Constitution, the ***California*** and ***New York*** Constitutions and the Law of Nations, and Plaintiff's forensic/civil rights and administrative law non-attorney practice,  and have demanded his silence and obdience under the aforementioned threats and coercion, all with the intent and effect of causing a reasonable fear of economic loss on the part of Plaintiff.

202.    As described herein, the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas manufactured false evidence against Plaintiff and are relying on that false evidence in the sham to discredit him with some of said victims/clients, friends and family member, with the intent and effect of causing a reasonable fear of economic loss and emotional/psychological torture and subjugation, all to the injury of Plaintiff.

203.    The RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas' actions are intended to induce fear in Plaintiff that the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas will, among other things:

    a.    Continue to pursue a scheme of misrepresentation to the great harm and public denigration of Plaintiff, unless and until Plaintiff relinquishes his claims against the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas, including unfounded attempts in seeking injuction and restraining orders

CARMEL A. SPITERI
c/o Ganelin Sraritalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

preventing Plaintiff to assert and invoke his *First Amendment* of the United States Constitution to access the Courts;

b.      Continue to conspire to have Plaintiff's criminally prosecuted on trumped up charges; and

204.   Accordingly, the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas have unlawfully obstructed, delayed, and affected-and attempted to obstruct, delay, and affect--commerce as that term is defined in *Title* 18 *United State Codes* § 1951, and the access to the Court in such commerce, by extortion, subjugation, deceit, fraud and misrepresentation as that term is defined in *Title* 18 *United State Codes* § 1951, in that the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas attempted to induce Plaintiff to consent to relinquish property (earned wages and commission)through the wrongful use of actual and threatened force (having Plaintiff apprehended, detained, arrested, criminal prosecuted and imprison through the threat of trumped up charges), violence, and fear-including fear of economic harm.

C.      *Pattern of Racketeering Activity: Extortion in Violation of (New York Penal Law §§ 110.00, 155. 05(2) (e), 155.42)*

205.   Similarly, the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas' wrongful attempts to appropriate Plaintiff's property by instilling fear that if the property is not forefeited the RICO Attorneys/defendants Russo,

CARMEL A. SPITERI
c/o Ganelin Spartavan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1598
Em: newyorkrussotrakaslawsuit@gmail.com

Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas would perform an act calculated to harm Plaintiff materially with respect to his forensic/civil rights and administrative law non-attorney business, financial condition, and reputation violates *New York Penal Law* §§ 110.00, 155.05(2)(e), 155.42.

206.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from  criminal cases.  Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

207.    By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New

CARMEL A. SPITERI
c/o Garedn Snartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above  Fn 12 , to avoid liability.   Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

   D.    ***Pattern of Racketeering Activity Multiple Instances o(Mail Fraud and Wire Fraud in Violation  Title 18 United State Codes §§ 1341,1343***

208.   As described herein, the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas engaged in a wide-ranging scheme or artifice to defraud Plaintiff, various courts of law, and the greater out-of-state clients/victims and the public by inducing Plaintiff to work long hours without compensation, inducing out-of-states clients/victims, where the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas to retain them to represent their interest in States where the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas knew that they were not licensed to practice law and/or petitioned the respective jurisdictional Court through ***Pro Hac Vice*** process; manufacturing evidence, and defrauding said clients/victims, including the Plaintiff by refusing to "do the right thing" and  paid  them  back  and/or  reimburse  them.  The  ultimate  objective  of  the  RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G.

---

Trakas' scheme or artifice to defraud is to coerce Plaintiff into making out-of-state client referrals to the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas' and working without compensation or commission, as agreed, will directly benefit the individual and organizational RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas.

209.    In furtherance of their scheme, and as described herein, the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

a.    Emails and website postings incorporating false and misleading statements regarding the representation and prosecution of the out-of-state clients/victims; payment of wages due for services rendered but not paid for to the Plaintiff;

b.    Wirings and/or mailings between and among the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas concerning the preparation of the report and/or motions, petitions, and/or legal filings in the United States that were supposedly to be submitted to the abovementioned respective Federal and State jurisdictional courts involving the out-of-state clients/victims, including Plaintiff ;

c.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to

believe that he could not be subjected to a S.O.R.A. Level Classification. That as Plaintiff

was a " non-New York citizen and non-resident worker " (**Correction Law** § 168-f(6)) and

that since Plaintiff was maintaining his residency in State of California, and continued to

work and go back and forth on cases for his State of California employer, the Law Offices

of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and

facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to

Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12) through the use of

interstate commerce and communication to enrich himself by using Plaintiff's experience

in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge

of constitutional issues arising from criminal cases. Plaintiff had been trained and taught

by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was

working on Mel Sachs cases when he passed.

      d.    By and through their own admission in the aforementioned Motion to Dismiss

(ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they

possessed this information, prior to inducing Plaintiff to work for them as a " non-New

York citizen and non-resident worker ," by using that specific phrase to induce, con and

entrap Plaintiff to work for them to enrich themselves and then use the language in their

Motion to Dismiss as stated in the above Fn 12 , to avoid liability. Plaintiff alleges that

these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13

above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O.

scheme and execution of their illegal and unauthorized practice of law for out-of-state

clients/victims.

e.    Communications directed toward U.S. state and federal government officials and regulators incorporating false and misleading statements regarding certain out-of-state cases;

f.    Funds transferred by the out-of-state clients/victims, to the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas, with the intent that those funds be used to promote the carrying on of the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas' criminal activities; and,

g.    Electronic filing and service of court papers containing false and misleading statements intended to impede the operation of those courts.

210.    Each of the RICO attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas has engaged in multiple predicate acts, as described above. The conduct of each of the RICO attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas described in above parapgraphs, constitutes a pattern of racketeering activity within the meaning of *Title* 18 *United State Codes* § § 1961(5).

211.    Plaintiff was injured in his forensic/civil rights and administrative law non-attorney business and property by reason of the RICO attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas' violations of *Title* 18 *United State Codes* § 1962(c). The injuries to Plaintiff caused by reason of the violations of *Title* 18 *United State Codes* § 1962(c) include but are not limited to damage to Plaintiff's reputation and goodwill; the impairment of Plaintiff's interest in executed contracts; and the attorneys'

fees and costs to address the legal malpractice committed by the RICO attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas in the pre-S.O.R.A., S.O.R.A. and post-S.O.R.A. legal proceedings,  in objectively baseless, improperly motivated sham litigation/representation of out-of-state clients/victims, including Plaintiff in jurisdictional Federal and State courts, where the RICO attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas were not licensed to practice law;  including the attorneys' fees and costs associated with exposing the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas' pervasive aforementioned fraud and violations of various Amendments to the United States Constitution.

212.   Further, these injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the violation of *Title* 18 *United State Codes* § 1962. Plaintiff is the ultimate victim of the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas' unlawful Enterprise. Plaintiff has been and will continue to be injured in his business and property in an amount to be determined at trial.

213.   Pursuant to *Title* 18 *United State Codes* § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas.

214.   Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees, and anyone else acting in concert with from commencing, prosecuting, or advancing in any way, including the State

---

*Spiteri v. Russo*, et al., etc.                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

Defendants—directly or indirectly any attempt to cause the criminal prosecution of Plaintiff in any court, tribunal, or administrative agency in any jurisdiction, in the United States or abroad or otherwise, until this Court determines the merits and enters judgment on Plaintiff's claims against the Defendants in this action.

   **WHEREFORE**, Plaintiff prays for judgment as set forth below.

### TENTH CLAIM FOR RELIEF
### (Conspiracy to Violate RICO, Violation of 18 U.S.C. § 1962(d))
### (Against RICO ATTORNEYS/DEFENDANTS RUSSO, JL RUSSO P.C.;  TRAKAS AND THE LAW OFFICE OF ARTHUR G. TRAKAS)

215. Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

216. Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge

CARMEL A. SPITERI
c/o Gerald Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyork.russotrakaslawsuit@gmail.com

---

of constitutional issues arising from criminal cases. Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

217.    By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above Fn 12 , to avoid liability.   Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

218.    The RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate *Title* 18 ***United State Codes*** § 1962(c) as described above, in violation of *Title* 18 ***United State Codes*** § 1962(d).

219.    Upon information and belief, the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was

CARMEL A. SPITERI
c/o Garedin Sbartabrun
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspir acy to violate *Title* 18 *United State Codes* § 1962(c), in violation of *Title* 18 *United State Codes* § 1962(d).

220.    Upon information and belief, the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of *Title* 18 *United State Codes* § 1962(c).

221.    Each RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiff. It was part of the conspiracy that the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in the above paragraphs.

222.    As a direct and proximate result of the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of *Title* 18 *United State Codes* § 1962(d), Plaintiff has been injured in its business and property, including damage to Plaintiff's reputation and goodwill; the impairment of Plaintiff's interest in executed contracts; and the attorneys' fees and costs associated with exposing the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and

the Law Office of Arthur G. Trakas' pervasive fraud and other violation of the United States Constitution, etc..

223.    Pursuant to *Title* 18 ***United State Codes*** § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas.

224.    Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees, and anyone else acting in concert with from commencing, prosecuting, or advancing in any way, including the State Defendants—directly or indirectly any attempt to cause the criminal prosecution of Plaintiff in any court, tribunal, or administrative agency in any jurisdiction, in the United States or abroad or otherwise, until this Court determines the merits and enters judgment on Plaintiff's claims against the Defendants in this action.

        **WHEREFORE**, Plaintiff prays for judgment as set forth below.

### ELEVENTH CLAIM FOR RELIEF
### (Civil Conspiracy)
### (Against RICO ATTORNEYS/DEFENDANTS RUSSO, JL RUSSO P.C.;  TRAKAS AND THE LAW OFFICE OF ARTHUR G. TRAKAS)

225.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

226.    As set forth above, RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff, have committed torts against Plaintiff, including acts of racketeering giving rise to violations of RICO, fraud, federal

and state statutory violation under the interstate and international commerce doctrine/acts, trespass to chattels, and unjust enrichment.

227.   RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff,  agreed to participate in a common scheme against Plaintiff. RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff, intentionally participated in the furtherance of a plan or purpose to obtain property (wages, services)  from Plaintiff. In furtherance of this plan or purpose, RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff, committed overt and unlawful acts, including acts of racketeering as alleged herein.

228.   Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices  of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge

CARMEL A. SPITERI
c/o Garedin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

of constitutional issues arising from criminal cases. Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

229.   By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above Fn 12, to avoid liability.   Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13 above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

230.   As a direct and proximate result of RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff's conspiracy, the overt acts committed in furtherance of that conspiracy, and the torts committed against Plaintiff, Plaintiff has been damaged in its business and property, and further damage to Plaintiff's business and property is threatened and imminent.

231.   RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff, have engaged in the malicious, willful, and fraudulent

CARMEL A. SPITERI
c/o Ganesin Srantajvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff is entitled to, and should be awarded, punitive damages against each of the RICO attorneys/defendants Russo and Trakas, and their accomplices, including certain members of their staff.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

**TWELFTH CLAIM FOR RELIEF**
**(Violations of New York Judiciary Law § 487)**
**(Against ATTORNEYS/DEFENDANTS RUSSO, JL RUSSO P.C.;  TRAKAS AND THE LAW OFFICE OF ARTHUR G. TRAKAS)**

232.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

233.    *New York Judiciary Law* § 487 provides, in pertinent part, as follows: "An attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

234.    As set forth above, attorneys/defendants Russo and Trakas ENgaged in an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive both Plaintiff and multiple federal courts, including the United States District Court for the Southern District of New York, the United States Security Exchange Commission, the United States Central District of California and the United States Court of Appeals for the Ninth Circuit, etc..

*Spiteri v. Russo, et al., etc.*                                          **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 107 of  149

235.    Plaintiff alleges that in a recent Motion to Dismiss arising from the Initial Complaint (DOC 1), attorney/defendant Trakas reveals that he had misled Plaintiff to believe that he could not be subjected to a S.O.R.A. Level Classification.  That as Plaintiff was a " non-New York citizen and non-resident worker " (*Correction Law* § 168-f(6)) and that since Plaintiff was maintaining his residency in State of California, and continued to work and go back and forth on cases for his State of California employer, the Law Offices of David L. Wright, attorney/defendant Trakas deceived and misrepresented the law and facts, with the intent, as seen in the aforementioned attorney/defendant Trakas' Motion to Dismiss, that attorney/defendant Trakas admits to the fraud (see Fn 12 above) through the use of interstate commerce and communication to enrich himself by using Plaintiff's experience in civil rights, I.D.E.A., ADA and the Rehabilitation Act of 1974, including his knowledge of constitutional issues arising from  criminal cases.  Plaintiff had been trained and taught by deceased renowned New York Civil Rights attorney Mel Sachs, and that Plaintiff was working on Mel Sachs cases when he passed.

236.    By and through their own admission in the aforementioned Motion to Dismiss (ref: FAC fn 12), attorneys/defendants Russo and Trakas, unquestionable admit that they possessed this information, prior to inducing Plaintiff to work for them as a " non-New York citizen and non-resident worker ," by using that specific phrase to induce, con and entrap Plaintiff to work for them to enrich themselves and then use the language in their Motion to Dismiss as stated in the above  Fn 12 , to avoid liability.  Plaintiff alleges that these attorneys/defendants Russo and Trakas' hands are not only "unclean" (See Fn 13

above), but filthy and dirty with deception, fraud and conspiracy to advance their R.I.C.O. scheme and execution of their illegal and unauthorized practice of law for out-of-state clients/victims.

237.    As a result of the deceitful and fraudulent conduct of attorneys/defendants Russo and Trakas as described herein, Plaintiff has been injured in an amount to be established at trial.

238.    By reason of the foregoing, Plaintiff is entitled to monetary damages against attorneys/defendants Russo and Trakas, treble damages, and reasonable  attorneys' fees pursuant to *New York Judiciary Law* § 487.

        **WHEREFORE**, Plaintiff prays for judgment as set forth below.

### THIRTEENTH CLAIM FOR RELIEF
### (Violations of New York Judiciary Law § 487)
### (Against ATTORNEYS/DEFENDANTS RUSSO, JL RUSSO P.C.;  TRAKAS AND THE LAW OFFICE OF ARTHUR G. TRAKAS)

239.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

240.    As set forth above, the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas have engaged in a pattern of extortion, collusion, wrongdoing, and deceit with an intent to interfere with Plaintiff's property (earned wages and commission), and  the the RICO Attorneys/defendants Russo, Jl Russo P.C.;  Trakas and the Law Office of Arthur G. Trakas have benefitted and will continue to benefit from

CARMEL A. SPITERI
c/o Gareein Srartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8608
(For Mailing Purposes Only)
Em: newyorkrussotrakaslawsui1@gmail.com
Tel: 202.409.1508

the RICO Attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas' criminal scheme through course of conduct described above.

241.   Plaintiff has been harmed and the use of its property (earned wages and commission) has been interfered with and were necessarily redirected from their intended uses to benefit and enrich the RICO attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas intentional and wrongful conduct.

242.   Plaintiff also has been harmed in that the RICO attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas' conduct has damaged Plaintiff's reputation, thus interfering with Plaintiff's interest in the public goodwill toward him.

243.   The harms suffered by Plaintiff are the direct, proximate, and reasonably foreseeable results of the RICO attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas acts of intentional interference with Plaintiff's wages and commisison and goodwill.

244.   The RICO attorneys/defendants Russo, Jl Russo P.C.; Trakas and the Law Office of Arthur G. Trakas have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff is entitled to, and should be awarded, punitive damages against each of the Defendants.

245.   Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees, and anyone else acting in concert with

CARMEL A. SPITERI
c/o Gareain Snartavan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-3408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

from commencing, prosecuting, or advancing in any way, including the State Defendants—directly or indirectly any attempt to cause the criminal prosecution of Plaintiff in any court, tribunal, or administrative agency in any jurisdiction, in the United States or abroad or otherwise, until this Court determines the merits and enters judgment on Plaintiff's claims against the Defendants in this action.

## FOURTEENTH CLAIM FOR RELIEF
**(Verified Petition for Writ of Mandate, Prohibition, Writ of Declaratory and Injunctive Judgment[19], in the Alternative Writ or Rule Nisi or Other Appropriate Relief re: May 2011 adjudication of Level III Classification by Defendant Hon. Camacho is Unenforceable and Non-Recognizable for a Violation of Plaintiff's Sixth and Fourteenth Amendments Constitutionally Protected Rights & Entitlement (Against STATE DEFENDANTS)**

246.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

247.    In ***Pulliam v. Allen***, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 [1984] ... "The Supreme Court, Justice Blackmun, held that: (1) judicial immunity is not a bar to prospective injunctive relief against judicial officer acting in her judicial capacity, and (2) judicial immunity is no bar to award of attorney fees under section 1988.")

248.    Petitioners believes this Petition for a Writ of Declaratory and Injunctive Relief or in the alternative a Petition for a Writ of Mandamus perfectly suited to the challenges of

---

[19]***Title*** 28 ***United States Code*** § 1651(a) states, "***The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law***: (b) ***An alternative writ or rule nisi may be issued by a  justice or judge of a court which has jurisdiction.***"

this case, where recently Plaintiff received a call from the State Defendants' Registry in New York City and was threatened that if he did not change his resident address, which is the false address since May 24th, 2011 had been intentionally, wrongfully and fraudulent published by the State Defendants, the matter would be referred to the United States Marshal Service for violation of S.O.R.N.A. Plaintiff's call to said Registry was witnessed by his attorney and a third person. Plaintiff responded to the Registry officer that prior to leaving the State of New York and going back to his home State of California, he notified the State Defendants of his change of address, and provided them with the resident address in the City of Palm Springs, County of Riverside, State of California. That within two (2) days Plaintiff went to register with the City of Palm Springs Police Department, and that registration document was sent via e-mail to attorney/defendant Russo and faxed to the Albany Registry.

249.   The NYCSOD officer kept claiming that Plaintiff had filed the wrong address with the Albany Registry.  Plaintiff told him that he did not, on the contrary that Plaintiff had numerous e-mails going back and forth to the State Defendants demanding that they change his address on their Registry Website and also to remove him.   Plaintiff said that the State Defendants continued to refuse.

250.   Moreover, Plaintiff have complied fully with the requirements of S.O.R.NA. when on June 02nd, 2011, he went with his lawyer to the City of Palm Springs Police Department, County of Riverside, State of California and notified the Sergeant officer in charge of the Registry that Plaintiff was relocating to Europe, within one day of making that decision.

CARMEL A. SPITERI
c/o Garedin Svartalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.469.1508
Em: newyorkrussotrialawsuit@gmail.com

251.  Plaintiff alleges that he has shown in his Petition jurisdiction exceptional circumstances, and the unavailability of adequate relief in any other form from any other court.  Based on the recent August 22nd, 2012 threats imposed and/or advance by the State Defendants, Plaintiff is in imminent, real and immediate danger of unlawful apprehension, restrain, detention, arrest and imprisonment, all of which arise not from any wrongful acts he omitted or participated in, but for the fraud and false publication of "resident address" information that State Defendants refused to update their Registry Website on May 25th, 2011 when Plaintiff had left the State Defendants' jurisdiction and returned to his home State of California, and registered with the City of Palm Springs Police Department, County of Riverside, State of California.

252.  Alternatively, Plaintiff respectfully requests this Honourable Court to treat the Petition as a petition or motion for equitable relief. This Honourable Court, like other federal courts, has the inherent equitable power "to set aside fraudulently begotten judgments" and restore the parties to the position they would have enjoyed in the absence of the fraud. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 250 (1944). See also *Chambers v. NASCO*, Inc., 501 U.S. 32, 44-45 (1991); *Universal Oil Products Co v. Root Refining Co.*, 328 U.S. 575, 580 (1946). Indeed, in Article III the framers accorded this Court the powers of a court of equity precisely so that it might answer the challenge of fraud.

253.  Plaintiff alleges that he the *Eleventh Amendment* presents no bar to the claims for prospective declaratory and injunctive relief against the State Defendants in their official

CARMEL A. SPITERI
c/o Carelin Scantalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussofraudlawsuit@gmail.com

capacities.   (See *State Employees Bargaining Agent Coalition v. Rowland*, No. 06-0616-cv (2d Cir. 07/10/2007)

254.   The legal issues raised in this petition are of great public importance that must be resolved promptly.

## A.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

247.   Plaintiff has filed no previous lawsuits in this matter.

248.   Plaintiff has sought previous administrative relief from the State Defendants. All entities have refused to provide relief from (a) Correcting the address on their Registry Website, while his administrative redress before said State Defendants was pending; (b) and Refusing to remove Plaintiff from their Registry Website.

249.   Plaintiff is entitled to a declaratory judgment that the May 2011 Level Classification judgment from the New York Supreme Court Judge Fernando Camacho is unenforceable and non-recognizable pursuant to the Declaratory Judgment Act, **Title** 28 *United States Code* § 2201(a).

250.   A declaratory judgment will not improperly increase friction between sovereign legal systems or encroach on the proper domain of a foreign court because no court has a right to impose fraudulent judgments such as the Level Classification judgment of the the New York Supreme Court Judge Fernando Camacho.

251.   By this claim, Plaintiff seeks a declaratory judgment that the New York Supreme Court Judge Fernando Camacho's May 2011 Level Classification judgement is unenforceable and non-recognizable, including but not limited to under the United States

CARMEL A. SPITERI
c/o Garedin Svartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussofraksalawsuit@gmail.com

Constitution, New York common law principles of jurisprudence, and/or pursuant to the Law of Nations and International law, on, among others, grounds of fraud, failure to afford procedures compatible with due process, lack of impartial tribunals, and contravention of public policy.

252.  By reason of the fraudulent acts and fundamentally unfair proceedings described in this Complaint that have given rise to the Level Classification judgment, an actual and justiciable controversy has arisen and now exists between Plaintiff and the State Defendants, as to whether the May 2011 judgment is unenforceable and non-recognizable as it arises from fraud, deceit, R.I.C.O. criminal scheme by RICO attorneys/defendants Russo and Trakas, inducing and leading Plaintiff to believe that under Correction Law § 168-f(6), Plaintiff could temporarily work for said RICO attorneys/defendants Russo and Trakas as a " non-New York citizen and non-resident worker " not subject to a S.O.R.A. Level Classification.  Furthermore, Plaintiff is informed and believes that New York Supreme Court Ricardo Camacho committed reversible error by not complying with New York Law and the United States Constitution imbedded in the procedural and substantive due process clauses and doctrine, including, and not limited, (1) failure to grant Plaintiff a continuance to seek and obtain exculpatory evidence to rebut the prosecution case; (2) stating on the record that Judge Camacho would only consider the "prosecution" evidence to make his determination; (3) refusing to order the prosecution to turn over its' entire evidentiary/investigatory file for Plaintiff's review and rebuttal; conducting the S.O.R.A. hearings and proceedings in an oppressive and criminal mode of operation rather affording Plaintiff equal protection of the law, otherwise afforded to civil litigants in other civil

CARMEL A. SPITERI
c/o Genelin Spartabyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

cases; issuing an Level Classification judgement without complying with the statutory mandate of provided reason, facts and detailed analysis on what basis and admissible evidence he reached his conclusion. (See Correction Law § 168-n(3) (see *People v Smith*, 11 NY3d 797 [2008]). *People v Leopold*,13 NY3d 923 [2010])

253.    In addition, Plaintiff was denied his Sixth Amendment rights to effective assistance of counsel (see *People v Bowles*, 2011 NY Slip Op 07826 [89 AD3d 171]), and instead what he received from the RICO attorneys/defendants Russo and Trakas a pro forma representation, with the underlying scheme of using Plaintiff to enrich themselves and to obtain out-of-state cases where neither of these two RICO attorneys/defendants Russo and Trakas, in certain cases, were licensed to practice law, and once they secured thousands of dollars from their out-of-state clients/victims, these two RICO attorneys/defendants Russo and Trakas abandoned said clients/victims, including Plaintiff.

254.    Plaintiff has no adequate remedy at law, since the  RICO attorneys/defendants Russo and Trakas have blown every inconceivable statute of limitation through their fraudulent and R.I.C.O. scheme and activities.

255.    A declaratory action is necessary and useful  in resolving and disposing of the question of whether the fraudulent Level Classification judgment is enforceable and recognizable, and is the best and most effective remedy for finalizing the controversy between the parties as to this issue and for relieving Plaintiff from the expensive and damaging uncertainty surrounding the pending enforcement and recognition of the fraudulent judgment.  Plaintiff is entitled to have the question of whether the May 2011

CARMEL A. SPITERI
c/o Gerasim Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyork:russotrakaslawsut@gmail.com

Level Classification judgment is enforceable and recognizable settled promptly so that Plaintiff may continue conducting its business without the threat of criminal prosecution based on said fraudulent judgment.

256.   Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction against State Defendants, their assignees and anyone else acting in concert with them including the law firms of John L. Russo, Arthur G. Trakas and its related entities and the State Defendants from commencing, prosecuting, or advancing in any way—directly or indirectly—any attempt to recognize or enforce the May 2011 Level Classification judgment in any court, tribunal, or administrative agency in any jurisdiction, in the United States or abroad, including any attempt to attach or seize Plaintiff, until this Honourable Court determines the merits and enters judgment on Plaintiff's claims against the Defendants in this action.

**WHEREFORE**, Plaintiff prays for judgment as set forth below:

i.     For general damages according to proof at trial;

ii.    Judgment pursuant to *Title* 28 *United States Code* § 2201 and *Federal Rules of Civil Procedure* Rule 57[20] declaring the May 2010 Order of Level Classification null and void, as a matter of fact and law or otherwise.

iii.   Issue an Order commanding that State Defendant forthwith remove Plaintiff from their Registry Website.

---

[20]These rules govern the procedure for obtaining a declaratory judgment under *Title* 28 *United States Code* § 2201 . Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

CARMEL A. SPITERI
c/o Careein Spartaivan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyork.russotrakaslawsuit@gmail.com

iv.    Issue and Order commanding the State Defendants, their agents, employees, contract, business associates and other law enforcement personnel, or anyone acting on their behalf, including and not limited to the United States Marshal Service that should they proceed to issue a warrant for the arrest of Plaintiff based on the misinformation that had been posted by the State Defendants themselves, and who refused to remove said information, shall first seek an Order from this Order Court to show cause why such an arrest warrant or any other type of law enforcement action adverse to Plaintiff, in whatever manner, shape or form, arising from said "registration update" issue, should be issued.

v.    Issue and Order that should the State Defendants, their agents, employees, contract, business associates and other law enforcement personnel, or anyone acting on their behalf, including and not limited to the United States Marshal Service, violate and/or seek any such aforementioned adverse Order from other than this Honourable Court, such violators will be held in Contempt, subject to arrest and prosecution.

vi.    Issue an injunction prohibiting the State Defendants, their agents, employees, contract, business associates and other law enforcement personnel, or anyone acting on their behalf, including and not limited to the United States Marshal Service, from posting false and deceitful information on the Registry Website or any other electronic or otherwise document, internet, etc., of out-of -state/non-resident worker and/or those recipients of registration who no longer reside within the State of New York, and forthwith remove their posting on the State Defendants' Registry Website.

vii.   Judgment pursuant to *Title* 28 *United States Code* § 2201 and *Federal Rules of Civil Procedure* Rule 57 declaring that State Defendants have committed the acts of deception and misrepresentation by willingly and knowingly post false information regarding the Plaintiff, as fully stated above and commanding them to forthwith cease and desist said practice and forthwith removing Plaintiff from their Registry Website.

viii.   Attorney's fees pursuant to 42 U.S.C. § 12205;

ix.   Costs and disbursements; and

x.   Any other relief that this Court deems equitable, just and proper.

### FIFTHEENTH CLAIM FOR RELIEF
**(Verified Petition for Writ of Mandate, Prohibition, Request for Declaratory and Injunctive Judgment in the Alternative  Writ or Rule Nisi or Other Appropriate Relief and Memorandum of Points and Authorities in Support of the Petition for Writ of Mandate )**
**(Against STATE DEFENDANTS)**

255.   Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

256.   In *Pulliam v. Allen*, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 [1984] ... "The Supreme Court, Justice Blackmun, held that: (1) judicial immunity is not a bar to prospective injunctive relief against judicial officer acting in her judicial capacity, and (2) judicial immunity is no bar to award of attorney fees under section 1988.")

### A.   THE ETIOLOGY OF SEX REGISTRATION

257.   In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, the

---

United States, in his federal capacity and per each State sovereignty enacted sex registration statutes (SRS).  The trust of the SRS were specifically based on the abduction, violent/brutal sexual assaults and murder of innocent children and adults, which are identified below.

    a.    Jacob Wetterling, who was 11 years old, was abducted in 1989 in Minnesota, and remains missing.

    b.    Megan Nicole Kanka, who was 7 years old, was **abducted, sexually assaulted, and murdered** in 1994, in New Jersey.(3)        Pam Lychner, who was 31 years old, was **attacked by a career offender** in Houston, Texas.

    c.    Jetseta Gage, who was 10 years old, was **kidnapped, sexually assaulted, and murdered** in 2005, in Cedar Rapids, Iowa.

    d.    Dru Sjodin, who was 22 years old, was sexually **assaulted and murdered** in 2003, in North Dakota.

    e.    Jessica Lunsford, who was 9 years old, was abducted, **sexually assaulted, buried alive, and murdered** in 2005, in Homosassa, Florida.

    f.    Sarah Lunde, who was 13 years old, was **strangled and murdered** in 2005, in Ruskin, Florida.

    g.    Amie Zyla, who was 8 years old, was **sexually assaulted in 1996 by a juvenile offender** in Waukesha, Wisconsin.

    h.    Christy Ann Fornoff, who was 13 years old, was **abducted, sexually assaulted, and murdered** in 1984, in Tempe, Arizona.



CARMEL A. SPITERI
c/o Garelick Sarrafzan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialaslawsuit@gmail.com

---

*Spiteri v. Russo, et al., etc.*
Case:  **12-CV-2780(MKB)(RM)**
           **FIRST AMENDED COMPLAINT**

i.    Alexandra Nicole Zapp, who was 30 years old, was **brutally attacked and murdered** in a public restroom by a repeat sex offender in 2002, in Bridgewater, Massachusetts.

j.    Polly Klaas, who was 12 years old, was **abducted, sexually assaulted, and murdered** in 1993 by a career offender in California.

k.    Jimmy Ryce, who was 9 years old, was **kidnapped and murdered** in Florida on September 11, 1995.

l.    Carlie Brucia, who was 11 years old, was **abducted and murdered** in Florida in February, 2004.

m.    Amanda Brown, who was 7 years old, was **abducted and murdered** in Florida in 1998.

n.    Elizabeth Smart, who was 14 years old, was **abducted** in Salt Lake City, Utah in June 2002.

o.    Molly Bish, who was 16 years old, was **abducted and murdered** in 2000 Warren, Massachusetts.

p.    Samantha Runnion, who was 5 years old, was **abducted, sexually assaulted, and murdered** in California on July 15th, 2002.

258.    Plaintiff alleges that criminals like the abovementioned homicidal sociopaths, who abduct, kidnap, violently assaults and sexually molest and murder, are a class of indivdidauls that would be deserving of a Level III, Classification.   However, as fully stated herein, Plaintiff's 1998 California conviction is so far removed from such

classification that Defendant Judge Camacho's decision was politically based, according to attorney/defendant Russo, due to an upcoming election.  To add to the injury, the remaining State Defendants continue to falsify public records (the Registry Website) on an international level, by knowing that Plaintiff had relocated to his home State of California on May 23rd, 2012, and regsitered with that appropriate jurisdiction.  Yet, said remaining State Defendants continue to date, to so deceive, misrepresent and fraudulently advertise on the Registry Website that Plaintiff is still, to date, a resident of the City of Astoria, Borough of Queens, State of New York living in an address he vacated almost fifteen (15) months ago.   These State Defendants are not "a nobody" they are the Honourable Governor, and his appointed law enforcement commissioners, etc.

**B.    TO SUBJECT THE PLAINTIFF TO A SORA HEARING HE MUST HAVE FIRST COME WITHIN THE MEANING AND INTENT OF CORRECTIONS LAW §168 ET SEQ.**

259.   Plaintiff is informed and believes that as a Non-Resident Workers and in accordance with federal requirements, New York must accept information from non-residents who come into the State to work or attend school where the person would be required to register in his state of residence. Because such individuals are not registered in the manner of a resident sex offender and no determination regarding the level of community notification has been made, the local law enforcement agency cannot perform community notification regarding those offenders.  Therefore, SORA proceedings are inapplicable and the State Defendants's referral of Plaintiff to the Respondent violated ***New York Corrections Law***

§ 168(f)6[21].

260.    Therefore, Plaintiff contends that his constitutional rights to be treated equally to those similarly situated (non-resident workers) was violated. (***U.S. Constitution*** 14th ***Amendment***)

261.    In addition, Plaintiff contends that his constitutional rights were violated by the State Defendants for his continued affirmation that, as a matter of California law, Plaintiff did not admit to committing any crime, and retained his "innocence", by pleading to **non** ***People v. Harvey***[22] (1979) 25 Cal.3d 754 waiver and ***People v. West***[23] (1970) 3 Cal.3d 595 plea.    Because of his continued assertions  as guaranteed to all Californians under their laws, depriving the Plaintiff of his constitutionally protected rights pursuant to the "Full

CARMEL A. SPITERI
c/o Gareain Sarkisyan
9790 Prescott Creek Court
Las Vegas, Nevada 89178-0408
(For Mailing Purposes Only)
Tel: 702.409.1508
Em: newyorkrussottakaslawsuit@gmail.com

---

[21]§ 168-f(6), mandates, "**Any nonresident worker** or nonresident student , as defined in subdivisions fourteen and fifteen of section one hundred sixty-eight-a of this article, **shall register his or her current address and the address of his or her place of employment** or educational institution attended **with the division within ten calendar days after such nonresident worker** or nonresident student commences employment or attendance at an educational institution in the state. **Any nonresident worker or nonresident student shall notify the division of any change of residence, employment** or educational institution address **no later than ten days after such change. The division shall notify the law enforcement agency where the nonresident worker is employed** or the educational institution is located that **a nonresident worker** or nonresident student **is present in that agency's jurisdiction**."

[22]A ***Harvey*** waiver allows the court to consider dismissed charges during sentencing in a criminal case. A **Non-Harvey Waiver** means that **a sentencing court is not permitted to rely upon information relating to counts dismissed in accordance with the plea bargain.** (*Emphasis added*)

[23]A ***West*** plea allows a defendant to enter a *nolo contendere* but still retains his/her innocence.  The plea is usually entered for valid tactical reasons.  Explicitly a ***West*** plea means that it "**does not constitute an expressed admission of guilt but only a consent to be punished as if guilty**." (*Emphasis added*). As implemented and executed by Judge Clark under California law, the Appellant was granted his statutory protected right pursuant to the law of the State of California, to claim and maintain his innocence in accordance with ***People v. Harvey,*** (1979) 25 Cal.3d 754 and ***People v. West,*** (1970) 3 Cal.3d 595.

---

*Spiteri v. Russo, et al., etc.*                                        **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

faith and credit" and equal protection of the United States Constitution[24]. (**U.S. Constitution**, Art IV, § 1 and 14th **Amendment**) The State Defendants added points to their evaluation for Plaintiff "not accepting responsibility."   In fact, it was the State of California and its Superior Court that accepted responsibility in accepting Plaintiff's plea as fully stated above.   Thereafter, Respondent, ratified the improper added points in his "non-statement" and "non-explanation" adjudication of the improperly brought SORA proceedings.

262.   Moreover, Plaintiff contends that the constitutionally protected right to travel may be violated under the circumstances stated herein, when Real Parties Interest refuse to recognize the legal determination by the State of California of a registration recipient based on the plea agreement and the factual finding of that respective court.   Additionally, Plaintiff argues that the Full Faith and Credit Clause of the Constitution compels interstate recognition of another State's level determination, or the application of the sister State's custom, practice and usage of the sex registration statutes as ratified and harmonized under SORNA (**Title** I of the **Adam Walsh Child Protection and Safety Act of 2006** (**Public Law** 109-248); see also **Title** 42 **United States Code** § 16902)

---

[24]In **Testa v. Katt**, 330 U.S. 386 (1947), the Court unanimously held that state courts, at least in regard to claims and cases analogous to claims and cases enforceable in those courts under state law, are as required to enforce penal laws of the United States as they are to enforce remedial laws. Respecting Rhode Island's claim that one sovereign cannot enforce the penal laws of another, Justice Black observed that the assumption underlying this claim flew "in the face of the fact that the States of the Union constitute a nation" and the fact of the existence of the supremacy clause.  (Id., 389. See, for a discussion as well as an extension of Testa, **FERC v. Mississippi**, 456 U.S. 742 (1982))

CARMEL A. SPITERI
c/o Garelin Snartalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89114-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialaswsuit@gmail.com

263.    Plaintiff contends that should this Honourable Court finds that the State Defendants and the Respondent did not offend or violated his constitutionally, statutory and equal protection rights, privileges and immunities, then Plaintiff contends that they have knowingly and wilfully violated **Title** 42 **United States Code** § 16902 et seq.  (See U.S. Department of Justice, Office of Justice Programs "Significant Changes to the SORNA Guidelines" dated May of 2007)[25]

264.    Petitioners believes this Petition for a Writ of Declaratory and Injunctive Relief or in the alternative a Petition for a Writ of Mandamus perfectly suited to the challenges of this case, where recently Plaintiff received a call from the State Defendants' Registry in New York City and was threatened that if he did not change his resident address, which is the false address since May 24th, 2011 had been intentionally, wrongfully and fraudulent published by the State Defendants, the matter would be referred to the United States Marshal Service for violation of S.O.R.N.A.  Plaintiff's call to said Registry was witnessed by his attorney and a third person.  Plaintiff responded to the Registry officer that prior to leaving the State of New York and going back to his home State of California, he notified the State Defendants of his change of address, and provided them with the resident address in the City of Palm Springs, County of Riverside, State of California. That within two (2)

---

[25]"**Substantial Implementation**": Basic Requirements The Final Guidelines make clear that the requirements of SORNA are a baseline that the jurisdictions must comply with. Jurisdictions that utilize a different foundational approach (classifying offenders based on a risk-assessment instead of the elements of their offenses, for example) will not be deemed to be in 'substantial compliance'. Nevertheless, jurisdictions will retain some latitude with practical implementation issues, such as in-person verification.

CARMEL A. SPITERI
c/o Garretin Sprattajvan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussorlakaslawsuit@gmail.com

days Plaintiff went to register with the City of Palm Springs Police Department, and that registration document was sent via e-mail to attorney/defendant Russo and faxed to the Albany Registry.

265.    The NYCSOD officer kept claiming that Plaintiff had filed the wrong address with the Albany Registry.  Plaintiff told him that he did not, on the contrary that Plaintiff had numerous e-mails going back and forth to the State Defendants demanding that they change his address on their Registry Website and also to remove him.  Plaintiff said that the State Defendants continued to refuse.

266.    Moreover, Plaintiff have complied fully with the requirements of S.O.R.NA. when on June 02nd, 2011, he went with his lawyer to the City of Palm Springs Police Department, County of Riverside, State of California and notified the Sergeant officer in charge of the Registry that Plaintiff was relocating to Europe, within one day of making that decision.

267.    Plaintiff alleges that he has shown in his Petition jurisdiction exceptional circumstances, and the unavailability of adequate relief in any other form from any other court.  Based on the recent August 22nd, 2012 threats imposed and/or advance by the State Defendants, Plaintiff is in imminent, real and immediate danger of unlawful apprehension, restrain, detention, arrest and imprisonment, all of which arise not from any wrongful acts he omitted or participated in, but for the fraud and false publication of "resident address" information that State Defendants refused to update their Registry Website on May 25th, 2011 when Plaintiff had left the State Defendants' jurisdiction and returned to his home

CARMEL A. SPITERI
c/o Gareth Snartabvan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-2408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussofraudlawsuit@gmail.com

*Spiteri v. Russo*, et al., etc.                                    **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**

State of California, and registered with the City of Palm Springs Police Department, County of Riverside, State of California.

268.   Alternatively, Plaintiff respectfully requests this Honourable Court to treat the Petition as a petition or motion for equitable relief. This Honourable Court, like other federal courts, has the inherent equitable power "to set aside fraudulently begotten judgments" and restore the parties to the position they would have enjoyed in the absence of the fraud. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 250 (1944). See also *Chambers v. NASCO*, Inc., 501 U.S. 32, 44-45 (1991); *Universal Oil Products Co v. Root Refining Co.*, 328 U.S. 575, 580 (1946). Indeed, in Article III the framers accorded this Court the powers of a court of equity precisely so that it might answer the challenge of fraud.

269.   The legal issues raised in this petition are of great public importance that must be resolved promptly.

270.   Petitioners believes this Petition for a Writ of Declaratory and Injunctive Relief or in the alternative a Petition for a Writ of Mandamus perfectly suited to the challenges of this case, where recently Plaintiff received a call from the State Defendants' Registry in New York City and was threatened that if he did not change his resident address, which is the false address since May 24th, 2011 had been intentionally, wrongfully and fraudulent published by the State Defendants, the matter would be referred to the United States Marshal Service for violation of S.O.R.N.A. Plaintiff's call to said Registry was witnessed

CARMEL A. SPITERI
c/o Gareahn Sparta/van
9790 Prescott Creek Court
Las Vegas, Nevada 89112-9408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussofrakaslawsuit@gmail.com

by his attorney and a third person. Plaintiff responded to the Registry officer that prior to leaving the State of New York and going back to his home State of California, he notified the State Defendants of his change of address, and provided them with the resident address in the City of Palm Springs, County of Riverside, State of California. That within two (2) days Plaintiff went to register with the City of Palm Springs Police Department, and that registration document was sent via e-mail to attorney/defendant Russo and faxed to the Albany Registry.

271.    The NYCSOD officer kept claiming that Plaintiff had filed the wrong address with the Albany Registry. Plaintiff told him that he did not, on the contrary that Plaintiff had numerous e-mails going back and forth to the State Defendants demanding that they change his address on their Registry Website and also to remove him. Plaintiff said that the State Defendants continued to refuse.

272.    Moreover, Plaintiff have complied fully with the requirements of S.O.R.NA. when on June 02nd, 2011, he went with his lawyer to the City of Palm Springs Police Department, County of Riverside, State of California and notified the Sergeant officer in charge of the Registry that Plaintiff was relocating to Europe, within one day of making that decision.

273.    Plaintiff alleges that he has shown in his Petition jurisdiction exceptional circumstances, and the unavailability of adequate relief in any other form from any other court. Based on the recent August 22nd, 2012 threats imposed and/or advance by the State Defendants, Plaintiff is in imminent, real and immediate danger of unlawful apprehension,

restrain, detention, arrest and imprisonment, all of which arise not from any wrongful acts he omitted or participated in, but for the fraud and false publication of "resident address" information that State Defendants refused to update their Registry Website on May 25th, 2011 when Plaintiff had left the State Defendants' jurisdiction and returned to his home State of California, and registered with the City of Palm Springs Police Department, County of Riverside, State of California.

274.   Alternatively, Plaintiff respectfully requests this Honourable Court to treat the Petition as a petition or motion for equitable relief. This Honourable Court, like other federal courts, has the inherent equitable power "to set aside fraudulently begotten judgments" and restore the parties to the position they would have enjoyed in the absence of the fraud. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 250 (1944). See also *Chambers v. NASCO*, Inc., 501 U.S. 32, 44-45 (1991); *Universal Oil Products Co v. Root Refining Co.*, 328 U.S. 575, 580 (1946). Indeed, in Article III the framers accorded this Court the powers of a court of equity precisely so that it might answer the challenge of fraud.

275.   Plaintiff alleges that he the *Eleventh Amendment* presents no bar to the claims for prospective declaratory and injunctive relief against the State Defendants in their official capacities.   (See *State Employees Bargaining Agent Coalition v. Rowland*, No. 06-0616-cv (2d Cir. 07/10/2007)

CARMEL A. SPITERI
c/o Geraldin Szartalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussofraudlawsuit@gmail.com

---

276.    This **FIFTEENTH CLAIM FOR RELIEF** challenges a number of practices of the State Defendants arising from factors of non-resident/temporary recipients of Correction Law § 168-f(6) worker who completed non-resident and temporary employment then return to their home state of conviction, residence and/or another out-of-state residency.

277.    This **FIFTEENTH CLAIM FOR RELIEF**  first challenges the State Defendants policy to subject a non-resident worker recipients of ***Correction Law*** § 168-f(6) to a S.O.R.A. registration only and not to a Level Classification.

278.    This **FIFTEENTH CLAIM FOR RELIEF** secondly challenges the State Defendants to continue to publish on the Registry Website false information about Plaintiff's residence address and location, when he had completed his temporary out-of-state employment in New York and returned back to his state of conviction and residence, City of Palm Springs, State of California, and then comply with State of New York, State of California and S.O.R.N.A. requirements of registering within three (3) of entering the jurisdiction of the State of California.

279.    The Plaintiff asserts that this statute also violates Article. IV, § 1, of the "Full Faith and Credit," arising from judgement of the California court of conviction for a non-violent/non-serious nor aggrivated first time offence with a willing participant, and that Plaintiff is informed and believes that " The constitutional provision for giving "full faith and credit" to such judgments relates only to their effect as evidence or a bar to further litigation. (***Claflin v. McDermot***, 12 Fed. Rep. 375; ***Chicago &c. R. Co. v. Wiggins***



CARMEL A. SPITERI
c/o Geneidn Snartdvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.403.1508
Em: newyorkrussorrakaslawsuit@gmail.com

*Ferry Co.*, 108 U.S. 18). *Cia* Therefore, for the State Defendants through their judiciary were as a matter of fact and law, prohibited from causing and/or recommending a Level III Classification and the continued posting of Plaintiff's demographics and personal information on their Registry Website, after Plaintiff had relocated to his state of conviction and complied with all registration requirements under each respective State and Federal registration statues. Plaintiff alleges that by continuing to falsify Plaintiff's actual resident address and publishing said deceitful and false information on the State Defendants' Website, and after Plaintiff had provided the State Defendants with his address of residence in the City of Palm Springs, State of California, within two (2) days of relocating to said address, and the State Defendants refusing to change the address and remove Plaintiff from said Website, constitute violations of the following, but not limited to, on the basis that Plaintiff is informed and believe that State Defendants are also attorneys licensed to practice law in the State of New York:

*New York Judicial Law* § *487/New York Code* § 487 provides:

An attorney or counselor who:

        1.    *Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or*,

        2.    *Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for, Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.*

*New York Deceptive Practice Statutes* § 349(a) *Business Law Statute*, pertinently states, "*Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.*"

In addition, § 349(f) states:

"*. . . any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney`s fees to a prevailing plaintiff.*"

280. Furthermore, § 70 of the *Code of Civil Procedure*, cross-referenced in § 148, similarly stated that "[a]n attorney or counselor, who is guilty of any deceit or collusion, with intent to deceive the court or a party, forfeits, to the party injured by his deceit or collusion, treble damages. He is also guilty of a misdemeanor." The derivation note accompanying section 70 includes the following comment: "As to the meaning of the word, 'deceit,' as used in this section, see *Looff v Lawton*, 14 Hun, 588."

**A.    *The S.O.R.A. Scheme***

281. Under SORA, convicted sex offenders are entitled to a court hearing to determine the offense level at which they will be required to register. Level 1 specifies offenders who are a small threat to the community and have a low risk of reoffending; Level 2 specifies a moderate risk; and Level 3, high risk.

282. The court uses the level to determine how long the offender will be required to

---

*Spiteri v. Russo*, et al., etc.                          **FIRST AMENDED COMPLAINT**
Case:  **12-CV-2780(MKB)(RM)**          Page 132 of 149

register as a sex offender, as well as what information must be released to the community where the offender lives during the duration of his registration.

A.    *Registering with the Division*

283.    On or about January 11th, 2010[26], upon being temporary hired by attorneys/defendants Russo and Trakas, Plaintiff went with attorney/defendant Trakas' paralegal to the Division located in New York City to register in accordance with *Correction Law* 168-f(6) . . . a non-New York citizen and non-resident worker . The parole agent initial told Plaintiff that he would have to report to the Division every ninety (90) days, however, after speaking the Registry in Albany, the parole agent told Plaintiff that she was in error and all he need to do is just to notify them where he was residing and his temporary employer's address[27], which Plaintiff wrote both information the registration form. No finger prints nor pictures were taken by the parole agent.

284.    Plaintiff's apartment was a block away from Bryant's High School and a couple of other Junior High School, until the day he returned to his home State of California.

285.    For almost six (6) months there was no notices sent by the S.O.R.A. Board Examiners. Around June 2010, Plaintiff received a Notice from the S.O.R.A. Board Examiners, in particular Board Member Condo that she had determined that Plaintiff was

---

[26]This information was confirmed with the NYS Registry located at 100 Centre Sstreet, New York via telephone.

[27]The information given by the parole agent appeared very similar to the information given by attorneys/defendants Russo and Trakas before Plaintiff took them up on the offer to work for them as a non-New York citizen and non-resident worker .

CARMEL A. SPITERI
c/o Garelin Srartalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

subject to registration, including a Level Classification and that she sent the matter for adjudication to the Queens Supreme Court, Criminal Division, TAP A.  The case was assigned to Judge Ricardo Camacho.

286.   Plaintiff excerised his statutory right pursuant to *Correction Law* 168-f(6) by submitting, under the supervision and direction of attorneys/defendants Russo and Trakas that pursuant to said law he was only obligated to provide the temoprary employment and temporary residence address which he had done. That the Board did not have jurisdiction no authority to recommend a Level Classification.  Furthermore, Plaintiff complained that he was allowed nor given the opportunity under the code to rebut and submit documents for  the Board review prior to making any determination.   Surely, if Plaintiff was such a threat to society and the children in the community that required the Board to recommend a Level III, when in his home State of California, Plaintiff was similar to a Level I, as a first-time offender convicted of a non-violent offence with a willing participant, then, why wait over six (6) months and then over a fourteen (14) months to impose such an extreme, oppressive and arbitrary Level Classification III, when they knew at all times that Plaintiff was leaving only a block away from Bryant High School and a couple of blocks away from two other Junior High Schools, if they deemed him such a potential, real and immient threat to society.

/ / /

/ / /

CARMEL A. SPITERI
c/o Geraldin Snartahnan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8608
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

287.   Here are the events that followed:

a.    08/20/2010, court assigned defence attorney Kennedy was substituted by attorney/defendant Russo.

b.    09/20/2010, Assistant District Attorney: Rosenbaum, was assigned to the case.

c.    10/27/2010, Plaintiff made his first appearance for a RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Griffin, J.

d.    10/27/2010, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Latella, J.  It was adjourned.

e.    12/06/2010, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Griffin, J.  It was adjourned.

f.    01/24/2011,  Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

g.    01/24/2011,  Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

h.    02/01/2011,  Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

i.    02/01/2011,  Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

j.    02/25/2011, Plaintiff prepared a Motion for Declaratory and Injuncitve relief against the false posting on the court's CrimWeb for attorney/defendant Russo to file.

CARMEL A. SPITERI
c/o Careain Spartatvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussorrakaslawsuit@gmail.com

Attorney/defendant Russo promised to review, edit and file it.   Plaintiff is informed and believes that attorney/defendant Russo never filed it.

  k. 02/28/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

  l. 03/17/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

  m. 04/08/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

  n. 04/18/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.

  o. 04/18/2011, Plaintiff appeared for RISK LEVEL ASSESSMENT before Supreme Criminal Court, TAP A, Judge Camacho, F.  It was adjourned.  Plaintiff is informed and believes that attorney/defendant Russo notified Judge Camacho that Plaintiff was returning to his home State of California to resume his employment with the Law Office of David L. Wright. Plaintiff is informed and believe that attorney/defendant Russo provided a copy of attorney David L. Wright verifying same.   According to attorney/defendant Russo, he not only gave a copy of said verification to Judge Camacho but also to the prosecutor and faxed a copy to the Registry in Albany. However, Plaintiff has no first hand knowledge that attorney/defendant Russo if he ever did do what he said he did, in light of the fact, that attorney/defendant Russo has exhibited a course of conduct

which questions his honesty, credibility and veracity of any statement or promises he made, which in part gave rise to this action.

     p.     05/24/2011 Plaintiff left for his home State of California.

     q.     05/25/2011, Plaintiff is informed and believe that Judge Camacho, F, issued a ruling for a RISK LEVEL III CLASSIFICATION without explanation and/or fact finding analysis how he reached that determination.  When attorney/defendant Russo notified Plaintiff, attorney/defendant Russo told Plaintiff, "Judge Camacho had no jurisdiction over you to issue his Order because you had already left.  Attorney/defendant Russo said the he will file a Motion to Strike the Order, which is also confirmed in the below e-mail of June 22nd, 2011.

288.     During the approximately fifteen (15) months of going back and forth to California, Montana, Pennsylvania and New Jersey on cases for attorneys/defendants Russo and Trakas, and attorney David L. Wright, as a non-New York citizen and non-resident worker (*Correction Law* § 168-f(6)) Plaintiff was subjected to two malicious prosecutions in the Counties of Riverside and Sonoma California, trumped up by two vicious individuals, who stole his BMW, and filed false police reports, for allegedly not properly registering. However, after the facts were revealed, that in fact, Plaintiff was properly and legally registered, both criminal cases were dismissed with prejudice.  Plaintiff contends that the State Defendants were and continue to be motivated not by what is real in Plaintiff's California conviction case, which they meets all the elemets of a comparable New York

Penal violation which equates to a level III Classification, an Order which was never served personally upon the Plaintiff, because he had terminated his non-resident worker's employment with attorneys/defendants Russo and Trakas and moved back to his home State of California, where he re-registered with the Palm Springs Police Department two (2) days after entering the City of Palm Spring, then notifying the State Defendants, Judge Camacho and the prosecutor of same, by faxing said notice given by the Registry Officer in City Palm Springs to each and everyone. Thereby, comply with **Correction Law** §168 et seq; **California Penal Code** § 290 et seq., and S.O.R.N.A. (Sex Offender Registration and Notification Act which is Title I of the Adam Walsh Child Protection and Safety Act of 2006 (Public Law 109-248), as fully stated hereinafter.

289. On May On May 27th, 2011, at approximately 1322 hours, Plaintiff's California attorney David L. Wright drove Plaintiff to the Palm Springs Police Department to register pursuant to **California Penal Code** § 290, et seq. He was given a June 02nd, 2011 at 0815 hours, because they were not processing any registration. Plaintiff gave them my address and my phone number, including a picture of his identification card. Officer K. Morodey, Badge No.: 10305 gave Plaintiff an official appointment card, which he immediately e-mailed to attorney/defendant Russo, included was the declaration of attorney David L. Wright who was present during that registration process.

290. On May 27th, 2011, Plaintiff called attorney/defendant Russo to confirm that he received said documents and attorney/defendant Russo told Plaintiff that he had faxed said

CARMEL A. SPITERI
c/o Gareth Stanbuan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

---

documents to Judge Camacho and the Registry Office in Albany.   Attorney/defendant Russo assured Plaintiff that he would not be posted on the New York Registry Website.

291.   On June 02nd, 2012, Plaintiff and attorney David L. Wright reported to the Sergeant in Charge of Registration at the Palm Springs Police Department, as previously scheduled. The sergeant took both Plaintiff and attorney David L. Wright into the registration office and during the interview, attorney David L. Wright asked if Plaintiff moves to his birth place in Europe would he still have to register.   The Sergeant told Plaintiff and attorney David L. Wright that according to California law, Plaintiff would be exempt from further registration.

292.   Plaintiff notified the Sergeant that he was going to move back to his place of birth in Europe.  The Sergeant wrote it down on the registration form, which Plaintiff believes he also signed.  Plaintiff recalls that a copy of said form was made and given to Plaintiff, to immediately fax to attorney/defendant Russo. The Sergeant also informed both attorney David L. Wright and the Plaintiff that he (the Sergeant) was going to notify the State of New York, that Plaintiff would not have to register any longer in California.  Thereby, complying both *California Penal Code* § 290 et seq., and S.O.R.N.A. (supra)

293.   Once Plaintiff and attorney David L. Wright returned to the office, they faxed a copy of the form given by Registry Sergeant to attorney/defendant Russo, followed up with a call to attorney/defendant Russo to make he received it and that he was also going to file it with Judge Camacho, copy to the prosecutor and a copy to Albany.

CARMEL A. SPITERI
c/o Garedin Srartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialasslawsuit@gmail.com

294.   On June 22nd, 2011, Plaintiff received an e-mail from attorney/defendant Russo. The Plaintiff was already residing within a member State of the European Union, thereby, attorney/defendant Russo used both the interstate and international commerce, through the use of the internet to e-mail Plaintiff, a copy of which is hereto attached, marked Exhibit 2, incorporated herein by reference.

295.   For several months attorney/defendant Russo continued to represent to the Plaintiff that he had filed the Motion to Strike, Reconsideration and Notice of Appeal including an Article 78 Petition, when he fact, not only he did not, but he let the statute of limitation to so do to elapse.

296.   Upon discovering that the State Defendants posted on the Registration Webcite, Plaintiff's photo and California conviction, including the filing of false information, claiming that Plaintiff had been convicted of sexual encounter with a 13 years old boy, when I fact no conviction ever took place, and still claiming that Plaintiff resided at the City of Astoria, Borough of Queens, New York address, he immediately wrote to each named State Defendant and asked them to remove him from their website.   Instead, the State Defendants informed Plaintiff that they would not remove him, notwithstanding that he told them he lived in Europe.  However, after several months of back and forth e-mails to the State Defendants, they did removed the false information regarding the 13 years old boy, not because attorneys/defendants Russo and Trakas so requested, but because Plaintiff wrote to the Governor, the Attorney General of New York and others.  However, the State Defendants, excluding Judge Camacho continued to falsify public internet record, by

CARMEL A. SPITERI
c/o Garabin Scantalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrakaslawsuit@gmail.com

posting that Plaintiff continued to reside at the City of Astoria, Borough of Queens, State of New York address, when they knew well he did not, through numerous e-mails and records reflecting his address in the City of Palm Springs, Riverside County, State of California, as of May 27th, 2011.

297.   On August 22nd, 2012 Plaintiff received a call from the New York Registry advising him that they had sent a letter to his City of Astoria, Borough of Queens, New York address to re-register, and it was returned to them.  Plaintiff informed the gentleman officer that Plaintiff had relocated back to his home State of California, were he registered and then moved to Europe.  Plaintiff informed the gentleman officer that once he moved to his home State of California, he, attorney David L. Wright and attorney/defendant Russo notified Judge Camacho, the Queens District Attorney and the Albany Registry of the move, and that he had not been at that City of Astoria, Borough of Queens, New York address since around May 23rd, 2011.

298.   On August 22nd, 2012, Plaintiff received a call from the New York Registry, in New York City.  The male officer informed Plaintiff that he was informed that he did not update his address listed on the State Defendants' Website. Plaintiff with his attorney David L. Wright on the line, informed the officer that Plaintiff had informed Judge Camacho, the Queens County District Attorney, the Registry in Albany that he had moved and registered back to his residence in the City of Palm Springs, California.   Attorney David L. Wright told the officer that all paper work, including his sworn declaration that he had taken Plaintiff two (2) days after he entered the City of Palm Springs, California had been faxed to all of the above by attorney/defendant Russo.  Attorney David L. Wright also told the

CARMEL A. SPITERI
c/o Gareth Spartalyan
9790 Prescott Creek Court
Las Vegas, Nevada 89113-0408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialaswsuit@gmail.com

officer that Plaintiff was in full compliance with S.O.R.N.A., since he notified his last place of residence (Registry) that he (Plaintiff) was leaving the country.  Plaintiff is informed and believes that pursuant to *United States v. Murphy*, No. 10–4095 (December 23rd , 2011)-Appeal from the United States District Court For the District of Utah (D.C. NO. 1:08-CR-00102-TC-1) The Justices in *Murphy* stated, that, "The Sex Offender Registration and Notification Act (SORNA), *Title* 42*United States Code* §§ 16911–29, requires a sex offender to register and keep the registration current in each state where he resides, works, or studies.  **Sex offenders who change their name, residence, employment, or student status,  must appear in person <u>in at least one "jurisdiction involved" to inform the state's authorities of the change</u>**." (Emphasis added) On June 02nd, 2011, Plaintiff did just that with his attorney David L. Wright who was present when he informed the Sergeant Officer in charge of the Registry in the City of Palm Springs, State of California that Plaintiff was returning to Europe and gave him the information.

299.   The Justices in *Murphy* further explained that: "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, **appear in person in at least 1 jurisdiction involved** (in this case California, where Plaintiff last resided)  pursuant to subsection (a) of this section and  inform that jurisdiction of all changes in the information required for that offender in the sex  offender registry " Id. § 16913(c).  **SORNA defines "jurisdiction" to include U.S. states and territories but not foreign nations**.  Id. § 16911(10).

CARMEL A. SPITERI
c/o Genelin Santalvan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-6408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialaslawsuit@gmail.com

300.   It appears based on the State Defendants denials to remove Plaintiff from their Registry Website for the intended purpose that wherever Plaintiff might be reisding, i.e. in any other State of the Union or in a foreign country, Plaintiff is required per the State Defendants' Level III Classification to report in person to registry every 90 days. Failure to so do, State Defendants rely on not only S.O.R.A. but S.O.R.N.A. to prosecute Plaintiff for not registering notwithstanding that he fully complied with **Correction Law** § 168 et seq;, **California Penal Code** § 290 et seq., and **Title** 42 **United States Code** §§ 16911 when he moved back to his home State of California, then moved to Europe, as fully stated above.  Such demand, when Plaintiff no longer lives, resides nor works in the American Continent imposes an onerous 'affirmative disability or restraint.'

301.   Plaintiff contends that the manner, methodology and implementation of the New York S.O.R.A., to  non-New York citizen and non-resident worker s, and those  non-New York citizen and non-resident worker s who relocated to their home State of conviction after completing their " non-New York citizen and non-resident worker s" status is unconstitutional and punitive.

302.   Plaintiff alleges that when it involves the facts of this particular case, that Plaintiff was never served with any order from Judge Camacho, the Queens County District Attorney and the State Defendants informing him that he was classified as a Level III, providing him with admonishes and notice of what is required of him to do, the consequence if not doing what he is ordered to so do, and what are his appealable option should he disagree with any of the terms and conditions and/or the Level Classification itself.  Such procedural and substantive due process violations are not *de minimis,* they are

fundamental to a civil society on an international level, since Plaintiff no longer lives, resides, is employed or is actually physically in the American Continent. *Ergo*, Plaintiff contends that as applied to him, S.O.R.A. and S.O.R.N.A. are being used punitively, in light of the fact that the Untied States Legislature and the above mentioned case law, excludes "foreign countries" as being "jurisdictions" as intended, define and implemented by both the legislature and the abovementioned case law.

303.   The Supreme Court further held that "[b]ecause we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." (***Smith v. Doe***, 538 U.S. 84 (2003). Therefore, should the State Defendants seek enforcement of their Level III Classification requirements as applied to the facts and circumstances of this case, in light of the fact that Plaintiff complied with each and every stage of such registration procedure not only pursuant to New York law, but Calfiornia and the United States laws, it was transcend both S.O.R.A. and S.O.R.N.A. into a punitive statue, in violation of the Ex post Facto law, collateral estoppel doctrine, and a blatant violation of both procedural and substantive due process pursuant to the Fourteenth Amendment to the Untied States Constitution.

304.   In ***United States v. Hester***, 589 F.3d 86 (2d Cir. 2009), the Court noted that "the Supreme Court [in ***Lambert v. California***, 355 U.S. 225 (1957)] carved out a narrow exception to this rule, . . . stating: '[e]ngrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has a chance to defend charges.'" Id.

305.   Plaintiff alleges that he is a member of a protected class of " non-New York citizen and non-resident worker s" from out-of-the State of New York, and as an non-citizen of the State of New York, State  Defendants are defacto discriminating on the basis of selective, arbitrary and capricious enforcement of S.O.R.A. against said non-citizen and  non-New York citizen and non-resident worker s, in such a manner, execution and implementation that violates the First, *Fourth, Fifth, Sixth, Thirteenth, Fourteenth* Amendments of the United States Constitution, Article IV, and *United States Code* §§ 1983 and 1985, through among other things, as process of deliberate indifference and onerous enforcement of S.O.R.A., through a continued conspiracy to deprive and prevent Plaintiff, and those similarly situated, from freeing themselves from the control, restrains, possession and restrictions of S.O.R.A., arising from an out-of-state non-violent/non-aggravated first time conviction with a willing participate, in order to punish and warn said  non-New York citizen and non-resident worker s from every stepping foot in the State of New York, and that such imposition of punishment continues after said non-New York citizen and non-resident worker  relocates to his/her place of conviction and original residence.

306.   On August 22nd, 2012 Plaintiff was threatened by State Defendants' agent, employee and/or representative at the NYCPD Sex Offender Unit, 100 Centre Street, Room 1414New York  New,  New York 10013 that if Plaintiff did not return to the United States to re-register, said State Defendants' agent, employee and/or representative would refer the matter to the United States Marshals for a warrant of Plaintiff's arrest, notwithstanding, that prior to leaving his last State of residence, City of Palm Springs, State of California, Plaintiff complied with S.O.R.N.A. requirements, by notifying the City of Palm Springs

CARMEL A. SPITERI
c/o Genelin Soartaivan
9790 Prescott Creek Court
Las Vegas, Nevada 89112-9408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussotrialslawsuit@gmail.com

Police Department Registry Sergeant in charge of said registry within one day of deciding to leave the United States, in the presence of attorney David L. Wrights, as stated above.

**WHEREFORE**, the plaintiff requests the following relief:

   i.  Judgment pursuant to *Title* 28 *United States Code* § 2201 and *Federal Rules of Civil Procedure* Rule 57[28] declaring that as a result of the State Defendants' failure to develop a system in which non-resident-workers with an out-of-State conviction, who had left the State of New York, can be removed from the New York Registry Website, rather than continuing to falsify their residential addresses and locations on said Website.

   ii.  By posting said false information on the Registry, the State Defendants attempt and/or do induce through means of force, coercion, threatening physical apprehension, restrain, arrest, detention and prosecution to procure said non-resident workers, who had complied with the State of New York, his/her new State of residence, and S.O.R.N.A., as is this in this case, violates the Article IV, First, Fourth and Fourteenth Amendment and constitutes deception and fraud as prohibited by the aforementioned applicable State and Federal statutes.

   iii.  Judgment pursuant to *Title* 28 *United States Code* § 2201 and *Federal Rules of Civil Procedure* Rule 57 declaring that State Defendants have committed the acts of deception and misrepresentation by willingly and knowingly post false information regarding the Plaintiff, as fully stated above and commanding them to forthwith cease and

---

[28]These rules govern the procedure for obtaining a declaratory judgment under *Title* 28 *United States Code* § 2201 . Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

desist said practice and forthwith removing Plaintiff from their Registry Website.

      iv.    Attorney's fees pursuant to 42 U.S.C. § 12205;

      v.    Costs and disbursements; and

      vi.    Any other relief that this Court deems equitable, just and proper.

      I declare under penalty of perjury pursuant to **Title** 28 **United States Code** § 1746 that the above statements are true and correct to the best of my knowledge and belief, and that I have conducted a reasonable thorough investigation and review of records, e-mails, tangible documents and other documentation, spoken to clients/victims and others, in order to provide an adequate notice to the Defendants on the reasons why I have instituted this action.  This action is not brought for any improper or unlawful motive, but only to redress the wrongs alleged in this FAC by the named Defendants, and their unknown co-conspirators or aids. Executed on **August 23rd, 2012**, in the European Union.

*Carmel Spiteri* _____

**CARMEL SPITERI**, *B.A., NAALHR,Non-attorney*
c/o **Garegin Spartalyan**
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Em:    newyorkrussotrakaslawsuit@gmail.com
Tel:    207.409.1508
Plaintiff
*In Pro Se*



**DEPARTMENT OF THE ARMY**
DEFENSE LANGUAGE INSTITUTE FOREIGN LANGUAGE CENTER
MONTEREY, CALIFORNIA 93944

REPLY TO
ATTENTION OF

CARMEL A. SPITERI
c/o Garedin Spartakyan
9790 Prescott Creek Court
Las Vegas, Nevada 89117-8408
(For Mailing Purposes Only)
Tel: 202.409.1508
Em: newyorkrussomaliaslawsuit@gmail.com

Karl J. Berscheid
Chief, Strategic Plans and Operations
Defense Language Institute Foreign Language Center
Monterey, California
United States

To whom it may concern:

Please allow me to bring to your kind attention Carmel "Challie" Spiteri, who I highly recommend to you for his enormous sensitivity and spiritual capacity, and who also possesses a great gift to instill positive energy and well being in others.

During his stay in our city, he provided courses to employees of this City's Government, all levels of the Police Forces and Military branches, with great success assisting all in achieving greater efficiency and overall better performance in their duties and obligations.

Furthermore, he has proven himself to be a truly honest person, responsible, with solid principals and moral values, in which it doesn't inconvenience me in any way to highly recommend him to you in the broadest sense.

I am recommending Challie Spiteri through this letter, with great respect and high esteem, hoping it will be useful to him upon request or in any presentation that he may perform. Written in the City of Monterey, in the State of California, United States on the 22nd of December, 2011.

And without anything more to add at the moment, I extend a warm greeting.

Sincerely

Karl J. Berscheid

**EXHIBIT 1**



**RE: WHEN**                                                                    Hide Details

FROM:  John Russo

TO:  cas.attyrussooffice@yahoo.com                              Wednesday, June 22, 2011 5:37 PM

Chuck.

JUST YESTERDAY - I RECIEVED A SHORT FORM ORDER WITH NOTICE OF ENTRY FROM THE QUEENS DA WHICH SIMPLY REFLECTS THE CATEGORY 3 DETERMINATION MADE BY CAMACHO.  I NOW CAN FILE A MOTION TO STRIKE THE ORDER AS MOOT BECAUSE YOU  LEFT THE JURISDICTION PRIOR TO THE COURT'S DECISION AND ORDER.  THT SHOULD THEN RESOLVE THE WEB POSTING BY THE STATE.

I WILL DO THAT TODAY.  STAY CALM.

BY THE WAY, THE JUDGE DISQUALIFIED ON CERDA'S CASE BECAUSE OF MY PAST REPRESENTATION OF NYRA.  I AM FINDING ANOTHER LAWYER TO TAKE OVER THE LEAD ROLE IN THE MATTER FOR CERDA.


John L. Russo
Attorney at Law
31-01 Broadway, 4th Floor
Astoria, New York 11106
(718)777-1777

**Please note that attorney/defendant Russo continues to deceive Plaintiff, making him belief that in fact, he had just received said Order, when the Clerk of the Court had told Plaintiff that Order was mailed in May 2011.  Attorney/defendant Russo continued his scheme to deceive Plaintiff, waiting for the statute of limitation to run out, so that Plaintiff would not discover the fraud, misinformation, deceit and misrepresentation that attorneys/defendants Russo and Trakas, who appeared before Defendant Hon. Judge Camacho, had committed.**

**EXHIBIT 2**