FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 19 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

CARMEL SPITERI,

                Plaintiff,

            v.

JOHN LEO RUSSO, et al.,

                Defendants.

**MEMORANDUM & ORDER**
12 CV 2780 (MKB)

---------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

      Plaintiff Carmel Spiteri commenced the above-captioned action *pro se* on May 31, 2012 and filed an amended complaint on August 24, 2012, seeking, among other things, damages and declaratory and injunctive relief, against several individuals, including two attorneys, John Leo Russo and Arthur George Trakas, as well as Supreme Court Justice Ricardo Camacho, the Governor of New York State Andrew Cuomo, Michael C. Green[1] as Commissioner of the New York State Sex Offender Board of Examiners, Michelle Mulligan[2] as Director of the New York State Division of Criminal Justice System, New York State (collectively "the State Defendants"), the New York City Police Department ("NYPD") Sex Offender Unit and Does 1 – 10. Plaintiff's claims purportedly include, among others, unjust enrichment, fraud, deceit and misrepresentation; legal malpractice; violations of the Fair Labor Standards Act, violations of the

---

[1] According to the Attorney General's Office, Plaintiff named the incorrect party. Michelle Harrington, not Michael Green, is the Commissioner of the New York State Board of Examiners of Sex Offenders.

[2] According to the Attorney General's Office, Michelle Mulligan is the Director of the New York State Sex Offender Registry, not the entity named in the amended complaint.

1

Thirteenth Amendment, Civil RICO, conspiracy to violate RICO and violations of the New York Judiciary Law.

Currently before the Court are: (1) Plaintiff's request to seek a stay ordering the State Defendants to "cease all and any actions regarding an arrest, apprehension, detention and/or . . . warrant" for Plaintiff until this Court has ruled on Plaintiff's motion for a preliminary injunction; (2) Plaintiff's request to seek leave to move to compel the State Defendants to comply with his October 17, 2012 document request to the New York State Attorney General; and (3) Assistant Attorney General Maria Barous Hartofilis's request to order Plaintiff to refrain from personally attacking her in his submissions to the Court. For the reasons discussed below, Plaintiff's request to seek a stay and to make a motion to compel the State Defendants to comply with his document demand are hereby denied. The request of AAG Hartofilis is hereby granted.

1. **Background**

Plaintiff Carmel Spiteri commenced the above-captioned action on May 31, 2012 seeking, among other things, damages and declaratory and injunctive relief, against several individuals including the Governor of New York, Andrew Cuomo; two attorneys, John Russo and Arthur G. Trakas; a New York State Judge, Fernando Camacho; the Queens District Attorney, Richard Brown; and several agencies including the Sex Offender Monitoring Unit of the NYPD's Special Victims Division, New York State Division of Criminal Justice System, New York State Sex Offender Board of Examiners, and others. It appears that only defendants Russo and Trakas were served with the initial complaint.

In or about August 2012, Plaintiff filed an amended complaint naming defendants Russo and Trakas, Supreme Court Justice Ricardo Camacho,[3] the Governor of New York State Andrew Cuomo, Michael C. Green as Commissioner of the New York State Sex Offender Board of Examiners, Michelle Mulligan as Director of the New York State Division of Criminal Justice System, New York State, the New York City Police Department Sex Offender Unit and Does 1 – 10. To date, it appears that Plaintiff has successfully served the amended complaint on defendants Russo, Trakas, Judge Camacho, Michelle Harrington, the Commissioner of the New York State Sex Offender Board of Examiners and Michelle Mulligan, the Director New York State Sex Offender Registry.[4]

By letter dated September 3, 2012, plaintiff sought to file a motion seeking a temporary restraining order to:

> Declare that Plaintiff is not subject to a S.O.R.N.A. [Sex Offender Registration and Notification Act] violations [sic] for not updating annual registration with the State Defendants pursuant to *Title* 42 *United States Code* § 16911(10)
>
> Declare that S.O.R.N.A defines "jurisdiction" to include U.S. states and territories BUT NOT FOREIGN NATIONS." (Emphasis added)(Id. § 16911(10)) Declare that the State Defendants' continued Registry posting on their Sex Offender's Website violates S.O.R.A. [Sex Offender Registration Act], on the basis that Plaintiff does not reside at said posted address.
>
> Declare that S.O.R.A. Level Risk Classification does not apply nor did it apply to Plaintiff who was not a resident of the State of New York, but only a non-resident worker pursuant to *New York Correction Law* § 168-f(6).
>
> Declare Defendant Camacho's Level III Risk Classification Order null and void, as a matter of law, pursuant to *New York Correction Law* § 168-f(6).

---

[3] It is unclear why the first name of defendant Camacho is different in the amended complaint.

[4] While Plaintiff insists that Governor Cuomo was served, according to AAG Hartofilis, the person on whom Plaintiff made service does not work for the Governor. Plaintiff claims that this is inaccurate and that the individual on whom service was made does in fact work for Governor Cuomo. Plaintiff has not served the New York City Police Department.

3

> Declare that the State Defendants' continued Registry posting on their Sex
> Offender's Website is deceptive and therefore violates *New York Deception Law* § 349
> because it falsely and intentionally posts Plaintiff's residence to be 41-08-42 Street,
> Astoria, New York, a place Plaintiff had moved out of since about May 23rd, 2011, with
> prior notice given to the State Defendants and compliance with the State of New York
> S.O.R.A. procedures, the State of California *Penal Code* § 290 procedure and S.O.R.N.A.
> procedures.
>
> Injunctive relief enjoining State Defendants and/or non-party federal law
> enforcement entity(ies) from imposing any sanction and/or violation against Plaintiff for
> not updating his registration.
>
> Injunctive relief enjoining State Defendants and/or non-party federal law
> enforcement entity(ies) from imposing or taking any action with respect to Plaintiff's not
> updating his yearly registration with the State Defendants through the issuance of an
> arrest warrant or through any and all other means of apprehending, detaining, arresting
> and prosecuting Plaintiff.
>
> Injunctive relief enjoining State Defendants from continuing to post Plaintiff's
> demographics or information on their Sex Offender's Registration Website.
>
> Injunctive relief enjoining State Defendants from all other actions in furtherance
> of pursuing S.O.R.A. or S.O.R.N.A. registration violation charges, imposing sanctions, or
> taking any action with respect to State Defendants' demand for Plaintiff to update his
> registration with the State Defendants and/or any and all federal law enforcement
> entity(ies)
>
> Injunctive relief against attorneys/defendants Russo and Trakas and non-parties,
> including Mercury Manzano, aka Mecury Marilla, etc., from mentioning, discussing,
> annotating and/or documenting in any of their pleadings, motions, and/or legal papers
> filed through ECF/Pacer that Plaintiff had, has or continues to violate either the New
> York S.O.R.A. or S.O.R.N.A., as to any factor arising from alleged, assumed or claimed
> violation for not updating his said New York Registration.

(Docket Entry 52) (emphasis in original).

At a status conference on September 28, 2012, the Court converted Plaintiff's request for a temporary restraining order to a request for a preliminary injunction order and established a schedule for the parties to submit papers in support of and in opposition to Plaintiff's request. At the time of the conference, Plaintiff had only served the amended complaint on defendants Russo and Trakas and they were the only defendants to have appeared in the action and to participate in

the status conference. The motion for injunctive relief was to be fully submitted by October 12, 2012. The Court also established a scheduled for the submission of additional motion papers by defendants Russo and Trakas to move to dismiss Plaintiff's amended complaint.[5]

On or about October 4, 2012, Plaintiff requested and the Court granted, additional time to submit his papers in support of his motion for a preliminary injunction. (Docket Entries 59 and 60.) The State Defendants have since been served with the amended complaint, appeared in this matter and requested additional time to respond to Plaintiff's motion for injunctive relief and to dismiss Plaintiff's amended complaint. (Docket Entry 72.)

2. **Plaintiff's Request To Seek a Stay**

By letter dated October 11, 2012, Plaintiff wrote to the Court seeking to be allowed to "file an ex-parte application for a stay, ordering the State Defendants and [New York City Police Department Sex Offender Unit] to cease all and any actions regarding an arrest, apprehension, detention and/or otherwise warrant" until this Court rules on his preliminary injunction motion. (Docket Entry 62.) According to Plaintiff, he received a telephone call from Officer Weber who "threatened again that he was going to seek the assistance of the US Marshall Service for an arrest warrant." (*Id.*)

By letter dated October 18, 2012, Plaintiff requested that this Court "order a stay of any pending application for an arrest warrant and if such has already be [sic] secured to stay it's [sic] execution" if this Court were to grant the State Defendant's request for additional time to file their papers in opposition to Plaintiff's motion for a preliminary injunction. (Docket Entry 75.)

---

[5] Defendants Russo and Trakas had already sought and obtained leave to file a motion to dismiss Plaintiff's original complaint and sought to amend their motion to address the amended complaint.

Plaintiff's amended complaint is approximately 146 pages long and purportedly asserts fifteen claims for relief, only two of which, claims fourteen and fifteen, are asserted against the State Defendants.[6] In his fourteenth claim for relief, Plaintiff asserts that because of the calls from the State Defendants threatening that this matter will be referred to the United States Marshals because of his failure to change his address with the New York State Sex Offender Registry, despite the fact that he has provided them with the requisite information, he is "in imminent, real and immediate danger of unlawful apprehension, restrain, detention, arrest and imprisonment," (Am. Compl. ¶ 251), and is "entitled to a declaratory judgment that the May 2011 Level Classification judgment from the New York State Supreme Court Judge Fernando Camacho is unenforceable and non-recognizable pursuant to the Declaratory Judgment Act, **Title 28 United States Code** § 2201(a)." (*Id.* at ¶ 249) (emphasis in original). Plaintiff argues that because defendants Russo and Trakas, who both advised him on sex offender registry requirements and/or represented him in the classification proceeding before Judge Camacho, were deceitful and acted fraudulently, the judgment is unenforceable. (*Id.* at ¶ 252.) In addition, defendants Russo and Trakas allegedly provided ineffective assistance of counsel in violation of his Sixth Amendment rights. (*Id.* at ¶ 253.)

Plaintiff also alleges that Judge Camacho committed reversible error by failing to comply with the United States and New York State Constitutions by his:

> (1) failure to grant Plaintiff a continuance to seek and obtain exculpatory evidence to rebut the prosecution case; (2) stating on the record that Judge Camacho would only consider the "prosecution" evidence to make his determination; (3) refusing to order the prosecution to turn over its' [sic] entire evidentiary/investigatory file for Plaintiff's review and rebuttal; conducting the S.O.R.A. hearings and proceedings in an oppressive and criminal mode of operation rather affording [sic] Plaintiff equal protection of the law,

---

[6] Plaintiff's other 12 claims for relief are against defendants Russo and Trakas. Plaintiff concedes in his preliminary injunction motion that he is not seeking any injunctive relief against defendants Russo and Trakas. (Docket Entry 63 ¶ 55.)

otherwise afforded to civil litigants in other civil cases; issuing an [sic] Level Classification judgement [sic] without complying with the statutory mandate of provided reason, facts and detailed analysis on what basis and admissible evidence he reached his conclusion.

(*Id.* at ¶ 252). In addition to seeking a declaratory judgment that Judge Camacho's May 2010 classification order is "null and void, as a matter of fact and law or otherwise[,]" Plaintiff also seeks the following relief:

> Issue an Order commanding that State Defendant forthwith remove Plaintiff from their Registry Website.
>
> Issue and [sic] Order commanding the State Defendants, their agents, employees, contract, business associates and other law enforcement personnel, or anyone acting on their behalf, including and not limited to the United States Marshal Service that should they proceed to issue a warrant for the arrest of Plaintiff based on the misinformation that had been posted by the State Defendants themselves, and who refused to remove said information, shall first seek an Order from this Order [sic] Court to show cause why such an arrest warrant or any other type of law enforcement action adverse to Plaintiff, in whatever manner, shape or form, arising from said "registration update" issue, should be issued.
>
> Issue and [sic] Order that should the State Defendants, their agents, employees, contract, business associates and other law enforcement personnel, or anyone acting on their behalf, including and not limited to the United States Marshal Service, violate and/or seek any such aforementioned adverse Order from other than this Honourable [sic] Court, such violators will be held in Contempt, subject to arrest and prosecution.
>
> Issue an injunction prohibiting the State Defendants, their agents, employees, contract, business associates and other law enforcement personnel, or anyone acting on their behalf, including and not limited to the United States Marshal Service, from posting false and deceitful information on the Registry Website or any other electronic or otherwise document, internet, etc., of out-of-state/non-resident worker and/or those recipients of registration who no longer reside within the State of New York, and forthwith remove their posting on the State Defendants' Registry Website.
>
> Judgment pursuant to **Title** 28 **United States Code** § 2201 and **Federal Rules of Civil Procedure** Rule 57 declaring that State Defendants have committed the acts of deception and misrepresentation by willingly and knowingly post [sic] false information regarding the Plaintiff, as fully stated above and commanding them to forthwith cease and desist said practice and forthwith removing Plaintiff from their Registry Website.

(*Id.* at ¶ 256) (emphasis in original).

In his fifteenth claim for relief, Plaintiff claims that as a non-resident in New York, he was not required to register as a resident sex offender and his Fourteenth Amendment right to be "treated equally to those similarly situated . . . was violated" (*id.* at ¶ 260), as well as "his constitutionally protected rights pursuant to the 'Full [F]aith and [Cr]edit'" provision of the United States Constitution. (*Id.* at ¶ 262.) Plaintiff also challenges the actions of the State Defendants in continuing to publish false information about his residence and location on the registry website. (*Id.* at ¶ 278.) In addition to a judgment declaring that the State Defendants have "fail[ed] to develop a system in which non-resident workers with an out-of-State conviction . . . [that have] left the State of New York, can be removed from the New York Registry Website," Plaintiff appears to also seek a declaratory judgment that the State Defendants' actions violate several provisions of the United States Constitution, "constitute[] deception and fraud" and are prohibited. (*Id.* at ¶ 306.) Plaintiff further seeks an order directing the State Defendants to "cease and desist said practice" and remove him from the registry website. (*Id.*) In addition, Plaintiff seeks attorney's fees and costs on both claims. (*Id.* at ¶¶ 254, 306.)[7]

---

[7] Plaintiff's allegations in his memorandum in support of his motion for a preliminary injunction are basically the same as those set forth in the amended complaint. He argues that because his California State conviction was for a non-violent offense, by classifying Plaintiff as a Level III sex offender, the State Defendants have overruled the California trial court and have violated the Ninth and Fourteenth Amendments by refusing to give him the same equal protection pursuant to the Full Faith and Credit Clause of the United States Constitution. (Docket Entry 63 ¶¶ 5–8.) Plaintiff also claims that the continued posting is cruel and unusual punishment. Plaintiff asserts, as he did in the amended complaint, that he complied with the New York State registration law when he moved from New York to California and from California to outside the United States. (*Id.* at ¶¶ 46–47.) He also asserts that New York law does not require him as a non-resident worker to register in New York, or to be referred for a classification hearing. (*Id.* at ¶ 50.) Plaintiff further claims that the County Clerk prevented him from filing his Article 78 proceeding, which he attempted to file by registered mail. (*Id.* at ¶¶ 90–92.)

8

In sum, Plaintiff's two claims against the State Defendants challenge the determination by the State Defendants that he is required to register as a sex offender in New York; Defendant Camacho's determination that Plaintiff is a Level III sex offender; the publishing of his name and address on the registry website; and the telephone calls from the NYPD Sex Offender Unit, telling him that he has to update his registration in New York.

This Court may issue a temporary restraining order if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). To obtain a temporary restraining order, Plaintiff "must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks and citations omitted); *see also Litwin v. OceanFreight, Inc.*, No. 11-CV-7218, 2011 WL 5223022, at *4 (S.D.N.Y. Nov. 2, 2011) ("A temporary restraining order, like a preliminary injunction, 'is an extraordinary remedy never awarded as of right. . . .' Thus, a plaintiff seeking a temporary restraining order 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" (citations omitted)); *Ward v. Thomas*, 895 F. Supp. 401, 403 (D. Conn. 1995) (temporary restraining orders and preliminary injunctions require the same showing (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979))).

Plaintiff has not met his burden. First, Plaintiff cannot show irreparable harm. Plaintiff argues that he is likely to be arrested, apprehended or detained as a result of his failure to register

in New York. Such harm is speculative, at best. *Jefferson v. Rose*, No. 12-CV-1334, 2012 WL 1398743, at *4 (E.D.N.Y. Apr. 23, 2012) ("To satisfy the irreparable harm requirement, Plaintiff[ ] must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *Lentjes Bischoff GmbH v. Joy Envtl. Tech., Inc.*, 986 F. Supp. 183, 187 (S.D.N.Y. 1997) ("'[A] plaintiff's imaginative, worst case scenario flowing from the defendant's alleged wrong' does not adequately show irreparable injury." (citations omitted)). Plaintiff has not demonstrated that any arrest warrant has been issued for his arrest. Moreover, to the extent Plaintiff is seeking to enjoin the NYPD Sex Offender Unit, said defendant has not been served and this Court therefore has no jurisdiction to enjoin the actions of said entity. Fed. R. Civ. P. 65(d)(2) (An injunction is binding only upon "the parties [to the action], . . . the parties' officers, agents, servants, employees, and attorneys; and . . . other persons who are in active concert or participation" with the parties or their agents "who receive actual notice of the order by personal service or otherwise."); *Leblanc-Sternberg v. Fletcher*, 763 F. Supp. 1246, 1249 (S.D.N.Y. 1991) (Since "[a] party to be enjoined must be before the court[,]" plaintiff could not get an injunction because the proper defendants had not been served.).

Nor can Plaintiff demonstrate likelihood of success on the merits. As discussed above, Plaintiff, in effect, is challenging the determination of defendant Camacho that he was a Level III sex offender and the determination that he is required to registered with the New York sex offender registry. Plaintiff cannot maintain his actions here in this Court. *See Castiglione v. Papa*, 423 F. App'x 10, 13 (2d Cir. 2011) (summary order) (A plaintiff cannot reframe claims as

federal where they are essentially state law claims and the suit seeks to appeal a state court judgment); *Galtieri v. Kelly*, 441 F. Supp. 2d 447, 453 (E.D.N.Y. 2006) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005))). Plaintiff's remedy is to challenge defendant Camacho's decision in State Court. *See People v. Liden*, 19 N.Y.3d 271, 273 (2012) ("A determination by the Board of Examiners of Sex Offenders that a person who committed an offense in another state must register in New York is reviewable in a proceeding to determine the offender's risk level."). Thus, where, as here, Plaintiff cannot demonstrate irreparable harm or likelihood of success on the merits, he is not entitled to a temporary restraining order.

### 3. Plaintiff's Motion to Compel the State Defendants

By letter dated October 17, 2012, Plaintiff wrote to the Court seeking permission to file a motion to compel the State Defendants in this case to provide certain information to Plaintiff. Plaintiff has asked the State Defendants to:

a. State the number of all nonresident workers, who suffered an out-of-state registerable conviction, who are published or listed on your website.

b. State the number of all nonresident students, who suffered an out-of-state registerable conviction.

c. State the number of unregistered aliens, who suffered an out-of-state registerable conviction, and were deported but continue to be published on your website.

d. State the number of unregistered aliens, who suffered [a] New York State registerable conviction, and were deported but continue to be published on your website.

e. State the number of nonresident workers, who suffered an out-of-state registerable conviction, and who left the borders of the State of New York, and who were or are classified a Level III and continue to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address.

11

f.  State the number of nonresident students, who suffered an out-of-state registerable conviction, and who left the borders of the State of New York, and who were or are classified a Level III and continue to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address.

g.  State the number of nonresident workers, who suffered an out-of-state registerable conviction, and who left the borders of the State of New York, and who were or are classified a Level III failed to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address and have been extradited to the State of New York for such a failure to register or comply.

h.  State the number of nonresident students, who suffered an out-of-state registerable conviction, and who left the borders of the State of New York, and who were or are classified a Level III failed to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address and have been extradited to the State of New York for such a failure to register or comply.

i.  State the number of nonresident workers, who suffered an out-of-state registerable conviction, and who reside overseas or out of the Continent of the United States and its territories, and who were or are classified a Level III and continue to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address.

j.  State the number of nonresident students, who suffered an out-of-state registerable conviction, and who reside overseas or out of the Continent of the United States and its territories, and who were or are classified a Level III and continue to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address.

k.  State the number of nonresident workers, who suffered an out-of-state registerable conviction, and who reside overseas or out of the Continent of the United States and its territories, and who were or are classified a Level III and continue to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address.

l.  State the number of nonresident workers who suffered an out-of-state registerable conviction, and who left the borders of the State of New York, and live overseas and who were or are classified a Level III failed to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address and have been extradited to the State of New York for such a failure to register or comply.

    m. State the number of nonresident students who suffered an out-of-state registerable conviction, and who left the borders of the State of New York, and live overseas and who were or are classified a Level III failed to register with a particular jurisdiction within your communities every ninety days, on their anniversary or whenever they change their out of state resident address and have been extradited to the State of New York for such a failure to register or comply.

(Docket Entry 70.) Plaintiff believes this information is "relevant and material" to assisting this Court in making an "informed decision." (*Id.*).

Plaintiff's application to make a motion to compel the State Defendants to comply with his demands is denied. Under Federal Rule of Civil Procedure 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 23(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized under rules, by stipulation, or by court order." Courts have discretion to authorize discovery during the moratorium, for good cause shown, including where there is a pending motion for a preliminary injunction. *Pearson Educ., Inc. v. Doe*, No. 12-CV-4786, 2012 WL 4832816, at *3 (S.D.N.Y. Oct. 1, 2012) ("The Committee Note that accompanied the 1993 addition of Rule 26(d) suggested that relief would be appropriate in cases involving requests for a preliminary injunction or motions challenging personal jurisdiction. Some courts have also treated the question in terms similar to the criteria for a preliminary injunction[.]" (citations omitted)). However, as discussed above, Plaintiff has failed to show likelihood of success on the merits, and the State Defendants' motion to dismiss will likely be granted. *See, e.g., Mitra v. State Bank of India*, No. 03-CV-6331, 2005 WL 2143144, at *7 (S.D.N.Y. Sept. 6, 2005) (finding that the plaintiff had failed to show "good cause for commencing discovery immediately").

In addition, Plaintiff's requests are overly broad, unduly burdensome, and irrelevant to Plaintiff's claims in the amended complaint. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) (District courts should deny discovery requests when they

"create[] an inappropriate burden or hardship."); *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976, 2012 WL 1899222, at *4 (E.D.N.Y. May 24, 2012) (Federal Rule of Civil Procedure 26(b)(2)(C) requires district courts to limit discovery when requests are burdensome and overbroad to prevent discovery from becoming "a fishing expedition".); *see also EM Ltd. v. Republic of Argentina*, No. 11-CV-4065, 2012 WL 3553367, at *4 (2d Cir. Aug. 20, 2012) ("[T]he district court has broad discretion to limit discovery in a prudential and proportionate way."). The Court hereby issues a stay of all discovery pending the determination of the defendants' motions to dismiss the amended complaint. Plaintiff is directed to refrain from seeking any documents from the defendants until the motions are decided.

### 4. Plaintiff's Personal and Abusive Attack Upon the Attorney for the State Defendants

In a letter dated October 17, 2012 from Plaintiff to the New York State Attorney General Eric T. Schneiderman and others, Plaintiff, among other things, accuses Assistant Attorney General Maria Barous Hartofilis of being deceitful and fraudulent in her communication with the Court regarding service of the amended complaint on the Governor of New York, and her inability to answer the amended complaint on behalf of the NYPD as the Attorney General's Office does not represent the NYPD. Plaintiff accuses AAG Hartofilis of being "disingenuous" and of making "misrepresentations" including "deception and potential fraud" upon the Court and of "mislead[ing]" the Court by "omitting the undisputed fact that the Hon. Defendant Governor Cuomo was lawfully served . . . on September 29th, 2012." (Docket Entry 70 at 3.) Plaintiff also suggests that AAG Hartofilis's actions and "omissions interfere and obstruct the administration of justice and . . . impede" this Court from exercising jurisdiction over the Governor. (*Id.*) He further argues that "such unethical conduct potentially constitutes fraud

upon a third party (myself)" and this Court. (*Id.*) Plaintiff then proceeds to state that AAG Hartofilis has made "a deceitful and fraudulent statement" to this Court. (*Id.*)

Plaintiff is hereby warned that such personal attacks on AAG Hartofilis are inappropriate and will not be tolerated by this Court. Understandably, Plaintiff disagrees with the position taken by AAG Hartofilis. However, that is not a basis for Plaintiff to launch a personal attack. Plaintiff is directed to confine his communications in this matter to the facts of the case, not the individuals prosecuting the case, and to keep his opinions to himself. Neither the Court, nor anyone involved in this litigation, is interested in learning Plaintiff's personal thoughts.

Plaintiff is further warned that if he continues with such personal and abusive attacks, the Court will impose appropriate sanctions against Plaintiff. Although Plaintiff is *pro se*, he has represented to this Court that he has practiced in the legal field assisting attorneys for many years. As such, Plaintiff should be aware that it is inappropriate to personally attack an attorney admitted to this Court, simply because he disagrees with that attorney's position. Moreover, Plaintiff cites to the ABA Model Rules of Professional Conduct 8.4(c) (dealing with the integrity of the profession) and 3.1 (dealing with meritorious claims and contentions), as well as Rule 11 of the Federal Rules of Civil Procedure, in his letter to the Attorney General demanding documents. Thus, he is clearly aware of the responsibilities imposed on those who practice in the legal profession.

**Conclusion**

For the reasons set forth above, Plaintiff's request to compel the State Defendants to comply with his document request and his request to seek a stay of any arrest, apprehension,

detention or warrant are denied. AAG Maria Barous Hartofilis's request to order Plaintiff to cease his personal and abusive attacks is granted.

SO ORDERED:

/S/Judge Margo K. Brodie
_____
MARGO K. BRODIE
United States District Judge

Dated: October 19, 2012
　　　　Brooklyn, New York