UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

CARMEL SPITERI,

                        Plaintiff,                    12 CV 2780 (MKB)(RLM)

        -against-

JOHN LEO RUSSO, et al.,

                        Defendants.

-------------------------------------------------------------------------X

**MEMORANDUM OF LAW ON BEHALF OF STATE DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED
COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for State Defendants
120 Broadway - 24th Floor
New York, New York 10271-0332
(212) 416-6295

MARIA BAROUS HARTOFILIS
Assistant Attorney General
  of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

Preliminary Statement .................................................................................... 1

Statement of Facts ......................................................................................... 3

THE SEX OFFENDER REGISTRATION ACT ............................................... 5

A. Background ............................................................................................... 5

B. Out of State Offenders Relocating to New York ...................................... 7

C. Removal of Sex Offenders From Registry ............................................... 8

D. Duty to Register Change of Address ....................................................... 8

E. Legislative Intent and Purpose Through Amendments to SORA ............. 8

ARGUMENT
      Standard of Review for a 12(b) Motion to Dismiss the Complaint ................... 10

POINT I  -  THE COURT SHOULD DISMISS THE COMPLAINT UNDER
                THE ROOKER-FELDMAN DOCTRINE ............................................. 12

POINT II  -  THE CLAIMS ARE BARRED BY IMMUNITY ................................. 15

A. Eleventh Amendment Immunity ................................................................ 16

B. The Claims Against Judge Camacho Are Barred By Eleventh Amendment Immunity .......... 17

C. Claims against Individual Defendants Gov. Cuomo, Michelle Harrington and
    Michelle  Mulligan ................................................................................ 17

D. Absolute Judicial Immunity Precludes Action Against Judge Camacho ................ 18

E. Legislative Intent and Purpose Through Amendments to SORA ............... 19

POINT III  -  GOVERNOR CUOMO, MICHELLE HARRINGTON AND MICHELLE
              MULLIGAN ARE NOT PROPER PARTIES TO THIS ACTION ................ 20

A. Gov. Cuomo Is Not a Proper Party ......................................................... 20

i

B. Michelle Harrington and Michelle Mulligan Are Not Proper Parties.......................................22

C. Action for Injunctive and Declaratory Relief is Not Permissible Against
Governor Cuomo, Michelle Harrington and Michelle Mulligan.............................................22

POINT IV - PLAINTIFF IS NOT ENTITLED TO RELIEF FROM SORA'S
          REGISTRATION REQUIREMENTS AS A MATTER OF STATUTORY
          CONSTRUCTION .................................................................................................23

POINT V - PLAINTIFF FAILS TO STATE ANY CONSTITUTIONAL VIOLATIONS..........27

A. Plaintiff Fails to State an Equal Protection Claim...................................................................27

B. Full Faith and Credit ...............................................................................................................29

C. Plaintiff Fails to Allege Any Other Claims of a Constitutional Violation...............................31

POINT VI - PLAINTIFF HAS FAILED TO ESTABLISH ANY
          NEED FOR THE PRELIMINARY INJUNCTIVE
          RELIEF HE SEEKS ..............................................................................................31

A. Plaintiff Cannot Establish That He Will Suffer
Irreparable Harm in the Absence of Injunctive Relief ..........................................................32

B. Petitioner is Unlikely to Succeed on the Merits......................................................................33

C. Plaintiff Has Not Established Any Hardship
to Warrant Injunctive Relief....................................................................................................34

CONCLUSION ....................................................................................................................................34

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

Allen v. Mattingly,
    2011 WL 1261103 (E.D.N.Y. March 29, 2011) ................................................... 14

Antoine v. Byers & Anderson, Inc.,
    508 U.S. 429 (1991) ....................................................................................................... 18

Artway v. Attorney Gen.,
    81 F.3d 1235 (3d Cir.1996) ........................................................................................ 27

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .......................................................................................... 10, 11

Atlantic Coast Line R. Co. v. Brotherhood of Loc. Eng.,
    398 U.S. 281 (1970) ..................................................................................................... 14

Bell & Howell: Mamiya Co. v. Masel Supply Co.,
    719 F.2d 42 (2d Cir. 1983) ........................................................................................ 31

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ............................................................................................. 10, 11

Bradley v. Fisher,
    80 U.S. 335 (1871) ....................................................................................................... 18

Brass v. American Film Technologies,
    987 F.2d 142 (2d Cir. 1993) ..................................................................................... 11

Calcutti v. SBU, Inc.,
    224 F. Supp. 2d 691 (S.D.N.Y. 2002) ................................................................... 12

Cachillo v. Insmed, 638 F.3d 401, 405 (2d Cir. 1999) …… …............................…………. 31

Castiglione v. Papa,
    2010 WL 2044688 (N.D.N.Y. 2010) ............................................................ 11, 12, 26

D.C. Court of Appeals v. Feldman,
    460 U.S. 462 (1983) ............................................................................................. 13, 15

Davidson v. Scully,
    148 F.Supp.2d 249 (S.D.N.Y. 2001) ...................................................................... 22

Doe v. Cuomo,
   11-cv-2545, slip op (E.D.N.Y. September 28, 2012) ............................................ 20

Doe v. O'Donnell,
   86 A.D.3d 238 (3d Dept. 2011) ....................................................... 23, 24, 29, 30

Doe v. Pataki,
   120 F.3d 1263 (2d Cir. 1997) ........................................................................ 6

Doninger v. Niehoff, 527 F.3d 41, 47 (2008) .................................................... 31, 33

Dube v. State Univ. of New York,
   900 F.2d 587 (2d Cir. 1990) ...................................................................... 16

Ex Parte Young,
   209 U.S. 123 (1908) ............................................................................... 21

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
   544 U.S. 280 (2005) ........................................................................... 13, 14

Farid v. Smith,
   850 F.2d 917 (2d Cir. 1988) ...................................................................... 17

Fastag v. Kelly,
   2005 WL 1705529 (S.D.N.Y. July 19, 2005) ...................................................... 14

FCC v. Beach Commc'ns, Inc.,
   508 U.S. 307 (1993) .............................................................................. 27

Fields v. Soloff,
   920 F.2d 1114 (2d Cir. 1990) ..................................................................... 18

Flores v. S. Peru Copper Corp.,
   414 F.3d 233 (2d Cir. 2003) ...................................................................... 11

Galtieri v. Kelly
   441 F. Supp.2d 447 (E.D.N.Y. 2006) .............................................................. 12

Garcia v. Lewis,
   2005 U.S. Dist. LEXIS 11955 (S.D.N.Y. 2005) .................................................... 11

Giano v. Senkowski,
   54 F.3d 1050 (2d Cir. 1995) ...................................................................... 27

Gras v. Stevens,
   415 F. Supp. 1148 (S.D.N.Y. 1976) ............................................................ 20, 21

Gregory v. Daly,
    243 F.3d 687 (2d Cir. 2001) ...................................................................11

Hagy v. N.Y.S. Supreme Ct. Justice Joan B. Lobis,
    2010 WL 1789877 (S.D.N.Y. April 30, 2010) ....................................13

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009) .....................................................................11

Heller v. Doe by Doe,
    509 U.S. 312 (1993) ................................................................................27

Hoblock v. Albany County Bd. of Elections,
    422 F.3d 77 (2d Cir. 2005) ...............................................................13, 14

Huminski v. Corsones,
    396 F. 3d 53 (2d. Cir. 2004) ..................................................................18

Humphreys v. Nager,
    962 F.Supp. 347 (E.D.N.Y. 1997) (Id.) ................................................16

In re M.G. v. Travis,
    236 A.D.2d 163 - 166, 667 NYS2d 11 (1st Dept. 1997) .........................6

Jones v. Beame,
    45 NY2d 403 (1978) ..............................................................................24

Kamerling v. Massanari,
    295 F.3d 206 (2d Cir. 2002) ...................................................................31

Kasiem v. Patterson,
    2011 WL 723612 (S.D.N.Y) ..................................................................27

Kentucky v. Graham,
    473 U.S. 159 (1985) ...............................................................................16

Kimel v. Florida Bd. of Regents,
    528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)............................16

Klostermann v. Cuomo,
    61 NY2d 525 (1984)...............................................................................24

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991) ...................................................................12

Lance v. Dennis,
    546 U.S. 459, 126 S. Ct. 1198 (2006) ...................................................13

Magee v. Nassau County Medical Center,
   27 F. Supp.2d 154 (E.D.N.Y. 1998) ............................................................. 10

Mathis v. Clerk of the First Department, Appellate Division,
   631 F. Supp. 232 (S.D.N.Y. 1986) ............................................................... 16

Matter of Luna v. Dobson,
   97 N.Y.2d 178 (2001) ................................................................................... 28

Matter of Smith v. Devane,
   73 A.D.3d 179 (3d Dept. 2010) .................................................................... 29

Matter of Whitney,
   57 A.D.3d 1142 (3d Dept. 2008) .................................................................. 28

McKithen v. Brown,
   626 F.3d 143 (2d Cir. 2010) ......................................................................... 14

McKnight v. Middleton,
   699 F.Supp.2d 507 (E.D.N.Y. 2010) ....................................................... 16, 18

McNamara v. Kaye,
   2009 WL 3377914 (2d Cir. Oct. 9, 2009) .................................................... 13

Mireles v. Waco,
   502 U.S. 9 (1991) ......................................................................................... 18

Montero v. Travis,
   171 F.3d 757 (2d Cir. 1999) ......................................................................... 22

Morrison v. City of New York,
   591 F.3d 109 (2d Cir. 2010) ......................................................................... 14

N.Y. Pathological & X-Ray Labs., Inc. v. INS,
   523 F.2d 79 (2d Cir. 1975) ........................................................................... 31

New York State Inspection, Security and Law Enforcement Employees, Dist. Council 82,
   AFSCME, AFL-CIO v. Cuomo,
   64 NY2d 233 (1984) ..................................................................................... 24

Pennhurst State Sch. & Hosp. v. Halderman,
   465 U.S. 89 (1984) ................................................................................... 15, 16

People v. Arotin
   19 AD3d 845 (3d Dept 2005) ....................................................................... 29

People v. Liden,
    19 N.Y.3d 271 (2012)........................................................................................12

People v. Melzer,
    89 A.D.3d 1000 (2d Dept. 2011) ...................................................................24

People v. Rendace,
    58 A.D.3d 821 (2d Dep't 2009) .....................................................................12

People v. Wyatt,
    --- N.Y.S.2d ----, 2011 WL 4986479, 2011 N.Y. Slip Op. 07404 (2d Dept. October
    18, 2011)............................................................................................................7

Pierson v. Ray,
    386 U.S. 547 (1967) .......................................................................................18

Richards v. State of New York,
    597 F. Supp. 692 (E.D.N.Y. 1984), aff'd, 767 F.2d 908 (2d Cir. 1985), cert. denied,
    474 U.S. 1066, 106 S. Ct. 820 (1986) ...........................................................16

Rodriguez by Rodriguez v. DeBuono,
    175 F.3d 227 (2d Cir. 1999)..........................................................................31

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923) ...........................................................................12, 13, 14

Sassower v. Mangano,
    927 F.Supp. 113 (S.D.N.Y. 1996) ...........................................................13, 16

Scheuer v. Rhodes,
    416 U.S. 232, 94 S. Ct. 1683 (1974) ...............................................................9

Schnall v. Marine Midland Bank,
    225 F.3d 263 (2d Cir. 2000) ..........................................................................11

Selah v. Goord,
    2006 U.S. Dist. LEXIS 51051 (S.D.N.Y. 2006)............................................27

Selah v. Goord,
    2006 WL 2051402 (S.D.N.Y) ......................................................................27

Shipping Financial Servs. Corp. v. Drakos,
    140 F.3d 129 (2d Cir. 1998) ............................................................................9

Skinner v. Switzer,
    131 S.Ct. 1289, 2011 WL 767703 (March 7, 2011)......................................13

Smith v. Doe,
    538 U.S. 84 (2002) ....................................................................................... 27

Smith v. Goord,
    2007 U.S. Dist. LEXIS 55544 (W.D.N.Y. July 30, 2007) ...................................... 32

Sommer v. Cnty. of Suffolk,
    306 Fed. App 660 (2d Cir.2009).......................................................................... 15

Stump v. Sparkman,
    435 U.S. 349 (1978) ....................................................................................... 18

Town of West Hartford v. Operation Rescue,
    915 F.2d 92 (2d Cir. 1990) ............................................................................... 10

Tucker Anthony Realty Corp. v. Schlesinger,
    888 F.2d 969 (2d Cir. 1989) .............................................................................. 31

Tucker v. Outwater,
    118 F.3d 930 (2d Cir. 1997) .............................................................................. 18

United States ex rel Kreindler & Kreindler v. United Technologies Corp.,
    985 F.2d 1148 (2d Cir. 1993), cert. denied sub nom, Kreindler & Kreindler v. United
    Technologies Corp., 508 U.S. 973 (1993) ............................................................ 10

Wang v. Pataki,
    164 F.Supp.2d 406 (S.D.N.Y. 2001) ....................................................... 19, 20, 21

Ward v. Leclaire,
    2007 U.S. Dist. LEXIS (N.D.N.Y. May 24, 2007)................................................. 32

Warden v. Pataki,
    35 F.Supp.2d 354 (S.D.N.Y. 1999), aff'd, Chan v. Pataki, 201 F.3d 430 (2d Cir.
    1999), cert. denied, 531 U.S. 849, 121 S.Ct. 122 (2000) ....................................... 20

Wilson v. Wilson-Polson,
    2010 WL 3733935 (S.D.N.Y. Sept. 23, 2010) ..................................................... 15

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir.1993) .............................................................................. 16

Zion Tsabbar D.D.S. v. Madden,
    2007 WL 4300115 (E.D.N.Y. December 5, 2007)................................................. 13

Zuckerman v. Appellate Division, Second Department, Supreme Court of New York,
    421 F.2d 625 (2d Cir. 1970) ............................................................................. 16

**United States Constitutions**

Eleventh Amendment ................................................................................................passim

Fourteenth Amendment .......................................................................................................5

**Federal Statutes**

42 U.S.C. § 1983 .......................................................................................................1, 2, 18

28 U.S.C. § 2201(a) .........................................................................................................5

**Federal Rules of Civil Procedure ("F.R.C.P.")**

Rule 8.........................................................................................................................11

Rule 8(a)(2)...........................................................................................................10, 11, 30

Rule 12(b)(1) ......................................................................................3, 10, 12, 26, 32

Rule 12(b)(6) ......................................................................................3, 10, 12, 26, 32

**State Statutes**

N.Y. Corr. Law

§ 168 .............................................................................................................................28
§ 168-a ...........................................................................................................................6
§ 168-b ....................................................................................................................6-8, 21
§ 168-d ....................................................................................................................17, 18
§ 168-f........................................................................................................6-8, 20, 22, 23, 28
§ 168-f(4)................................................................................................6-8, 20, 22, 23, 28
§ 168-g ...........................................................................................................................6-8
§ 168-h ...................................................................................................................4, 21, 8
§ 168-h(1) .............................................................................................................4, 21, 8
§ 168-h(2) .................................................................................................................9
§ 168-j.........................................................................................................................4, 21
§ 168-k(2) .................................................................................................................4
§ 168-n......................................................................................................................12
§ 168-n(3) ...............................................................................................................17
§ 168-o(1) ..........................................................................................................12, 15
§ 168-o(2) .................................................................................................................9
§ 168-p .......................................................................................................................7
§ 168-q.......................................................................................................................6-8
§ 168-t.................................................................................................................20, 22

N.Y. Correction Law article 6-C ................................................................................5, 24

Laws 2006, ch 1, § 1 ..............................................................................................9

Laws 2002, ch 11, § 17 ...........................................................................................9

N.Y. Const. Art. IV, § 3 .........................................................................................19

N.Y. Exec. Law § 837 ............................................................................................21

N.Y. Constitution Part. VI, § 7 .........................................................................17-18

New York's "Megan's Law." ...................................................................................6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CARMEL SPITERI ,

                    Plaintiff,                                    12 CV 2780 (MKB)(RLM)

          -against-

JOHN LEO RUSSO, et al.,

                    Defendants.
------------------------------------------------------------------------X

### MEMORANDUM OF LAW ON BEHALF OF  STATE DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

#### Preliminary Statement

Pro Se plaintiff Carmel Spiteri, a convicted and registered Level Three sex offender, brings this action against multiple defendants, including Governor of the State of New York Andrew Cuomo, Honorable Fernando M. Camacho of the Supreme Court, Queens County (Judge Camacho), Michelle Harrington, Chairperson of the New York State Board of Examiners of Sex Offenders (Board)[1] and Michelle Mulligan, Director of the New York State Sex Offender Registry ("Registry")[2], (collectively "State Defendants") pursuant to 42 U.S.C. § 1983 alleging (1) that the May 2011 Sex Offender Risk Level Classification by Judge Camacho is unenforceable (Fourteenth Claim) and (2) that as a non-resident in New York, plaintiff was not required to register as a sex offender and that he should have been removed from New York's registry when he left the State of New York (Fifteenth Claim). See  Amended Complaint at ¶¶ 249, 259. Plaintiff seeks a declaratory judgment that Judge Camacho's May 2010 risk level

---

[1]   Plaintiff named the incorrect party.  Michelle Harrington, not Michael Green, is the Commissioner of the New York State Board of Examiners of Sex Offenders.

[2]  Michelle Mulligan is the Director of the New York State Sex Offender Registry, not the entity named in the amended complaint.

classification is null and void and an order commanding the state defendants to remove plaintiff from New York's Registry. Plaintiff also seeks attorney's fees and costs. Id. at ¶¶ 249, 306. [3] [4]

In this action, plaintiff is challenging a determination made by a New York State Supreme Court (classifying him as a Level Three sex offender) which he did not appeal. Rather than appeal, plaintiff seeks to have this Court overturn the state court through the Declaratory Judgment Act and 28 U.S.C. § 1983. Plaintiff is cloaking and attempt to appeal a state court decision under the guise of a Section 1983 claim. Plaintiff's attempt to obtain relief through his federal claims fails because he is barred by the Rooker- Feldman doctrine and the principles of comity and federalism. While it is not clear what precise theory plaintiff is asserting, it is clear and certain that this forum is not appropriate for resolution of his claims.

In addition, since plaintiff's claims against the State Defendants are barred by the Eleventh Amendment to the United States Constitution and absolute judicial immunity, the complaint must be dismissed against them in its entirety. Further, plaintiff has failed to state a claim against Governor Cuomo, Michelle Harrington and Michelle Mulligan since they are not proper parties to this action and are not personally involved in any constitutional violations. The State Defendants also have no power or authority to enforce any injunctive or declaratory relief plaintiff seeks here.

Therefore, this memorandum of law is submitted on behalf of the State Defendants in support of their motion to dismiss the amended complaint in its entirety, pursuant to

---

[3]   Plaintiff is also seeking damages and declaratory and injunctive relief in this action against two attorneys, John Leo Russo and Arthur George Trakas, who are not represented by this office.

[4]   Because the precise facts and legal claims asserted by plaintiff in the Amended Complaint are difficult to discern, the State Defendants rely on the Court's October 19, 2012 Memorandum and Order for a complete summary of the allegations raised in the amended complaint.

Fed.R.Civ.P. 12(b)(1) and (6), on the grounds that (1) plaintiff's claims are barred by the <u>Rooker-Feldman</u> doctrine; (2) plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution and Absolute Judicial Immunity; (3) state defendants are not proper parties in to this action; (4) injunctive and declaratory relief is not permissible against the state defendants; (5) plaintiff is not entitled to relief from SORA's Registration requirements as a matter of statutory construction; (6) plaintiff has failed to state any claims of Constitutional violations. The memorandum of law is also submitted in opposition to plaintiff's motion for a preliminary injunction.

## **Statement of Facts**

Plaintiff is a convicted and registered sex offender from California. <u>See</u> Amended Complaint at ¶ 44.  In May 1998, plaintiff pled guilty, in the State of California, to three felony counts of unlawful sex acts on a minor and was sentenced to sixteen months in prison and three years probation. Plaintiff specifically plead guilty to oral copulation, a lewd act and sodomy. <u>See</u> Decision of Court of Appeal of the State of California, Second Appellate District, annexed as Exhibit A to Declaration of Maria Barous Hartofilis ("Hartofilis Decl.").[5] Based on his conviction of these sex offenses, plaintiff was required to register as a sex offender in California. <u>See</u> California Registration Form, annexed as Exhibit B to Hartofilis Decl.  Pursuant to California law, plaintiff's responsibility to register as a sex offender in California is a lifetime requirement. <u>Id.</u>  Although this appears to be plaintiff's only conviction,

REDACTED                                                                  <u>See</u>

---

[5]   The declaration of Maria B. Hartofilis, Esq., sworn to on November 30, 2012, a part of the State Defendants' motion to dismiss the complaint and opposition to plaintiff's motion for a preliminary injunction, is referred to as the "Hartofilis Decl." and has as exhibits, documents pertaining to plaintiff's underlying California and New York state court proceedings as well as plaintiff's New York State sex offender registration, annexed thereto.

3

Board's Case Summary, filed under seal, pursuant to Court order. Plaintiff was also

REDACTED                              <u>Id</u>.

In November 2009, plaintiff moved from California to New York. <u>See</u> Amended Complaint at ¶ 52. Despite plaintiff's claim of coming to New York as a "non-resident" worker, plaintiff clearly relocated to New York and established a permanent home in New York. <u>See</u> Plaintiff's December 22, 2009 Correspondences annexed as Exhibit D to Hartofilis Decl. Plaintiff also notified the New York State Division of Criminal Justice Services of his relocation to New York and sought to comply with New York's sex offender registration requirements. <u>Id</u>. He also advised the California authorities of his relocation to New York and his intention to establish a permanent residence in this State. <u>Id.</u>

On June 1, 2010, plaintiff was notified by the Board, that based upon his establishing residence in New York State, plaintiff was required to register and be risk assessed as a sex offender in New York. <u>See</u> Amended Complaint at ¶¶ 62, 285 ; <u>see</u> <u>also</u> June 1, 2010 Board Notice to Plaintiff annexed as Exhibit C to Hartofilis Decl. On May 25, 2011, plaintiff was classified as a Level Three Sex Offender after a SORA hearing before Judge Camacho of the Supreme Court of Queens County. <u>Id</u>. Plaintiff alleges that he did not appear at the hearing. Amended Complaint at ¶¶ 74 - 77. Plaintiff also alleges that he did not file a Notice of Appeal, Motion for Reconsideration, or an Article 78 Petition with respect to Judge Camacho's risk level determination, within the appropriate time period. <u>Id</u>. at ¶ 82.

Plaintiff claims that at some point in June 2012, he moved to Malta, his birth country. <u>Id</u>. at ¶¶ 11, 292, 294. SORA does not provide for removal from the Registry because of a move out of the state. Accordingly, once a sex offender provides the Registry with his current address, as the statute requires him to do, the Registry will be updated to reflect the change of address. <u>See</u>

4

§§168-f(4), 168-h, 168-j.  To date, plaintiff has not provided the Registry with his address in Malta, in violation of SORA.

Plaintiff commenced this action seeking a declaratory judgment that the May 2011 sex offender risk level classification judgment is unenforceable and non-recognizable pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  Id. ¶ 249. Plaintiff further claims that as a non-resident in New York, he was not obligated to register as a resident sex offender and his Fourteenth Amendment right to be treated equally to those similarly situated was violated as was his constitutional right pursuant to the "Full Faith and Credit" clause of the United States Constitution. Id. ¶ 262. In addition, plaintiff seeks a judgment declaring that the defendants have failed to develop a system in which non-residents with an out-of-state conviction that have left New York can be removed from the registry website. Id., ¶ 306. Plaintiff also seeks an order directing the defendants to remove him from the registry website. Id., ¶ 306. Finally, plaintiff seeks attorney's fees and costs on all claims. Id.

## THE SEX OFFENDER REGISTRATION ACT

**A.     Background**

On July 25, 1995, the New York Legislature enacted SORA, codified as amended at Correction Law article 6-C, to protect the public from the risk of recidivism by convicted sex offenders.   Act of July 25, 1995, ch. 192, 1995 N.Y. Laws 2870.   SORA states that "[r]egistration [of sex offenders] will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly," and "will allow [law enforcement] to alert the public when necessary for the continued protection of the community." Id. § 1, 1995 N.Y. Laws at 2870. The legislation came on the heels of several brutal attacks on children.  NYS Senate Memorandum in Support,

5

pp. 2,3, S.11-B/A.1059-C, Ch. 192, L. 1995.   In response to findings that sex offenders demonstrate a high rate of recidivism, thereby making knowledge of their whereabouts necessary to both protect future victims and identify potential suspects to law enforcement when investigating sex crimes, a detailed statutory scheme was developed to provide for the classification of sex offenders according to their risk of reoffending and the dangerousness posed should they reoffend, and registration requirements specifically aimed at monitoring each class of offender.  The bill jacket relating of the introduction of SORA in the New York Assembly and Senate in 1996, includes the New York State Senate Introducer's Memorandum in Support of SORA, which states in part:

> Protecting the public, especially children, from sex offenders is a primary governmental interest and the registration of convicted sex offenders reentering the community is a control that helps protect individuals from victimization. NYS Senate Memorandum in Support, p. 6, S.11-B/A.1059-C, Ch. 192, L. 1995.

SORA is commonly referred to as New York's "Megan's Law." In re M.G. v. Travis, 236 A.D.2d 163, 165 - 166, 667 NYS2d 11, 13 (1st Dept. 1997).

SORA took effect on January 21, 1996.  Id. § 3, 1995 N.Y. Laws at 2879.  The statute applies to individuals convicted of enumerated "sex offenses" on or after its effective date, and also applies to persons who were incarcerated or on parole or probation for a sex offense as of the effective date.  N.Y. Corr. Law §§ 168-a, 168-f, 168-g; Doe v. Pataki, 120 F.3d 1263, 1266 (2d Cir. 1997).  SORA requires such sex offenders to register with DCJS and provides for the dissemination of certain information about registered sex offenders to law-enforcement and other governmental agencies, as well as to the public, under specified circumstances.  See N.Y. Corr. Law §§ 168-b, 168-f, 168-g, 168-l, 168-p, 168-q.

6

SORA establishes three risk-level classifications to reflect the sex offender's risk of a repeat offense and dangerousness to the community: Level One (low risk); Level Two (moderate risk); and Level Three (high risk). Id. § 168-l(6). The sex offender's risk-level classification determines the length of time that the offender must register with DCJS and the type of information that can be disseminated about him to law-enforcement agencies and the public under the Act's notification provisions. Id.

The applicable periods of registration are (1) twenty years for a Level One offender; (2) life, with a possibility of relief after thirty years, for a Level Two offender; and (3) life, with no possibility of relief, for a Level Three offender. Id. § 168-h.[6] In addition to the risk level, a sex offender may be designated a "sexually violent offender," "sexual predator," or "predicate sex offender," each of which requires lifetime registration regardless of risk level assigned. Id. § 168-h(2); see also Id. § 168-a (defining these terms).

B.     **Out of State Offenders Relocating to New York**

The Legislature included provisions for out of state offenders relocating to New York (Id. § 168-k) and for notifying other states when New York offenders move to the other state's jurisdiction (Id. § 168-c(4)). Pursuant to Correction Law § 168-a(2)(d)(ii), a "sex offender" required to register in New York includes a person convicted of "a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred." Id at § 168-a(2)(d)(ii). Therefore, sex offenders movement into and out of New York are tracked.

---

[6] Any Level Two or Three sex offender may petition the sentencing court as often as annually for a modification of his or her risk level in accordance with N.Y. Corr. Law § 168-o(2). This relief is not available to a risk level one sex offender. See People v. Wyatt, --- N.Y.S.2d ----, 2011 WL 4986479 at *8, 2011 N.Y. Slip Op. 07404 (2d Dept. October 18, 2011)

### C.   Removal of Sex Offenders From Registry

The Legislature has spoken to the issue of removal of sex offenders from the Registry and has provided only three events that would mandate removal: 1) a pardon from the Governor; 2) appellate reversal of the sex offense conviction; or 3) a court order granting a Petition for Relief for a Level Two offender after being on the registry for thirty years. Id. §§ 168-f(5), 168-o(1). Relocation to another state is not a triggering event that results in removal from the Registry.

### D.   Duty to Register Change of Address

SORA provides that a sex offender has the duty to " register with the division no later than ten calendar days after any change of address, internet accounts with internet access providers belonging to such offender, internet identifiers that such offender uses or his or her status of enrollment, attendance, employment or residence at any institution of higher education. . ." Id. at § 168-f(4). Importantly, neither Section 168-f or 168-h limit the applicability of SORA to only the duration of a sex offender's domicile in the state.  Instead, the "duration of registration and verification" is explicitly defined in Section 168-h, and is referred to in Section 168-f in terms of an offender's duty to register and verify.  SORA does not permit a registered offender who relocates his domicile out of state to be relieved from the registration/verification requirements.

### E.   Legislative Intent and Purpose Through Amendments to SORA

Since its inception, SORA has been amended several times in response to societal concerns of safety and to provide for better monitoring of sex offenders. As enacted, SORA permitted "[a]ny sex offender" to petition the court to be relieved from the registration requirements.  N.Y. Corr. L. §168-o (1995).  However, in  2000, the Legislature amended

8

Section 168-o and limited the offenders who may petition for relief from the duty to register to those who had been on the Registry for at least ten years – which was, at the time, the duration of registration for level one offenders.  The legislature also amended the Section to permit "[a]ny sex offender" to petition the court to modify his classification level and duration of registration. Laws 1999, ch 453.

In 2002, the Legislature amended Section 168-k - registration for change of address from another state. By amending the statute, the Legislature established a procedure for determining the classification level of offenders who establish domicile in New York State.  This procedure specifically removed a determination of the out-of-state offender's duration of registration by the court, and specifically linked the duration to the classification level assigned to that offender. Laws 2002, ch 11, §17.

In 2006, the Legislature increased the length of registration for Level One offenders from ten to twenty years, N.Y. Corr. L. §168-h(1), and required Level Two offenders to register for thirty years before they could petition the court for relief from registration. N.Y Corr. L. § 168-o(1).   The stated  legislative intent for these increases was that "the length of required registration terms under the Sex Offender Registration Act should be increased to enhance public safety and provide better tracing and monitoring of sex offenders".  Laws 2006, ch 1, § 1. Additionally, Section 168-o was amended to remove Level Three offenders, sexual predators, sexually violent offenders and predicate sex offenders from the offenders able to seek relief from the duty to register, and required Level Two offenders to register for at least thirty years before petitioning the court for relief from registering.  Laws 2006, ch 1, § 1.

## **ARGUMENT**

### **Standard of Review for a 12(b) Motion to Dismiss the Complaint**

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. Shipping Financial Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)(citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974). A Rule 12(b)(1) motion may be appropriate when a plaintiff's federal claim is not even minimally plausible. See Town of West Hartford v. Operation Rescue, 915 F.2d 92 at 92-99 (2d Cir. 1990). In most cases, the court should consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. See United States ex rel Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993), cert. denied sub nom, Kreindler & Kreindler v. United Technologies Corp., 508 U.S. 973 (1993). Thus, a court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Magee v. Nassau County Medical Center, 27 F. Supp.2d 154, 158 (E.D.N.Y. 1998).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations omitted). "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged -- but it has not 'show[n] -- that the pleader is entitled to relief.'" Id. at 1950 (quoting F.R.C.P. 8(a)(2)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 1949 (quoting F.R.C.P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to assumption of truth." Id. at 1950; see also Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).

The Court is not limited to the four corners of the complaint, but may consider outside documents which are integral to it regardless of whether attached to the complaint, so long as the pleader has notice of them or refers to them. See Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). The court may consider evidence beyond the pleading to resolve disputed issues of fact regarding jurisdiction. See Castiglione v. Papa, 2010 WL 2044688 (N.D.N.Y. 2010) citing Flores v. S. Peru Copper Corp., 414 F.3d 233, 255 n.30 (2d Cir. 2003). "[W]hile courts generally do not consider matters

11

outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion. The records of state administrative proceedings may be considered." Garcia v. Lewis, 2005 U.S. Dist. LEXIS 11955, *10 (S.D.N.Y. 2005). In addition, a Court may consider "matters of which judicial notice may be taken." Brass v. American Film Technologies, 987 F.2d 142, 150 (2d Cir. 1993). A district court may also take judicial notice of public records. Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991). When ruling on a Fed. R. Civ. P. 12(b)(6) motion, a district court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint. Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002).

## POINT I

## THE COURT SHOULD DISMISS THE COMPLAINT UNDER THE ROOKER-FELDMAN DOCTRINE

The essence of this lawsuit is an appeal of the Queens County Supreme Court's May 2011 judgment, which determined that plaintiff was a Level Three sex offender. See Exhibit C to Hartofilis Decl. However, only the Untied States Supreme Court may hear appeals from state-court judgments under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); see also Castiglione v. Papa, 2010 WL 2044688, *6; Galtieri v. Kelly 441 F. Supp.2d  447, 453 (E.D.N.Y. 2006). Accordingly, this action should be dismissed, with prejudice, for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12 (b)(1), since plaintiff cannot maintain his action in this Court. See October 19, 2012 Memorandum and Order of this Court, Docket No. 79.

The proper avenue for challenging Judge Camacho's risk level determination is an appeal to the appellate courts of the State of New York. See Correction Law §168-n(3). Similarly, to the extent plaintiff is challenging the Board's recommendation, plaintiff's only avenue for relief is an Article 78 proceeding or raising it during his risk level hearing. See People v. Rendace, 58 A.D.3d 821 (2d Dep't 2009) ("A proceeding pursuant to CPLR Article 78 is the only proper vehicle by which to raise a challenge to the Board's determination under Correction Law § 168-k(2) that a person convicted of an offense out of New York State is required to register as a sex offender); see also, People v. Liden, 19 N.Y.3d 271, 273 (2012)("A determination by the Board of Examiners of Sex Offenders that a person who committed an offense in another state must register in New York is reviewable in a proceeding to determine the offender's risk level.").

Under Rooker-Feldman, the federal district courts lack subject matter jurisdiction if the exercise of jurisdiction would result in the reversal or modification of state court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Rooker-Feldman doctrine has been consistently applied to foreclose review of judicial determinations in state judicial proceedings. See D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482-83 (1983); McNamara v. Kaye, 2009 WL 3377914 at *1 (2d Cir. Oct. 9, 2009); Hagy v. N.Y.S. Supreme Ct. Justice Joan B. Lobis, 2010 WL 1789877 at *2 (S.D.N.Y. April 30, 2010); Zion Tsabbar D.D.S. v. Madden, 2007 WL 4300115 at *2 (E.D.N.Y. December 5, 2007). Rooker-Feldman precludes cases, as here, "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments". Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). See also Skinner v. Switzer, 131 S.Ct. 1289, 2011 WL 767703 * 7 (March 7, 2011); Lance v. Dennis, 546 U.S. 459, 463, 126 S. Ct. 1198, 1201

13

(2006); <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005) (Where a federal plaintiff lost in state court, complains of injury from that loss and invites the federal court to review and reject the state court's judgments, such a claim is precluded under <u>Rooker-Feldman</u>).

An aggrieved state court litigant must pursue his claims "directly in the state appellate courts and ultimately to the United States Supreme Court," and cannot use the federal district court as a means of appeal. <u>Sassower v. Mangano</u>, 927 F.Supp. 113, 119 (S.D.N.Y. 1996). This is because "[t]he jurisdiction possessed by the District Court is strictly original" and the district court lacks subject matter jurisdiction to act as an appellate court to review the decisions of a state court. <u>Rooker</u>, 263 U.S. at 416. The only permissible appellate review open to plaintiff is within the state appellate system and to the United States Supreme Court on petition for a writ of certiorari. <u>See</u> <u>Atlantic Coast Line R. Co. v.  Brotherhood of Loc. Eng.</u>, 398 U.S. 281, 296 (1970) ("Lower federal courts possess no power whatever to sit in direct review of state court decisions"). Nor may a litigant avoid the application of the <u>Rooker-Feldman</u> doctrine by casting his federal complaint as a civil rights action where it actually seeks to reverse a state court judgment. <u>See</u> <u>Fastag v. Kelly</u>, 2005 WL 1705529 * 3 (S.D.N.Y. July 19, 2005).

Four elements must be considered: (1) the plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must "invite district court review and rejection of that judgment"; and (4) the state-court judgment must have been "rendered before the district court proceedings commenced". <u>Hoblock v. Albany County Bd. of Elections</u>, <u>supra</u>, 422 F.3d at 85; <u>see</u> <u>McKithen v. Brown</u>, 626 F.3d 143, 154-55 (2d Cir. 2010); <u>Morrison v. City of New York</u>, 591 F.3d 109, 112 (2d Cir. 2010); <u>Allen v. Mattingly</u>, 2011 WL 1261103 * 8 (E.D.N.Y. March 29, 2011). The courts note that the "[t]he first and

14

fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." Id.

All four of theses circumstances are present here.  It is indisputable that plaintiff was classified as a Level Three Sex Offender by Judge Camacho and is a "state-court loser". See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., supra, 544 U.S. at 283. Application of the Rooker-Feldman doctrine is appropriate here because there is a final state court decision classifying plaintiff a Level III sex offender which plaintiff claims has caused him injury and which plaintiff is asking this Court to review and reject.  Moreover, the State court determination was rendered before the district court action was commenced and plaintiff now asks this Court to either vacate, annul, or reject a state court determination which is not a function within the purview of the district court. See D.C. Court of Appeals v. Feldman, 460 U.S. at 486-487 (1983) (where plaintiff had unsuccessfully contested bar committee's refusal to waive certain admission requirements in a petition to the District's Court of Appeals, his federal "as applied" claims relating to admissions requirements were barred).  Accordingly, since plaintiff's complaint is barred by the Rooker-Feldman doctrine, this action should be dismissed  in its entirety, with prejudice, for lack of subject matter jurisdiction. As this Court previously held, "Plaintiff's remedy is to challenge defendant Camacho's decision in State Court." See Court's October 19, 2012 Memorandum and Order, Docket No. 79; see also Correction Law § 168-n(3).

## POINT II

## THE CLAIMS ARE BARRED BY IMMUNITY

Plaintiff brings this action against Governor Cuomo, Justice Camacho, Michelle Harrington and Michelle Mulligan, seeking removal from New York's sex Offender registry because he claims he has moved out of New York State.  However, plaintiff's claims for

15

injunctive and declaratory relief, against the state defendants in their official capacities, should be dismissed because they are barred by the Eleventh Amendment to the United States Constitution and Absolute Judicial Immunity.

**A.     Eleventh Amendment Immunity**

The Eleventh Amendment bars suit in federal court against a state or its agencies or officials absent its consent to such a suit or an express statutory waiver of immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984); Wilson v. Wilson-Polson, 2010 WL 3733935 (S.D.N.Y. Sept. 23, 2010)(citing Sommer v. Cnty. of Suffolk, 306 Fed. App'x 660, 662 (2d Cir.2009) (unpublished opinion) ("[Plaintiff's] suit against [a judge] in his official capacity is barred by the Eleventh Amendment." [citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir.1993)]). Plaintiff's claims against Justice Camacho are based on acts taken in his official capacity, and are barred by the Eleventh Amendment absent the State's unequivocal waiver of its sovereign immunity or an unequivocal abrogation of that immunity by Congress. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (a claim for damages against a state or state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); Pennhurst , supra at 100 (states, their agencies and departments of the state are entitled to assert the state's Eleventh Amendment immunity). The State of New York has not consented to suit in federal court for § 1983 claims of the type alleged and it is well-settled that the State of New York and its agencies and officers are protected from such suits by immunity under the Eleventh Amendment, regardless of whether the relief sought from them is legal or equitable in nature. See Dube v. State Univ. of New York, 900 F.2d 587, 594-95 (2d Cir. 1990); McKnight v. Middleton, 699 F.Supp.2d 507, 521 (E.D.N.Y. 2010).

**B.      The Claims Against Judge Camacho Are Barred By Eleventh Amendment Immunity**

More specifically, the Eleventh Amendment bars federal actions against the state courts. See Richards v. State of New York, 597 F. Supp. 692, 693 (E.D.N.Y. 1984), aff'd, 767 F.2d 908 (2d Cir. 1985), cert. denied, 474 U.S. 1066, 106 S. Ct. 820 (1986) (a state court is immune from suit under the Eleventh Amendment); Zuckerman v. Appellate Division, Second Department, Supreme Court of New York, 421 F.2d 625, 626 (2d Cir. 1970)(courts are the judicial arm of "the State of New York"); Humphreys v. Nager, 962 F.Supp. 347, 354 (E.D.N.Y. 1997) (Id.); Sassower v. Mangano, 927 F. Supp. 113, 120 (E.D.N.Y. 1996) (suit against presiding and associate justices of the Supreme Court of New York, Appellate Division, Second Department barred); Mathis v. Clerk of the First Department, Appellate Division, 631 F. Supp. 232, 234 (S.D.N.Y. 1986) ("a state court ... is not amenable to suit under 42 U.S.C. § 1983 ... on the grounds that it is immune from suit by virtue of the Eleventh Amendment ...").

Justice Camacho is immune from suit in this action by means of the Eleventh Amendment. Justice Camacho is essentially sued here for actions he has taken in his official capacity, as an employee and member of the Supreme Court, and presiding over plaintiff's underlying SORA risk level hearing raised before this Court. See N.Y. Constitution, art. VI, § 7; see also N.Y. Corr. Law §§ 168-d, 168-n.   Accordingly, the Eleventh Amendment bars this action against Justice Camacho.

**C.      Claims against Individual Defendants Gov. Cuomo, Michelle Harrington and Michelle Mulligan**

Likewise, plaintiff's claims against the individual defendants in their official capacity are also barred by the Eleventh Amendment.   It is well established that Eleventh Amendment immunity also extends to damage actions against state officials sued in their official capacities if

17

the state is the real party in interest. See Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988). Here, the claim is against the state law that regulates sex offenders, specifically sex offenders who re-locate out of New York,  a claim against the state, not any individual. Thus, this Court lacks subject matter jurisdiction to entertain this suit for damages against the individual defendants in their official capacity. Plaintiff has only sued the State Defendants in their official capacity. Accordingly, all claims for damages against Governor Cuomo, Michelle Harrington and Michelle Mulligan in their official capacities should also be dismissed.

**D.      Absolute Judicial Immunity Precludes Action Against Judge Camacho**

Under the doctrine of absolute judicial immunity, a judge is not monetarily liable for acts done in the exercise of a judicial function.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in Bradley v. Fisher, 80 U.S. 335 (1871)." Pierson v. Ray, 386 U.S. 547, 553-554  (1967); see also Mireles v. Waco, 502 U.S. 9, 9-10, (1991); Stump v. Sparkman, 435 U.S. 349, 355-64 (1978); Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1991);  Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir. 1997).  The only prerequisites to judicial immunity are that the judge not act in the clear absence of all jurisdiction and that he be performing a judicial act or one which is judicial in nature. Mireles v. Waco, 509 U.S. at 11-12; Stump v. Sparkman, 435 U.S. at 359, 362; Pierson v. Ray, 386 U.S. at 553-54;  McKnight v. Middleton , supra, 699 F.Supp.2d at 523-25. Moreover, "the doctrine of absolute immunity now extends to cover suits against judges where the plaintiff seeks not only monetary relief, but injunctive relief as well, unless preceded by a declaration, or by a showing that such declaratory relief is unavailable." MacPherson v. Town of Southampton, 664 F.Supp.2d 203, 211 (E.D.N.Y. 2009).

18

The prerequisites for immunity are met in this case.  First, as a Justice of the Supreme Court, a part of the State Unified Court System, Justice Camacho has the constitutional and statutory jurisdiction to preside over the underlying Supreme Court SORA risk level hearing. See New York State Constitution, art. VI, § 7; see also N.Y. Corr. Law Sec. §§ 168-d., 168-n Second, any alleged actions taken by a Supreme Court judge, including any actions or rulings made in the underlying Supreme Court SORA hearing, qualify as judicial acts to which immunity attaches.  Even if the actions taken by any Supreme judge are later ruled to be improper, erroneous or incorrect on appeal, monetary liability will not lie. See  Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990).

**E.     Judge Camacho is Immune From Injunctive Relief Claim**

Furthermore, injunctive relief against a judge is unavailable. Pursuant to the Federal Court Improvement Act of 1996, which amended 42 U.S.C. § 1983, "in any action brought against a judicial office for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." See  42 U.S.C. § 1983; see also Huminski v. Corsones, 396 F. 3d 53, 74 (2d. Cir. 2004) (An injunction against a judicial officer is prohibited by § 1983 absent a showing that a prior declaratory judgment has been entered against the officer in question and the judicial officer has violated that declaration.) Plaintiff has not plead that Justice Camacho has violated any declaratory decree, thus, injunctive relief against him is barred.  Clearly, the actions taken by Justice Camacho were proper based on plaintiff's California conviction and criminal history. See Board's Case Summary  submitted for in camera review.  Accordingly, Justice Camacho is immune from any claim by the plaintiff for monetary damages and injunctive relief.

## POINT III

## GOVERNOR CUOMO, MICHELLE HARRINGTON AND MICHELLE MULLIGAN ARE NOT PROPER PARTIES TO THIS ACTION

**A.     Governor Cuomo Is Not a Proper Party**

This action must be dismissed as to Gov. Cuomo because plaintiff has failed to show that the Governor has any connection with the implementation and enforcement of SORA. Although the New York State Constitution provides that the Governor "'shall take care that the laws are faithfully executed.' N.Y. Const. Art. IV, § 3. [i]t does not follow, however, that the Governor is a necessary or proper party to every suit raising a challenge to the constitutionality of state statute.  On the contrary, where the legislative enactment provides that entities other than the executive branch of the state are responsible for implementation of the statute no claim against the Governor lies." Wang v. Pataki, 164 F.Supp.2d 406, 410 (S.D.N.Y. 2001) (Court held Governor Pataki was not necessary or proper party in suit challenging constitutionality of Apartment Information Vendors Law since the Dept. of State is responsible for administering the statute and the District Attorney is responsible for enforcing its penalties).  Since plaintiff fails to allege that the Governor has any connection with the enforcement of SORA other than the general duty to take care that the laws be faithfully executed, and SORA provides that it is the District Attorney's office that will implement the statute, plaintiff has failed to state a claim against the Governor. See N.Y. Corr. Law §§ 168-f, 168-t; but see Doe v. Cuomo, 11-cv-2545, slip op. pp 11-12 (E.D.N.Y. September 28, 2012) (Court held Governor Cuomo and DCJS Commissioner Sean Byrne were proper parties in case where plaintiff, a Level One sex offender, was seeking removal from the Registry) (for the Court's convenience, a copy is attached hereto).

SORA clearly provides that a sex offender's failure to comply with the registration or

verification requirements of SORA will result in a violation of the statute and the sex offender shall be guilty of a felony. Id. Any criminal charges based on a sex offender's failure to comply with SORA's registration and verification requirements will necessarily be brought by a District Attorney's office.  Therefore, since the Governor is not responsible for administering SORA or enforcing its penalties, he is not a proper party because "the general executive duty of the Governor does not provide a basis for a claim against him. See Wang, 164 F.Supp.2d at 410; see also Gras v. Stevens, 415 F. Supp. 1148 (S.D.N.Y. 1976) (Court held that the Governor was not proper party in civil rights action attacking constitutionality of statute governing matrimonial actions). "[T]he vast majority of courts to consider the issues have held that a state official's duty to execute the laws is not enough by itself to make that official a party in a suit challenging a state statute." Warden v. Pataki, 35 F.Supp.2d 354, 359 (S.D.N.Y. 1999) (dismissing suit, challenging statutory amendments reducing powers of community school boards, against Governor), aff'd, Chan v. Pataki, 201 F.3d 430 (2d Cir. 1999), cert. denied, 531 U.S. 849, 121 S.Ct. 122 (2000).   Accordingly, this action must be dismissed against Governor Cuomo.

To the extent the Governor has power and authority under the legislative scheme to essentially pardon a sex offender, the problem with plaintiff's claim is that there is an alternative remedy at law. "If the remedy at law is plain, adequate and complete, the aggrieved party is left to that remedy in the state courts…" Gras v. Stevens, 415 F.Supp. at 1153 (In finding that there was no occasion for a declaratory judgment in the case, court held party in a divorce proceeding, challenging constitutionality of matrimonial statute, could challenge it in divorce suit which was already instituted).   Since plaintiff's attempt to withdraw his California plea was previously denied (see Hartofilis Decl. at Exhibit A), plaintiff can either seek a pardon from the Governor of California, or appeal Judge Camacho's risk level determination.

21

**B.      Michelle Harrington and Michelle Mulligan Are Not Proper Parties**

Plaintiff has also failed to state a claim against Michelle Harrington and Michelle Mulligan because they are not proper parties to this action. Neither the Board nor the Registry have the authority to remove plaintiff from New York's sex offender registry. See Wang v. Pataki, 164 F.Supp.2d at 410, citing Ex Parte Young, 209 U.S. 123, 157 (1908)("it is plain that [a defendant state] officer must have some connection with the enforcement of the [challenged]act"). SORA provides that the duration of registration for a Level Three sex offender is life and Level Three offenders may not be relieved of the duty to register (unless they receive a pardon from the Governor or have their conviction overturned). See N.Y. Corr. Law § 168-h(2). In registering out of state sex offenders, the Board only makes a recommendation as to the offender's Risk Level to the Supreme Court.   In addition, the Registry only performs ministerial data entry operations with respect to sex offenders. See N.Y. Corr. Law § 168-b (Duties of the division; registration information). DCJS, which the Registry falls under, is not a law enforcement agency. Id. at 168-a(4). In fact, DCJS is part of the Executive Branch of New York State. Id. at 168-a(5); see also N.Y. Exec. Law § 837.   In addition, pursuant to SORA, any criminal charges based on a sex offenders failure to comply with SORA's registration and verification requirements will necessarily be brought by a District Attorney's office. See N.Y. Corr. Law §§ 168-f, 168-t.   Therefore, since neither Michelle Harrington nor Michelle Mulligan have the authority to remove plaintiff from the Registry, this action must be dismissed against them.

**C.      Action for Injunctive and Declaratory Relief is Not Permissible Against Governor Cuomo, Michelle Harrington and Michelle Mulligan**

Plaintiff's claims for injunctive and declaratory relief against the individual defendants must

22

be dismissed because defendants do not have a direct connection to plaintiff's request to be relieved of the duty to register under SORA. "[A]ctions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." Davidson v. Scully, 148 F.Supp.2d 249, 254 (S.D.N.Y. 2001). Gov. Cuomo, Michelle Harrington and Michelle Mulligan are clearly not responsible for the implementation of SORA. See N.Y. Corr. Law §§ 168-f, 168-t. They have no connection to, or responsibility for, plaintiff's challenge to SORA on the ground that plaintiff, as a Level Three offender, cannot be relieved of the duty to register. Thus, they have no power or authority, or personal involvement, in the enforcement of any declaratory or injunctive relief in this case. Therefore, plaintiff's claims against Gov. Cuomo, Michelle Harrington and Michelle Mulligan for declaratory and injunctive relief must be dismissed. See Montero v. Travis, 171 F.3d 757, 761-62 (2d Cir. 1999) (affirming dismissal of § 1983 claim seeking injunctive relief as frivolous because plaintiff did not allege defendants' personal involvement in the constitutional violation).

## POINT IV

### PLAINTIFF IS NOT ENTITLED TO RELIEF FROM SORA'S REGISTRATION REQUIREMENTS AS A MATTER OF STATUTORY CONSTRUCTION

To the extent that plaintiff is challenging his inability to be relieved of the duty to register in New York, because he is not presently residing in New York, plaintiff fails to state a claim. It is clear that the New York State Legislature has determined that sex offenders have to maintain compliance with their obligations under SORA even if they relocate to another state, or in the present case, to another country. See Doe v. O'Donnell, 86 A.D.3d 238, 241 (3d Dept. 2011). The New York Legislature enacted SORA to monitor sex offenders' whereabouts, to protect the

public from the danger of recidivism posed by sex offenders and to aid law enforcement in prosecuting recidivist offenders. Id. Accordingly, SORA, does not offer an avenue for the removal from the registry upon an offender's relocation to a different state. Id ; see also Correction Law §§ 168-f; 168-h; 168-j; 168-k. Exemption from SORA's registration obligations is only allowed upon reversal of offender's conviction, a pardon by the Governor, or a court order granting a petition for relief for a Level Two offender after being on the registry for thirty years. Id. at §§ 168-f(5); 168-o(1).

In Doe v. O'Donnell, the petitioner argued that his registration obligations should cease upon his leaving New York as SORA did not provide the state with the proper jurisdiction. 86 A.D.3d at 240. The Court rejected the petitioner's argument, holding that the language of SORA and the legislative intent clearly demonstrated the legislature's desire to require continued registration despite such a change in circumstances. Id. at 242. The Court held that had the state sought to allow offenders to be removed from the registry upon relocation, "…it would have so provided." Id. at 241. The state's dual intent was to monitor the whereabouts of offenders and to aid law enforcement in prosecuting recidivists. Id. The Court recognized that such an intent would be frustrated if a sex offender's registration obligations were to cease when he or she moves out of the state, thus allowing such an offender to move and then return without re-registering or to simply relocate to just outside the state's borders. Id. at 241-242. It is only through continuous registration that the statute's express purposes can be achieved. Id. at 242.

Similarly, in People v. Melzer, 89 A.D.3d 1000 (2d Dept. 2011), the Court held that an offender's relocation to another state does not negate the obligation of the Supreme Court to hold a risk level assessment hearing. The Court stated that although the petitioner had returned to his home state of New Jersey before the hearing was held, the New York State Supreme Court was

statutorily required to hold the hearing or else the intentions behind the statute would be frustrated if such obligations were to cease upon an offender's move out of the state. Id. at 1001.

In addition, any change in Article 6-C to relieve registered offenders who move out of state of the registration/verification requirements must be done by the Legislature. New York State Inspection, Security and Law Enforcement Employees, Dist. Council 82, AFSCME, AFL-CIO v. Cuomo, 64 NY2d 233 (1984); Jones v. Beame, 45 N.Y.2d 403, 408 (1978) (The court as a policy matter will abstain from venturing into areas if it is ill-equipped to undertake the responsibility and other branches of government are far more suited to the task.); Klostermann v. Cuomo, 61 NY2d 525, 535 (1984) (Generally, the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the legislative and executive branches of our tripartite system."). Here, the Legislature has specifically chosen not to provide for such relief, despite developing, over time, a detailed procedure for removal from the Registry. The reasons for making such an intentional decision are all rationally related to the legislative intent discussed above.

In this case, plaintiff's relocation out of New York does not relieve him of the duty to register as a matter of law. Plaintiff contends that as an out-of-state offender who has relocated out of New York, he is not required to register as a sex offender in New York and that his Level Three classification is erroneous and unlawful. However, such claims go against the plain language, legislative intent , case law, and legislative history of SORA.

As discussed above, SORA does not terminate registration obligations for those offenders who relocate out of state. If such an interpretation of the statute were to be permitted it would frustrate the purposes of the statute and limit its effectiveness. Offenders would be able to enter and exit the state without ever having to notify the Registry. The ease of interstate and

international travel dictates that a former resident of New York State, who is subject to the registration/verification requirements, not be relieved of his Registry obligations simply by moving his permanent residence. For example, plaintiff moved from California to New York, New York back to California, and then California to Malta, all within the period of approximately 2 ½ years. See Amended Complaint at ¶¶ 12,52,79, 292, 294. The docket in this case also has plaintiff's address listed as the state of Nevada, indicating that plaintiff lived in Nevada prior to traveling to Malta. If moving out of state would remove individuals from the registry, then one could envision that sex offenders, after committing a sex offense and being placed on the Registry, would perform the equivalent of forum shopping.  One can envision a situation where a sex offender would move to New York, register, move yet again, petition for removal from  the New York State Registry based on that move, and after the petition is granted, move back to New York. Here, plaintiff's numerous moves within such a short period of time indicate such forum shopping.

It is also reasonable to expect that registered sex offenders who have had a permanent residence in New York State, have strong and long-lasting connections to the state. With respect to offenders who established residency in New York State, like plaintiff, most have created ties to the New York State communities in which they resided and will likely return periodically, even if they have relocated out-of-state.  In plaintiff's case in particular, this is especially true since he has indicated he will be coming back to the United States soon to receive medical treatment from the Veteran's Administration Hospital. See Docket Entry No. 87, Plaintiff's October 26, 2012 Correspondence to the Court.  Moreover, in light of

REDACTED

(see Board's Case Summary submitted for in camera review), and his ties to New York

26

York as a result of previously living here, it is necessary for New York, in order to provide safer communities and protect children, to maintain him on the New York State Registry for the duration of his registration period.     Accordingly, plaintiff's claim must be dismissed in its entirety.

**POINT V**

**PLAINTIFF FAILS TO STATE ANY CONSTITUTIONAL VIOLATIONS**

To the extent plaintiff has raised constitutional challenges to SORA, specifically to the requirement that a registered sex offender's relocation to another state will not relieve him of the duty to register in New York, plaintiff's claims are "wholly conclusory, completely unsupported by facts and simply asserted as a way of explaining the state court decisions that Plaintiff now seeks this Court to review and reject.... Plaintiff is asking this Court to review, under the guise of a constitutional [violation], the judgments rendered in state court...." which are barred under the Rooker-Feldman doctrine.   <u>Castiglione v. Papa</u>, 2010 WL 2044688, *7; <u>see</u> <u>also</u> POINT III, supra. These claims should also be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

**A.     Plaintiff Fails to State an Equal Protection Claim**

Plaintiff's Equal Protection challenge should be dismissed for failing to state an actionable claim. Plaintiff makes the conclusory allegations that defendants have violated his Equal Protection rights under the Constitution. <u>See</u> Complaint at ¶ 260. However, since plaintiff, a convicted sex offender, is not a member of a suspect class and there is a rational basis for sex offender registration requirements, plaintiff's equal protection claim must be dismissed.

"To prove a violation of the Equal Protection clause, a plaintiff must demonstrate that he was intentionally treated differently from others similarly situated as a result of intentional or

27

purposeful discrimination directed at an identifiable or suspect class." Selah v. Goord, 2006 U.S. Dist. LEXIS 51051 (S.D.N.Y. 2006) (citing Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995)). Sex offenders are not considered a suspect class entitled to heightened equal protection scrutiny. Selah v. Goord, 2006 WL 2051402 at * 6 (S.D.N.Y); Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir.1996).

When the classification does not involve a suspect class, such as in the case of sex offenders, the legislative act is held valid unless it can be shown that there is no "rational basis between the disparity of treatment and some legitimate government purpose." Heller v. Doe by Doe, 509 U.S. 312, 319-20 (1993). Thus, if there is "any reasonably conceivable" set of facts that "could provide a rational basis for the classification" it should be upheld. Kasiem v. Patterson, 2011 WL 723612 at * 2 (S.D.N.Y) (quoting, FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). It has already been shown that when convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. Smith v. Doe, 538 U.S. 84, 103 (2002). As explained fully herein, the enforcement of SORA against the plaintiff is rationally related to the state's concern for the safety of the public from an especially dangerous class of criminals. Thus, plaintiff's equal protection claim should be dismissed.

Plaintiff also fails to assert that he has been purposely discriminated against from others similarly situated. Although plaintiff claims he was a non-resident worker living in New York, that is not the case. Plaintiff relocated to New York from California and became a New York resident. See Amended complaint at ¶ 259; see also Exhibit D to Hartofilis Decl. Plaintiff clearly established a permanent residence in New York while he lived here which is the reason why the Board determined he had to register in New York and referred the matter to the Supreme Court

28

for a risk level classification. Id. In fact, despite his allegations in the complaint, when plaintiff relocated to New York, he requested all necessary forms so that he could register in New York and notified California authorities that he was establishing permanent residence here. Id. In addition, any complaints plaintiff might have about the burdens SORA's registration requirements places on him are common to all Level Three sex offenders. See N.Y. Corr. Law § 168. Thus, plaintiff's registration requirements under SORA are not any different from the obligation borne by all Level Three sex offenders in New York. Accordingly, plaintiff's equal protection claim should be dismissed.

**B.      Full Faith and Credit**

Plaintiff claims that "the constitutionally protected right to travel may be violated under the circumstances stated herein, when Real Parties Interest refuse to recognize the legal determination by the State of California of a registration recipient based on the plea agreement and the factual finding of that respective court.  Additionally, Plaintiff argues that the Full Faith and Credit Clause of the Constitution compels interstate recognition of another State's level determination, or the application of the sister State's custom, practice and usage of the sex registration statutes..." See Amended Complaint at ¶ 262. This argument is nonsensical and fails to state a violation of the Full Faith and Credit Clause.

Plaintiff's registration obligations under SORA do not violate the Full Faith and Credit Clause of the United States Constitution. The purpose of the clause is to avoid conflicts between states in adjudicating the same issues. Matter of Luna v. Dobson, 97 N.Y.2d 178, 182 (2001). However, the clause "... is not implicated where the issue decided by a court in a sister state is different from the issue being decided by a New York court." Matter of Whitney, 57 A.D.3d 1142, 1144 (3d Dept. 2008). It is not a violation of the clause where two states have each

29

separately adjudicated the risk posed by a sex offender to their respective citizens and imposed

registration obligations upon the offender pursuant to their respective sex offender registration

law. See Doe v. O'Donnell, 86 A.D.3d 238, 243 (3d Dept. 2011). As the matter adjudicated by

each state is not the same, the Full Faith and Credit Clause has not been violated. See Matter of

Smith v. Devane, 73 A.D.3d 179, 183 (3d Dept. 2010).

In People v. Arotin, 19 AD3d 845, 846 (3d Dept 2005), the petitioner – a sex offender

who relocated to New York from Ohio – alleged that his Level One classification in Ohio should

be recognized by New York under the Full Faith and Credit Clause.  Instead, New York assigned

him a Level Three classification.  The court held that the Full Faith and Credit Clause did not

prohibit New York from classifying the petitioner as something other than a Level One.  Id.  In

explaining this holding, the court stated:

> In light of the alarming recidivism by convicted sex offenders [citation omitted], each
> state has enacted statutes "designed to protect its communities from sex offenders," and
> these statutes include a registration component [citation omitted].  The registration and
> concomitant notification processes are regulatory in nature [citation omitted].   The
> administrative manner in which a state chooses to exercise the registration requirements
> for a sex offender who moves into a jurisdiction falls squarely within the power of that
> state and is not governed by the procedures in effect in the state where the offender
> previously resided.

Id. at 846-47.

In this case, New York's determination of the risk posed by the plaintiff to its citizens and

the registration requirements imposed on the plaintiff are distinct matters from those adjudicated

in California. Accordingly, it is well within New York State's authority to impose obligations

upon sex offenders who relocate to New York State, regardless of what another state may choose

to do with respect to that offender.  Since New York and California have each separately

adjudicated the risk posed by petitioner to their respective citizens and imposed registration

requirements upon plaintiff pursuant to each state's sex offender registration law, the Full Faith and Credit Clause has not been violated. See Doe v. O'Donnell, 86 A.D.3d at 243 (Court held Full Faith and Credit Clause was not violated when New York sex offender had to remain on New York's registry even though he moved to Virginia and Virginia granted his petition for removal of his name from the Virginia sex offender registry). Significantly, there is no issue in this case since plaintiff remains on California's sex offender registration registry and his registration requirement is a lifetime. requirement. See California Registration Form, annexed as Exhibit B to Hartofilis Decl. Accordingly, plaintiff's Full Faith and Credit Clause claim should be dismissed.

**C.      Plaintiff Fails to Allege Any Other Claims of a Constitutional Violation**

Although plaintiff refers, in a conclusory manner, to violations of various Constitutional Amendments, the references are devoid of virtually any factual content and thus, do not pass muster under the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. Accordingly, to the extent that plaintiff has attempted to bring additional claims, they must be dismissed.

**POINT VI**

**PLAINTIFF HAS FAILED TO ESTABLISH ANY
NEED FOR THE PRELIMINARY INJUNCTIVE RELIEF HE SEEKS**

To obtain a preliminary injunction, a party must show (1) likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See Doninger v. Niehoff, 527 F.3d 41, 47 (2008); see also Cachillo v. Insmed, 638 F.3d 401, 405 (2d

31

Cir. 1999). Plaintiff is unable to establish any, let alone, all of these requirements. In his motion for a preliminary injunction, plaintiff is merely seeking the ultimate relief he is requesting in this case, i.e. invalidation of his risk level classification and removal from New York's State Registry. Accordingly, his motion for a preliminary injunction must be denied.

### A.   Plaintiff Cannot Establish That He Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The demonstration of irreparable harm is "perhaps the single most important prerequisite for the issuance of a preliminary injunction," Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002), quoting, Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983), and the moving party must show that such harm is likely before the other requirements will even be subject to analysis. See Kamerling, 295 F.3d at 214and Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999).

To establish irreparable harm, a party must demonstrate that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot prove adequate compensation." N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975), quoted in Kamerling, 295 F.3d at 214. Moreover, irreparable harm must be shown to be actual and imminent, not remote or speculative. See Rodriguez, 175 F.3d at 234 and Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).

Plaintiff has not demonstrated that he will suffer irreparable harm in the absence of an injunction. Plaintiff has been a registered sex offender in California since his conviction in 1998 and thus has had to comply with California's registration requirements for the past 14 years. He has also been a registered Level Three sex offender in New York State since May 2011. Plaintiff has not demonstrated that absent a preliminary injunction removing him from New York's

32

Registry, he will suffer an injury that is actual and imminent and one that cannot be remedied if the Court waits until the conclusion of the litigation to resolve the harm. In fact, other than claiming, in conclusory termns,  that he has satisfied  the requirements for a preliminary injunction, plaintiff does not allege any specific facts in support of his motion. See  Motion for Preliminary Injunction at I, ¶ 2.   Plaintiff merely reiterates the allegations set forth in his amended complaint.   Since irreparable harm must be actual and not speculative, plaintiff is unable to establish the most important prerequisite for the issuance of a preliminary injunction. See e.g. Smith v. Goord, 2007 U.S. Dist. LEXIS 55544 (W.D.N.Y.  July 30, 2007) (In denying plaintiff's motion for injunctive relief, the Court held that plaintiff's allegations, while specific, rely on speculation to reason that he faces irreparable harm); Ward v. Leclaire, 2007 U.S. Dist. LEXIS (N.D.N.Y. May 24, 2007) (In denying motion for injunctive relief, Court held that although plaintiff claims that he will face future threats and harassment, he cannot claim with any certainty how, when or where he will be retaliated against or that the retaliation will result in irreparable harm to him).

**B.   <u>Petitioner is Unlikely to Succeed on the Merits</u>**

Since plaintiff has not shown that he will suffer irreparable harm in the absence of injunctive relief, there is no need to proceed to the remaining necessary requirements.   In any event, defendants have clearly established plaintiff will not be successful on the merits. See supra, POINTS 1-V. In Doninger, the Court held that "[w]hen the movant seeks a "mandatory" injunction- that is, as in this case, an injunction that will alter rather than maintain the status quo-she must meet the more rigorous standard of demonstrating a "clear" or "substantial" likelihood of success on the merits". Doninger, 527 F.3d at 47. In his motion for a preliminary injunction, plaintiff is not seeking to maintain the status quo. Instead, he is seeking the ultimate relief,

invalidation of his risk level assessment and removal from New York's Registry. Significantly, as set forth in the Court's October 19, 2012 Memorandum and Order, plaintiff cannot maintain his action here in this Court because it is barred by the <u>Rooker-Feldman</u> doctrine. Accordingly, since plaintiff has not demonstrated a "clear" or "substantial" likelihood of success on the merits, his motion for a preliminary injunction should be denied.

> **C.  Plaintiff Has Not Established Any Hardship**
> **<u>to Warrant Injunctive Relief</u>**

In his motion for a preliminary injunction, plaintiff has not alleged that he has suffered any hardship by remaining on New York's Registry, pending the conclusion of this litigation, which would be balanced against the hardships of defendants in protecting the citizens of New York from Level Three sex offenders, to entitle plaintiff to the injunctive relief he seeks. Plaintiff only alleges that he should be removed from New York's Registry because he no longer lives in this State. <u>See</u> Motion for Preliminary Injunction at ¶ 2.   However, these allegations do not demonstrate  what hardship, if any, these actions have caused him.  On the other hand, if he is removed from the Registry, the hardship on the citizens of New York would be substantial. Plaintiff was convicted of several sex offenses with a minor.  The citizens of New York have the right to have that knowledge.  The potential harm is more prevalent in this case where plaintiff has indicated he is intending on coming back to the United States, possibly New York, to seek medical treatment. <u>See</u> Exhibit E to Hartofilis Decl.

## <u>CONCLUSION</u>

For all of the reasons herein above set forth, the State Defendants respectfully request that this Court grant their motion to dismiss the amended complaint in its entirety, that the Court

deny plaintiff's request for a preliminary injunction and for such other and further relief the Court

deems just and proper.


Dated: New York, New York
       November 30, 2012

                                Respectfully submitted,

                                ERIC T. SCHNEIDERMAN
                                Attorney General of the
                                 State of New York
                                <u>Attorney for State Defendants</u>
                                By:

                                Maria Barous Hartofilis
                                120 Broadway - 24th Floor
                                New York, New York 10271-0332
                                (212) 416-6295


MARIA BAROUS HARTOFILIS
Assistant Attorney General
   <u>of</u> <u>Counsel</u>

35

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 28 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOHN DOE,

JUDGMENT
11-CV- 2545 (CBA)

Plaintiff,

-against-

ANDREW CUOMO, as Governor of the State of New
York, in his official and individual capacity; SEAN M.
BYRNE, as Acting Commissioner of the State of New
York Division of Criminal Justice Services, in his
Official and Individual capacity; and NEW YORK
STATE DIVISION OF CRIMINAL JUSTICE
SERVICES,

Defendants.
------------------------------------------------------------------X

A Memorandum and Order of Honorable Carol Bagley Amon, United States

District Judge, having been filed on September 28, 2012, denying Plaintiff's motion for summary

judgment; and granting Defendants' motion to dismiss; it is

ORDERED and ADJUDGED that Plaintiff's motion for summary judgment is

denied; that Defendants' motion to dismiss is granted; and that judgment is hereby entered in

favor of Defendants Andrew Cuomo, as Governor of the State of New York, in his official and

individual capacity, Sean M. Byrne, as Acting Commissioner of the State of New York Division

of Criminal Justice Services, in his official and individual capacity, and New York State Division

of Criminal Justice Services and against Plaintiff John Doe.

Dated: Brooklyn, New York
       September 28, 2012

                                              Douglas C. Palmer
                                              Clerk of Court

                            by:    /s/
                                   Michele Gapinski
                                   Chief Deputy for
                                   Court Operations

In a/appeals packer

39

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN DOE,

                          Plaintiff,

     - against -

ANDREW CUOMO, as Governor of the State of New
York, in his official and individual capacity; SEAN M.
BYRNE, as Acting Commissioner of the State of New
York Division of Criminal Justice Services, in his
Official and individual capacity; and NEW YORK
STATE DIVISION OF CRIMINAL JUSTICE
SERVICES,

                       Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-02545 (CBA) (JO)



AMON, Chief United States District Judge.

     Plaintiff John Doe filed this action on May 26, 2011 bringing various constitutional

challenges to his continued inclusion in New York's sex offender registry. Currently before the

Court are defendants' motion to dismiss and plaintiff's motion for summary judgment. For the

reasons stated below, plaintiff's motion is denied, and defendants' motion is granted.

## BACKGROUND

**I. SORA History**

     The New York legislature first enacted the Sex Offender Registration Act ("SORA") in

July 1995. See 1995 N.Y. Sess. Laws, ch. 192 (codified as amended at N.Y. Correct. Law § 168

et seq.). The Act requires all those convicted of certain enumerated sex offenses to register with

the state's Division of Criminal Justice Services ("DCJS"), which in turn notifies the offender's

local law enforcement authorities. SORA also provides for the disclosure of information about

the registered offenders to entities with vulnerable populations and in some circumstances to the

public at large.

The duration of the registration requirement and the level of community notification depend on the offender's risk level. The current procedures for determining risk levels were first set forth in a 1999 amendment to SORA in response to a district court ruling that SORA's original procedures violated due process. See Doe v. Pataki, 3 F. Supp. 2d 456, 468-473 (S.D.N.Y. 1998); Doe v. Pataki, 481 F.3d 69, 70-75 (2d Cir. 2007) (summarizing SORA history). This process begins with the state Board of Examiners of Sex Offenders who, through consideration of a variety of factors such as the offender's criminal history, psychological profile and response to treatment, and the nature of the offense, formulates a Risk Assessment Instrument indicating the "risk of a repeat offense by such sex offender and the threat posed to the public safety." N.Y. Correct. Law § 168-l(5). Sixty days prior to the offender's discharge, release from custody, or parole, the Board issues this recommendation to the sentencing court who, after a hearing, assigns the offender to one of three statutory risk tiers. See id. §§ 168-l(6); 168-n. The court, on recommendation by the Board, may also designate the offender a "sexual predator," "sexually violent offender," or a "predicate sexual offender." Id. §§ 168-a(7), 168-l(6), 168-n(1).

Sex offenders with a low risk of re-offending are designated "level one." Moderate and high risk offenders are assigned to levels two and three, respectively. See id. §168-l(6). Since Doe is designated as a level one offender and his claims here relate to that status, the Court will focus primarily on offenders placed at that level.

Upon registration, DCJS disseminates information regarding level one offenders to local law enforcement agencies. These agencies may then circulate certain information about a level one offender, including name, photograph, and details about the crime of conviction, "to any entity with vulnerable populations related to the nature of the offense committed by such sex

2

offender." Id. § 168-l(6)(a). "Any entity receiving information on a sex offender may disclose or further disseminate such information at its discretion." Id. Unlike level two and three offenders, level one offenders are not listed on the publicly-accessible online subdirectory. Compare id. § 168-l(6)(a), with id. § 168-l(6)(b),(c). Although some individual municipalities have interpreted SORA to allow them to make their own public websites that list level one offenders, Doe conceded at oral argument that his county does not. (See Pl. Opp. to Motion to Dismiss at 15; Tr. at 23.) Additionally, level one offenders who engage in interstate travel may be listed on another state's website, depending on local laws. Doe claims that he is currently listed on Florida's public website because of travel to that state while he was on probation. (Pl. Opp. to Motion to Dismiss at 13 n.5.)

Generally, members of the public may only identify level one offenders by calling a toll-free number and requesting information about a specific individual. To learn whether a level one offender is on the registry, the caller must provide the individual's name plus an address, date of birth, driver's license number, or Social Security number. See Sex Offender Management, New York State Division of Criminal Justice Services, http://www.criminaljustice.ny.gov/nsor/. The caller must be over eighteen years old, N.Y. Correct. Law § 168-p(2)(d), and must provide his own name, phone number, and address to be kept on file, id. § 168-p(1).

The New York legislature has adopted over the years several amendments to SORA that have changed the duties and limitations placed on level one offenders. When Doe pleaded guilty in 1999, SORA set his baseline registration requirement at ten years. It also contained a broad provision allowing "[a]ny sex offender" to be "relieved of any further duty to register upon the granting of a petition for relief by the sentencing court." N.Y. Correct. Law §§ 168-h, 168-o (1996 ed.).

3

In an amendment that became effective in January 2000, the legislature changed this provision to allow discretionary relief from registration only after the offender had been registered for a minimum of ten years. 1999 N.Y. Sess. Laws ch. 453, § 18. The amendment also added a provision placing the burden on the offender to show by "clear and convincing evidence" that the "risk of repeat offense and threat to public safety is such that registration or verification is no longer necessary." Id. Since level one offenders were already required to register for a maximum of ten years, the 2000 Amendments effectively eliminated the possibility of early relief for these offenders. Through a new provision allowing for "modification" of the "duration of registration and level of notification," the amendment also gave level two and three offenders the opportunity to petition to have their risk level reduced, although they still had to serve at least ten years on the registry. N.Y. Correct. Law § 168-o(2) (2000 ed.)

In 2002, the legislature again amended the relief provision, restricting the possibility of early relief from registration to previously adjudicated level three offenders who remained on the registry for a minimum of thirteen years. At that time, level one and two offenders were still automatically removed from the registry after ten years. See 2002 N.Y. Sess. Laws. ch. 11, § 22.

In January 2006, approaching the time when the initial class of level one and two offenders were about to complete the required ten year period on the registry, the legislature passed an amendment extending the duration requirements. See 2006 N.Y. Sess. Laws ch. 1, § 3. Level one offenders must now register for twenty years, N.Y. Correct. Law § 168-h(1), while level two and three offenders must register for life, id. § 168-h(2). The modification and relief provisions now allow a level two offender who has been on the registry for at least thirty years to petition the court to be removed from the registry, and "[a]ny sex offender" to petition the sentencing court for an order "modifying" the offender's risk level. Id. § 168-o(1),(2). As

4

explained further below, the parties here agree that the combination of provisions means that level one offenders are automatically placed on the registry for twenty years with no possibility of relief prior to that point. Level two offenders may seek discretionary relief after thirty years; level three offenders may seek an order modifying their risk to level two and thus also may effectively seek discretionary relief from registering after thirty years.

This series of SORA amendments also applied additional duties, restrictions, and notification provisions to level one offenders. When Doe was first required to register, information about level one offenders was available only to members of the public through a 900 phone number, which required the caller to bear the cost of the call. That call is currently free. Id. § 168-p(2)(b). The legislature now also requires affirmative notification to certain state agencies and private health insurers to prevent offenders from obtaining health benefits to cover erectile dysfunction drugs. See id. § 168-b(2). In 2006, the legislature added provisions allowing police to provide information about level one offenders to entities with vulnerable populations. The 2008 Amendments added a provision allowing social networking sites to request information about all sex offenders in order to "enable [the sites] to prescreen or remove sex offenders from [their] services." Id. § 168-b(10).

Since the time of his initial registration, Doe has been required to verify his registry information by mail every year. Id. § 168-f(2). Since 2006, he has also been required to appear in person at his local law enforcement agency every three years to be photographed. Id. § 168-f(2)(b-3). He must also update his registration within ten days of any change in address, internet access provider, internet identifier, or enrollment, attendance, employment or residence at any institution of higher education, and must pay DCJS ten dollars for every update. Id. § 168-f(4).

As noted previously, the legislature has also added several provisions preventing all sex

5

offenders from receiving insurance benefits to cover erectile dysfunction treatments. See id.
§ 168-b(2)(c); N.Y. Pub. Health Law § 2510(7); N.Y. Soc. Serv. Law §§ 365-A(4)(e), 369-
ee(1)(E-1); N.Y. Ins. Law § 4322(B-1). One new provision forbids sex offenders from a single
profession: working on ice cream trucks. N.Y. Correct. Law § 168-v.

Although SORA does not contain any residency or travel restrictions for sex offenders,
local laws and ordinances placing residency and other restrictions on sex offenders—some of
which apply to level one offenders—have sprung up around the state. (See Margulis-Ohnuma
Aff., Ex. E.) Doe concedes that these local laws are not required by SORA itself and are "likely
unconstitutional and preempted by state law." (Pl. Opp. to Motion to Dismiss at 20.)

First-time failure to comply with SORA's registration requirements, which was a
misdemeanor in the original statute, is now a felony. N.Y. Correct. Law § 168-t; see also
18 U.S.C. § 2250(a).

## II. John Doe

On August 17, 1999, plaintiff John Doe pled guilty to one count of attempted possession
of a sexual performance by a child under New York Penal Law § 263.16, a class A
misdemeanor. He had downloaded six images of child pornography onto an office computer at
his business in Queens. He was also charged with emailing these images to other people.

At the time of Doe's guilty plea and sentencing, the court explained that a conviction
under § 263.16 would require him to register as a sex offender under SORA. (Margulis-Ohnuma
Aff., Ex. A, at 2, 4.) The court also told Doe that, as permitted under the law at that time, he
could petition the court "at some future point" to be relieved of his duty to register as a sex
offender. (Id. at 6-7.) Both Doe and the prosecutor stipulated on the record that Doe would be
assessed zero points on his Risk Assessment Instrument, thus designating him a level one

6

offender. (Id. at 7-8.)

Doe filed a petition under New York Correctional Law § 168-o on December 15, 2009 in the Queens County Criminal Court to be removed from the SORA registry. At that point, he had been on the registry for over ten years. The court denied the petition reasoning that SORA currently contained no provision that would allow a level one offender to be removed from the registry prior to the expiration of twenty years. (See Margulis-Ohnuma Aff., Ex. C, at 4-5.) In doing so, the court declined to follow the lone federal district court that had previously read SORA to allow a level one offender to seek "modification" of his risk level under New York Correctional Law § 168-o(2), thus effectively removing him from the registry, see Woe v. Pataki, 571 F. Supp. 2d 382, 389 (E.D.N.Y. 2008). The court's denial was instead in line with the state courts' interpretation that a level one offender cannot seek "modification" to "level zero" and is required to register for twenty years without exception. See People v. Donald Valenti, No. 08060-2004, 2009 N.Y. Misc. LEXIS 2577, at *9; 241 N.Y.L.J. 108 (Sup. Ct. June 2, 2009) ("Considered cumulatively, it is clear the Legislature intended to remove that statutory provision allowing level one sex offenders to petition for relief of the duty to register. Such redress now comes only upon the expiration of that twenty year term."); Attorney General of State v. Simon, 899 N.Y.S.2d 528, 530 (Sup. Ct. 2010) ("There is no level of notification designated in the statute that is lower than level one so that [petitioners'] petition pursuant to Correctional Law § 168– o(2) is really an application to be relieved of any further duty to register. There is no specific provision in [Correction Law] § 168–o which permits a level one sex offender to petition to be relieved of any further duty to register."); see also Sponsor's Memo, N.Y. State Assemb., A.B. 9472, S.B. 6409 (2006) ("[R]ecognizing that certain level one offenders have a greater chance of recidivism, a new provision will allow for such offenders to be removed from the

registry after twenty years."). Doe has never appealed the state court's determination that he was not entitled to relief, and the parties agree in this action that SORA provides him no avenue for relief until he has registered for twenty years.

As part of his state court petition for relief from registration and in support of his summary judgment motion here, Doe presented a report by social worker Kenneth Lau dated November 16, 2009 entitled "Adult Sex Offender Evaluation: Pyscho-Sexual Assessment." (Margulis-Ohnuma Aff., Ex. B.)  After interviewing Doe and reviewing his case history, and based on the clinical recidivism assessment tools VASOR and STABLE-2007, Lau concluded that Doe was at a "low risk to reoffend." (Id. at 5)  Doe scored zero points for every risk assessment metric. (Id.)

### III. The Present Action

Although the precise contours of his claims are not clear, Doe argues that his inclusion on the SORA registry for twenty years, with its attendant duties and burdens and without the ability to seek discretionary relief, is a continuing violation of his constitutional rights, including substantive due process, procedural due process, the right against double jeopardy, freedom from Ex Post Facto laws, equal protection under the laws, and Fourth Amendment protection against unreasonable searches and seizures.  He seeks both a declaration that SORA is unconstitutional as applied to him and an injunction prohibiting defendants from enforcing SORA and its registration requirements against him.  By stipulation, he has withdrawn a claim under the Eighth Amendment and all claims for monetary damages.  (See DE #15.)

In response, defendants contend principally that: (1) they are not the proper parties to this action; (2) Doe's claims are time-barred; and (3) Doe has failed to state any constitutional violations.

8

## STANDARD OF REVIEW

At oral argument, the parties agreed that there are no disputed issues of fact and that, for the sake of analytical simplicity, their filings could be treated as cross-motions for summary judgment. (Tr. at 2-3.)  The Court can thus consider the entire record placed before it. Accordingly, the Court will grant summary judgment if the record shows that there is no genuine issue as to any material fact and that one of the parties is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).

## DISCUSSION

### I.  The Eleventh Amendment

Defendants argue that the Eleventh Amendment, which bars private suits against the state in federal court absent the state's consent, prohibits any claims against DCJS, a state agency. Doe has conceded "that Eleventh Amendment immunity extends to DCJS" and that he "do[es] not oppose dismissal of the claim against that entity."  (Pl. Opp. to Motion to Dismiss at 26 n.7.) Accordingly, the Court deems the claims against DCJS withdrawn.

### II.  The Proper Individual Defendants

Defendants argue that Governor Cuomo and Commissioner Byrne are not the proper defendants to this action because they have no role in the implementation or enforcement of SORA and thus do not have the requisite personal involvement for an injunctive claim under § 1983.  In pointing out that district attorneys are the officials who enforce SORA's registration requirements, defendants suggest that those individuals may be the only officials with the level of involvement necessary to be proper defendants.

As an initial matter, both the Governor and the DCJS Commissioner were parties to a decade-long litigation in this Circuit that followed SORA's initial implementation and resulted in

a major settlement agreement that added extensive procedural protections to SORA's registration requirements. See generally Doe v. Pataki, 481 F.3d 69, 70-75 (2d Cir. 2007) (summarizing SORA history). Although the issue of whether they were proper defendants in that case was seemingly never raised and in any event not addressed, their willing participation in that lengthy action undermines their arguments here.

In addition, although a defendant in a § 1983 action "must have some connection with the enforcement of the [challenged] act," Ex parte Young, 209 U.S. 123, 157 (1908), the level of involvement necessary is more forgiving where a plaintiff, such as Doe, seeks solely injunctive relief. "[A]ctions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." Davidson v. Scully, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) (quoting Marshall v. Switzer, 900 F. Supp. 604, 615 (N.D.N.Y. 195) (internal quotation marks omitted). The more rigorous showing of a defendant's personal involvement in a constitutional violation, meanwhile, is "limited to cases in which damages are sought and is plainly inapplicable where, as here, plaintiffs seek . . . injunctive relief." Davidson, 148 F. Supp. at 254 (internal quotation marks omitted) (quoting Project Release v. Prevost, 463 F. Supp. 1033, 1036 (E.D.N.Y. 1978)); see also Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973) ("The rule in this Circuit is that when monetary damages are sought under § 1983 . . . a showing of some personal involvement of the defendant is required."); N.Y Youth Club v. Town of Smithtown, No. 10 CV 2898, 2012 WL 1118635, at *9 (E.D.N.Y. Mar. 31, 2012) ("[P]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983." (quoting Davidson, 148 F. Supp. 2d at 254)); DeBerry v. Griefinger, No. 94 Civ. 6898, 1995 WL 514765,

10

at *2 (S.D.N.Y. Aug. 30, 1995) ("[T]he lack of personal involvement is a bar only to a claim for money damages, not to one seeking injunctive or declaratory relief.").

This test is plainly met for Commissioner Byrne, the "chief executive officer of and in sole charge of the administration of the [DCJS]." N.Y. Exec. Law § 836(2). He has the power to appoint subordinate officers within the agency and to "prescribe their powers and duties." Id. § 836(4). DCJS, in turn, is responsible for administering and implementing the SORA registry. DCJS maintains the sex offender registry, compiles the yearly offender verification forms, performs updates to the registry, controls publication of the registry information to local law enforcement, maintains the publicly-available website and toll-free telephone hotline, charges the $10 fee for offender updates, and receives the offender photographs that local law enforcement take at the required yearly intervals. It is also the entity that updates an offender's status or removes him from the registry if the court grants a petition for relief or modification. See N.Y. Correct. Law § 168-o(4). Byrne, as the chief officer of the agency, is clearly the state official with the most "direct connection to" and "responsibility for" the administration of the sex offender registry, and is thus a proper defendant in this action for prospective relief.

The Governor presents a slightly more difficult question. As defendants point out, courts in this Circuit have held that the governor's general duty to take care that the laws are faithfully executed "is not enough by itself to make [him] a proper party in a suit challenging a state statute." Warden v. Pataki, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999); Wang v. Pataki, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001). These cases, however, also indicate that the governor is an improper party only "where the legislative enactment provides that entities other than the executive branch of the state are responsible for implementation of the statute." Wang, 164 F. Supp. 2d at 410; see Warden, 35 F. Supp. 2d at 357-58 (governor improper defendant where

plaintiff challenged method of selecting city school board and laws enhancing power of the city board at the expense of community boards). Indeed, one of the seminal cases on which defendants rely expressly notes that in cases, such as this one, that deal with "the enforcement of programs, civil or criminal, dealing with the relations between the state and the individual," courts have been more likely to find that the governor can be sued for injunctive relief. Gras v. Stevens, 415 F. Supp. 1148, 1152 (S.D.N.Y. 1976) (collecting cases).

According to state statute, DCJS is located "in the executive department." N.Y. Exec. L. § 836. The Commissioner is appointed by the Governor and, upon senate confirmation, serves at the pleasure of the Governor. Id. § 836(2). In addition, the Board of Examiners of Sex Offenders, which performs offender risk assessments, consists of five members appointed by the Governor, one of whom the Governor designates as chairman. N.Y. Correct. Law § 168-l(1),(2). The duty to register as a sex offender does not apply to any person who has received a gubernatorial pardon. Id. § 168-f(5). The Governor thus has a significant role in the administration of SORA and in the operations of DCJS, an involvement that surpasses the general duty to execute state laws.

The Court thus concludes, at least for purposes of this motion, that both Commissioner Byrne and Governor Cuomo are proper defendants in this suit.

## III. The Statute of Limitations

Defendants claim that the present action is barred by the statute of limitations. As both parties agree, the statute of limitations for § 1983 actions in New York is three years. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997). The date of accrual of § 1983 actions, which federal law governs, occurs "when a plaintiff knows or has reason to know of the harm" that is the basis of the claim. Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2002) (quoting

Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)).  In determining the accrual date, the

"proper focus is on the time of the [illegal] act, not the point at which the consequences of the act

become painful."  Morse v. Univ. of Vt., 973 F.2d 122, 125 (2d Cir. 1992) (quoting Chardon v.

Fernandez, 454 U.S. 6, 8 (1981) (emphasis omitted)).

Defendants contend that this three-year period began to run from the dates of the SORA

amendments that Doe is challenging.  The amendment requiring Doe to register for ten years

with no possibility for early relief became effective on January 1, 2000; the amendment requiring

him to register for twenty years with no possibility of early relief became effective on January 1,

2006.  Thus, defendants assert, the statute of limitations expired, at the latest, in January 2009.

This action was commenced on May 25, 2011.

Doe counters that the continuing violation doctrine renders this action timely.  In an

exception to the normal accrual rule, "[w]here a plaintiff can demonstrate an ongoing or

continuing violation of his federally protected rights, the plaintiff is entitled to bring suit

challenging all conduct that was a part of the violation, even conduct that occurred outside the

limitations period."  Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994).  The continuing

violation doctrine is "not as clear a fit," however, where "'the plaintiff['s] claims are based on a

single decision that results in lasting negative effects.'"  Novella v. Westchester County, 661

F.3d 128, 146 (2d Cir. 2011) (quoting L.I. Head Start Child Dev. Servs., Inc. v. Econ.

Opportunity Comm'n of Nassau County, Inc., 558 F. Supp. 2d 378, 400 (E.D.N.Y. 2008); see

also Schultz v. Texaco, Inc., 127 F.Supp.2d 443, 447 (S.D.N.Y.2001) ("[T]he mere fact that the

effects of a single, wrongful act continue to be felt over a period of time does not render that

single, wrongful act a single 'continuing violation.'").

This Circuit has, in a variety of contexts, applied the continuing violation doctrine to

13

constitutional challenges to openly espoused laws or policies that have ongoing effects on the plaintiff. In the context of discrimination claims, for example, the Second Circuit has held that "[w]hen a plaintiff experiences a 'continuous practice and policy of discrimination,' . . . 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Cornwell, 23 F.3d at 703 (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)). Put differently, "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices." Id. at 704. "Thus, in cases where the plaintiff proves i) an underlying discriminatory policy or practice, and ii) an action taken pursuant to that policy during the statutory period preceding the filing of the complaint, the continuing violation rule shelters claims for all other actions taken pursuant to the same policy from the limitations period." Conn. Light & Power Co. v. Secretary of U.S. Dep't of Labor, 85 F.3d 89, 96 (2d Cir. 1996).

A similar rationale has been applied to constitutional challenges to state and local laws. In cases where the plaintiff has challenged the constitutionality of a zoning ordinance, for instance, courts have held that the date of enactment is not controlling because if the ordinance is "constitutionally invalid, it would constitute the equivalent of a continuing invasion of plaintiffs' property rights akin to a continuing trespass—a situation in which a new cause of action arises in plaintiff's favor against the [municipality] every day." Roman Catholic Diocese of Rockville Centre, New York v. Incorporated Village of Old Westbury, No. 09 CV 5195, 2011 WL 666252, at *14 (E.D.N.Y. 2011) (collecting cases).

In Connolly v. McCall, 254 F.3d 36 (2d Cir. 2001), moreover, the Second Circuit applied the continuing violation doctrine to due process and equal protection challenges to a state law that prohibited a retired public employee from continuing to receive pension benefits from his

14

first job upon accepting a subsequent government job unless he waived every two years the

accrual of pension benefits from the second job.  The court explained:

> The harm plaintiff complains of—his inability to accrue Task Force pension
> benefits—is always the result of actions taken no more than two years before, that
> is, when the most recent section 211 waiver was sought and granted.  In this
> respect, this case is most analogous to those involving the repeated application of
> a discriminatory policy, such as <u>Guardians Ass'n of the New York City Police
> Department, Inc. v. Civil Service Commission of City of New York</u>, 633 F.2d 232
> (2d Cir.1980).  In <u>Guardians</u> we considered the repeated use of a hiring list,
> compiled by using a discriminatory examination, to decide hiring priority for the
> New York Police Department.  We concluded that a new violation accrued each
> time the list was used to make an employment determination, even though the
> order of the list had been determined at an earlier date.  Similarly, here Connolly,
> notwithstanding the fact that he knew in advance of this requirement, was forced
> every two years to give up accrual of Task Force pension benefits in order to
> retain his NYPD pension.  As a result, a new claim accrued each time.

<u>Id.</u> at 41 (internal citation omitted).

A case in this district applied the continuing violation doctrine where the plaintiff

challenged the constitutionality of a law that prevented it from operating ferry services.

Rejecting the argument that the claim expired three years after the ferry law was enacted, the

court stated broadly:

> The so-called 'continuing violation doctrine' allows a plaintiff to assert otherwise
> untimely claims where, <u>inter alia</u>, there is a[n] express, openly espoused policy
> that is alleged to be improper. . . .  [Plaintiff] asserts a challenge to a law that
> continues to prevent it from establishing ferry service to and from East Hampton.
> This constitutes a continuing violation solely for limitations purposes, and
> Plaintiff's claims are therefore timely.

<u>Town of Southold v. Town of East Hampton</u>, 406 F. Supp. 2d 227, 238 (E.D.N.Y. 2005)

(internal quotation marks and citations omitted), <u>reversed in part on other grounds</u>, 477 F.3d 38

(2d. Cir. 2007).

The analysis in the above cases is similarly applicable here.  With the exception of his

equal protection challenge, which is explained below in the merits section, Doe is challenging his

15

continued inclusion on the sex offender registry, which places regular and ongoing restrictions and duties on him. As a registered sex offender, Doe must submit yearly verification forms, appear in person to be photographed every three years, submit updates and a $10 fee with any change in address or internet account, and have his status as a sex offender disclosed (or be available for disclosure) to outside organizations and members of the public. Doe is also contesting his ongoing inability to petition a court for relief based on his low risk status. Doe's complaint thus asserts both an openly espoused state policy governing a certain subset of citizens (SORA) and allegedly unconstitutional actions taken pursuant to that policy within the limitations period. The continuing violation doctrine is thus applicable to this case. Indeed, given the ongoing obligations that SORA creates, it would be troubling if the statute were rendered entirely immune from constitutional attack three years after its most recent amendment.

Thus, with the possible exception of his equal protection claim, as explained infra, the Court concludes that Doe's complaint is not time-barred.

## IV. Substantive Due Process Claim

Doe claims that the "substantive due process attack is the core of [his] challenge to the statute." (Pl. Opp. to Motion to Dismiss at 39.) Defendants argue that SORA does not implicate any fundamental rights and is capable of withstanding rational basis review.

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). The substantive component of due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). Fundamental rights or liberty interests for purposes of substantive due process

16

must be "objectively, 'deeply rooted in this Nation's history and tradition'" . . . and 'implicit in the concept of ordered liberty.'" <u>Glucksberg</u>, 521 U.S. at 720-21 (internal citations omitted). Thus, any "'[s]ubstantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" <u>Flores</u>, 507 U.S. at 302 (quoting <u>Collins v. Harker Heights</u>, 503 U.S. 115, 125 (1992)). The Supreme Court has recognized as fundamental "the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity; and to abortion." <u>Glucksberg</u>, 521 U.S. at 720 (internal citations omitted). Where a legislative act does not interfere with a fundamental right, courts must give it "a strong presumption of constitutionality" and uphold it if it is "'rationally related to a legitimate state interest.'" <u>Beatie v. City of New York</u>, 123 F.3d 707, 711 (2d Cir. 1997) (quoting <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 440 (1985)).

     Doe argues that SORA does indeed interfere with fundamental rights, but he fails to provide a "careful description" of the implicated rights. First, Doe argues that local residency ordinances interfere with the fundamental right to free movement and travel. Second, he asserts that his reporting obligations under the statute infringe upon a fundamental liberty interest against bodily restraint akin to probation or parole. Finally, he suggests that SORA's prohibition against sex offender employment on ice cream trucks, its limitation on sex offenders' insurance coverage, and the sharing of information with social media sites infringe fundamental rights.

     As an initial matter, the various local ordinances restricting where New York sex offenders may live are not properly before this Court. Doe is bringing a constitutional challenge to SORA, and SORA itself does not impose any residency restrictions or limitations on travel.

Indeed, Doe has not demonstrated that he has standing to challenge any local residency ordinances because he has not alleged any injury-in-fact that is traceable to these scattered municipal laws. See Warth v. Seldin, 422 U.S. 490, 502 (1975) ("[T]he fact that these petitioners share attributes common to persons who may have been excluded from residence in the town is an insufficient predicate for the conclusion that petitioners themselves have been excluded, or that the respondents' assertedly illegal actions have violated their rights."). Doe has not even alleged that he wishes to reside in any area covered by a sex offender residency restriction. He also agrees with defendants that these laws are "likely unconstitutional and preempted by state law." (Pl. Opp. to Motion to Dismiss at 20.) Should Doe decide that he wishes to live in an area affected by such a residency restriction, he must bring a challenge against the restriction itself.

As for the provisions of SORA itself, the Court is not persuaded that SORA's various provisions implicate any right that is "deeply rooted in this Nation's history" or "implicit in the concept of ordered liberty." Doe has not pointed to any applicable case law finding a fundamental right in the sex offender registration context. There is certainly no fundamental right to work on an ice-cream truck or to obtain insurance coverage for erectile dysfunction medication. As for the sharing of information with social networking sites, the Supreme Court has already rejected the argument that the mere publication of official information about an individual's criminal record—"a record of an official act"—implicates a fundamental privacy right. Paul v. Davis, 424 U.S. 693, 713 (1976) (declining to extend substantive privacy protection to "the disclosure of the fact of [the plaintiff's] arrest on a shoplifting charge").

Doe's attempt, moreover, to liken SORA's burdens to the "burdens of probation, parole or even incarceration," (Pl. Opp. to Motion to Dismiss at 41), is unconvincing. First, SORA's

requirement that certain offenders provide periodic information updates, whether by mail or in person, hardly compares to full-blown custodial detention and involuntary commitment, see Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Demore v. Kim, 538 U.S. 510 (2003). Doe's attempt, furthermore, to compare his duties under SORA to probation or parole, while more apt, is similarly strained. Although SORA registrants, for example, must update their registrations when changing their address, internet access provider, internet identifier, or enrollment, attendance, employment, or residence at any institution of higher education, they do not need to seek permission to do so. Nor must they provide information updates in person with the exception of a once in three-year in-person photograph requirement. Cf. Smith v. Doe, 538 U.S. 84, 101-02 (2003) (rejecting comparison of Alaska's sex offender registration scheme to probation or supervised release). As the Second Circuit has emphasized, "'substantive due process,' as it has come to be known . . . does not stand as a bar to all governmental regulations that may in some sense implicate a plaintiff's 'liberty.'" Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 460 (2d Cir. 1996). Doe's generalized language about liberty interests does not persuade the Court that a fundamental right is at stake.

Other circuits have repeatedly rejected substantive due process challenges to sex offender registry laws premised on various fundamental rights. See, e.g., Doe v. Moore, 410 F.3d 1337, 1348-49 (11th Cir. 2005) (right to travel); Doe v. Miller, 405 F.3d 700, 711-15 (8th Cir. 2005) (same); Cutshall v. Sundquist, 193 F.3d 466, 478 (6th Cir. 1999) (same); Williamson v. Gregoire, 151 F.3d 1180, 1184 (9th Cir. 1998) (same); Russell v. Gregoire, 124 F.3d 1079, 1093-94 (9th Cir. 1997) (right to privacy); Cutshall, 193 F.3d at 481-82 (same); E.B. v. Verniero, 119 F.3d 1077, 1103 (3d Cir. 1997) (same). The Ninth Circuit has concluded broadly that "persons who have been convicted of serious sex offenses do not have a fundamental right to be free from

the registration and notification requirements set forth in [Alaska's sex offender registration] statute." Doe v. Tandeske, 361 F.3d 594, 597 (9th Cir. 2004). Other circuits have observed the dearth of authority finding that sex offender statutes intrude on fundamental rights or otherwise violate substantive due process. See Moore, 410 F.3d at 1344 ("The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld such registration and publication requirements finding no constitutional infirmities."); Doe v. Mich. Dep't of State Police, 490 F.3d 491, 500 (6th Cir. 2007) ("Other circuit courts have considered substantive due process arguments against the registration requirement of sex-offender registries. Each appellate court to have done so has found that the registry laws are constitutional."). Accordingly, the Court concludes that the relevant inquiry for Doe's substantive due process challenge is whether SORA is rationally related to a legitimate state purpose.

The Second Circuit describes the rational basis test as follows:

> Supreme Court jurisprudence now informs us that when reviewing challenged social legislation, a court must look for plausible reasons for legislative action, whether or not such reasons underlay the legislature's action. To uphold the legislative choice, a court need only find some reasonably conceivable state of facts that could provide a rational basis for the legislative action. In other words, to escape invalidation by being declared irrational, the legislation under scrutiny merely must find some footing in the realities of the subject addressed by the law.
>
> Thus, it may be seen that today it is very difficult to overcome the strong presumption of rationality that attaches to a statute. We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, because the problem could have been better addressed in some other way, or because the statute's classifications lack razor-sharp precision. Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice. To succeed on a claim such as this, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.

Beatie, 123 F.3d at 712 (internal quotation marks and citations omitted). Indeed, the Supreme

Court has stated that to sustain a statute under rational basis review, the state "has no obligation to produce evidence . . . . [A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed constitutional, and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Heller v. Doe, 509 U.S. 312, 320 (1993) (internal quotation marks and citations omitted); see Beatie, 123 F.3d at 712 ("[I]t is not the state that must carry the burden to establish the public need for the law being challenged; it is up to those who attack the law to demonstrate that there is no rational connection between the challenged ordinance and the promotion of public health safety or welfare.").

The Court understands the question presented by Doe's challenge to be whether the New York state legislature had a rational basis for requiring low-risk offenders convicted only of possession of child pornography to register under SORA for twenty years. As the Second Circuit has already concluded, SORA serves the "twin purposes" of "protecting communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities' ability to fight sex crimes," Doe v. Pataki, 120 F.3d 1263, 1276 (2d Cir. 1997), state interests whose legitimacy Doe does not appear to contest. Courts have long cited to the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class," which underlie sex offender legislation. Smith v. Doe, 538 U.S. 84, 103 (2003); see also McKune v. Lile, 536 U.S. 24, 34 (2002). The Court thus concludes that sex offender registration laws like SORA generally serve a legitimate state purpose of promoting public safety.

Doe does not appear to contest that a state may constitutionally require some sex offenders to register for significant periods of time; rather, he argues that the state cannot require

21

that individuals such as he continue to register as a sex offender where it has presented no evidence that those convicted of mere possession of child pornography have a higher-than-average recidivism rate, and where he can offer evidence that he himself presents no risk of harm to the public. He argues, for example, that studies and case law discussing sex offender recidivism have examined only "hands-on" offenders—that is, offenders convicted of rape or other sexual assault. He also cites an April 2005 study finding that "among child pornography offenders with no other type of offense, only 3.9% committed 'any pornographic re-offense' and 6.6% committed 'any re-offense' during the time they were studied." (Pl. Opp. to Motion to Dismiss at 45 n.9 (citing M. Seto & A. Eke, The Criminal Histories and Later Offending of Child Pornography Offenders, 17 Sexual Abuse: A Journal of Research and Treatment 2, 207 (April 2005)). Doe argues that this rate is much lower than the general recidivism rate of criminal offenders. Id. (citing P. Langan and D. Levin, Recidivism of Prisoners in 2004, U.S. Dep't of Justice: Bureau of Justice Statistics Special Report, at 3 (June 2002) (reporting general recidivism rate for released offenders at 29-59%)). He has also presented the report of social worker Lau concluding that he has a very low risk of re-offending.

Put simply, Doe is asking the state to offer precision in its justifications for applying SORA to him that the rational basis test simply does not require. Although the recidivism studies cited in Smith and McKune focus on violent sex offenders, a state may rationally decide to sweep more broadly than the direct empirical data supports. As the Supreme Court has explained:

> [C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

Heller, 509 U.S. at 321 (internal quotation marks and citations omitted).  It cannot be characterized as arbitrary or irrational for a state to conclude that its sex offender registration laws should include those convicted not only of forcible sexual assault but also of less violent or non-violent crimes that nonetheless reflect sexually deviant behavior.  Though stated in the Ex Post Facto context, the Court finds instructive here the Supreme Court's pronouncement that a state may make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences"—even where an individual offender claims to have been wholly reformed.  Smith, 538 U.S. at 103.

Empirical data regarding the effects of child pornography consumption is generally difficult to obtain, a fact that "is not surprising, in light of the severe difficulties of implementing such research in the context of the illegality of such pornography."  Neil Malamuth & Mark Huppin, Drawing the Line on Virtual Child Pornography: Bringing the Law in Line with the Research Evidence, 31 N.Y.U. Rev. L. & Soc. Change 773, 790 (2007).  Empirical data reflecting that "individuals with a history of child pornography possession offenses only are not likely to commit a contact sexual offense" does indeed exist.  Id. at 797, 824.  There is, however, also data suggesting that "child pornography offenders [are] more likely to show a higher pedophilic pattern of sexual arousal" than other groups of offenders.  Id. at 794 (citing Michael C. Seto, James M. Cantor & Ray Blanchard, Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia, 115 J. Abnormal Psychol. 610, 613 (2006)).  Various studies also find that "about one-quarter to one-half of individuals convicted of child-pornography possession have been charged with a child sexual molestation offense as well" and that "child-pornography use adds to the prediction of likelihood of re-offense for those who have previously molested children."  Id. at 824.

23

Courts and legislatures have recognized repeatedly, moreover, that the market for child pornography entails its own set of public harms. The Supreme Court has upheld laws criminalizing the possession of child pornography based on the "legislative judgment, as well as the judgment found in relevant literature, . . . that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." Osborne v. Ohio, 495 U.S. 103, 109 (1990) (quoting New York v. Ferber, 458 U.S. 747, 758 (1982)). The Court went on to explain that it is "surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand." Id. at 109-10.

In passing the 2008 SORA amendment allowing social networking sites to receive information about sex offenders, the New York legislature indicated its concern that advances in internet technology risk exposing children to obscene material. 2008 N.Y. Sess. Laws, ch. 67, §§ 1, 2, 11. Furthermore, the legislative history of Penal Law § 263.16, which criminalizes possession of child pornography in New York, indicates that the Assembly was motivated in part by the difficulty in detecting actual cases of child abuse. Sponsor's Memo, N.Y. State Assemb., A.B. 2469, S.B. 1638 (1996) ("Often, law enforcement officials are aware of the existence of pedophile behavior, but because of the age of the victims and the difficulty of prosecuting this type of crime with no adult witnesses, the perpetrators are left to continue to abuse children.").

While expressing no view on the empirical unassailability of any of these studies or policy justifications, the Court does believe, given the highly deferential standard of review, that a state legislature could rationally conclude that requiring those convicted only of child pornography possession to register as sex offenders would serve the interests of public safety. It would be reasonable for a legislature to think that sex offender registration and monitoring will

help prevent those convicted of child pornography possession from participating in a harmful pornography market in the future. A legislature could also reasonably believe that a sufficient correlation exists between child pornography consumption and incidents of actual sexual abuse to require all child pornography offenders to register as a class as a prophylactic measure to prevent future harm to children.

Notwithstanding the fact that there is certainly a class of individuals who may be convicted of child pornography possession and who will never again pose any risk to public safety, the legislature could decide that the difficulties in detecting most sex offenses render impracticable any attempt to distinguish those child pornography defendants who pose a risk of committing future harm against children from those who do not, thus warranting a blanket registration requirement.

The Court for similar reasons cannot conclude that it was irrational for the legislature, over the years, to extend the length of the registration requirement to twenty years and to remove the provision that might have allowed Doe early relief. The Sponsor's Memo to the 2006 SORA Amendments, which extended the minimum registration period to twenty years, explains that although SORA had "dramatically enhanced public access to information" regarding sex offenders, "still more improvements can be made to provide greater protection for New Yorkers." Sponsor's Memo, N.Y. State Assemb., A.B. 9472, S.B. 6409 (2006). The memo reflects the legislature's concern that large numbers of sex offenders would be automatically removed from the registry after ten years and concludes that "it is in the State's best interest to not allow these offenders to blend back into the public without question after ten years." Id. These concerns are not without some plausible footing in reality. Indeed, the Supreme Court in Smith cited research showing that sex offender recidivism "may occur 'as late as 20 years

following release.'" 538 U.S. at 104 (citing National Institute of Justice, R. Prentky et al., U.S.

Dep't of Justice, Child Sexual Molestation: Research Issues 14 (1997)).[1]

Particularly because SORA's level one requirements do not impose burdens significantly

more onerous than those generally incidental to a public record of conviction, discussed further

below, the Court is unable to find a substantive due process violation in this case. Summary

judgment is granted to defendants.

## V.  Procedural Due Process Claim

Doe asserts a procedural due process challenge, although he all but concedes that the

relevant case law forecloses it.  Doe was subject to SORA when he pled guilty to possession of

child pornography in 1999, and his risk level was assessed by stipulation.  He does not contend

that any aspect of his initial registration was procedurally deficient (Tr. at 6-7); he argues instead

that subsequent amendments to SORA—extending his registration period to ten and then to

twenty years with no possibility of early relief—have deprived him of procedural due process.

An analysis of a procedural due process claim proceeds in two steps: "the first asks

whether there exists a liberty or property interest which has been interfered with by the State; the

second examines whether the procedures attendant upon that deprivation were constitutionally

sufficient." Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (internal citations

omitted); see Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994).

As Doe points out, a number of courts, including those in this district, have found that the

fact of inclusion in a state sex offender registry implicates a liberty interest. See, e.g. Woe v.

Spitzer, 571 F. Supp. 2d 382, 388 (E.D.N.Y. 2008); Doe v. Pataki, 3 F. Supp. 2d 456, 467-68

---

[1] It also was clearly permissible for the legislature to decide that while offenders remain on the registry they should
be forbidden from engaging in one narrow type of employment that would put them in regular contact with children
and that they should not receive assistance with paying for drugs to treat erectile dysfunction.  Notably, they are not
prohibited from obtaining those drugs out-of-pocket.

(S.D.N.Y. 2008); cf. Valmonte, 18 F.3d at 1001-02 (finding that inclusion in state registry of suspected child abusers implicated protected liberty interest). A protected liberty interest in a particular length of the registration period—the relevant interest at issue here—has not, however, been similarly recognized. In fact, in 2008, after the 2006 SORA Amendments lengthening registration periods, a court in this district specifically held that there was no protected liberty interest for a level one offender in "the right to continuation of the ten year registration requirement." Woe, 571 F. Supp. 2d at 389. "The liberty interest," that court explained, "is implicated by the fact of registration, and not the length of the registration period. Plaintiff received all the process due in connection with the court's [initial] determination as to his risk level. He was not entitled to further process upon extension of the period of registration." Id. Indeed, as that court observed, the Second Circuit, in construing the settlement that arose out of the SORA litigation in the 1990s, pointedly noted that "had the case proceeded to final adjudication in favor of the Plaintiffs . . . it is extremely doubtful that the Plaintiffs would have been entitled to a judgment that prohibited the State from amending the then-current provisions concerning duration of registration and scope of community notification." Doe v. Pataki, 481 F.3d 69, 77 (2d Cir. 2007).

This Court agrees that the SORA amendments that only extend Doe's registration period do not implicate a protected liberty interest. It is the registration itself—not the length of that registration—that creates the "shame, humiliation, ostracism, loss of employment . . . and a multitude of other adverse consequences" that result in the "tangible impairment of a right in addition to the harm to reputation" that characterizes a protected liberty interest. See Doe, 3 F. Supp. 2d at 467-78. The same conclusion, therefore, must obtain for the fact that SORA no longer allows low-risk offenders to petition for early relief, the effect of which is, at most, to

27

lengthen Doe's registration period.

Even assuming that the SORA amendments implicate a liberty interest, the Supreme Court's decision in <u>Connecticut Department of Public Safety v. Doe</u>, 538 U.S. 1 (2003), forecloses any contention that Doe is entitled to further process in this case.[2]  In <u>Connecticut Department of Public Safety</u>, the Supreme Court rejected the proposition that sex offenders under Connecticut's registration law are entitled to a hearing to determine whether they are "currently dangerous" before their inclusion in the sex offender registry because their obligation to register arises solely from their conviction for a sex offense.  The Court held that

> due process does not entitle [the plaintiff] to a hearing to establish a fact that is not material under the Connecticut statute.
>
> . . . [T]he law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest. . . . [E]ven if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders—currently dangerous or not—must be publicly disclosed.

<u>Id.</u> at 7.

Like the Connecticut statute, SORA provides that all individuals convicted of enumerated sex offenses, regardless of their risk level, must register for at least twenty years.  The statute provides for an initial judicial risk assessment to place each offender into one of three risk tiers.

---

[2] In his papers, Doe argued that the procedural due process analysis in <u>Connecticut Department of Public Safety</u> does not control because the rejection of the procedural due process challenge in that case was contingent on the availability of a "procedurally safeguarded opportunity to contest" the underlying conviction, an opportunity he was not afforded because his guilty plea was "induced by false promises" that he could petition from relief from registration after a short time period. (Pl. Opp. to Motion to Dismiss at 37-38.) At oral argument, however, Doe acknowledged that he is not attempting to attack the validity of his underlying guilty plea or his risk level, but rather challenging the deprivation of additional liberty interests that occurred subsequent to his plea without sufficient due process. (Tr. at 6-7.) Given that it is the fact of conviction only that triggers the registration requirements and that registration is a collateral consequence of conviction, <u>see</u> <u>People v. Gravino</u>, 928 N.Y.3d 546, 556-58 (N.Y. 2010) (agreeing with "virtually every . . . jurisdiction to address the question" that sex offender registration is a collateral consequence of a guilty plea); <u>Stephens v. United States</u>, No. 06-5386, 2007 WL 1233557, at *3 (E.D.N.Y. Apr. 25, 2007); <u>see also</u> <u>Davis v. Nassau County</u>, 524 F. Supp. 2d 182, 188 (E.D.N.Y. 2007); <u>cf.</u> <u>Smith</u>, 538 U.S. at 96 (observing that alerting convicted offenders to civil consequences of conduct during pleas is merely a way to apprise individuals of their responsibilities and ensure compliance), the Court understands this argument to be challenging the retroactive application of reporting requirements that did not exist at the time of his plea. As such, the Court analyzes it as part of his Ex Post Facto and Double Jeopardy claims, discussed below.

28

But even those placed at the lowest possible risk level now have a twenty-year duty to register. Accordingly, although Doe may have demonstrated a lack of dangerousness at sentencing, and may continue to demonstrate a lack of dangerousness, his twenty-year duty to register is triggered only by the fact of his conviction for a sex offense. Connecticut Department of Public Safety thus dictates that he is not entitled to a hearing to determine whether he currently poses a risk to the public.

The district court in Woe similarly concluded in the alternative that:

> [e]ven assuming that Plaintiff's complaint somehow sets forth a protected liberty interest in the right to continuation of the ten year registration requirement, it is clear that the procedural amendments to SORA, passed as a result of the settlement of the Doe litigation, provide Plaintiff with all of the process that is due in connection with the determination of the risk level to be assigned.

Woe, 571 F. Supp. 2d at 389. Although the Woe Court did, as part of its discussion, also mention the (erroneous) fact that SORA allows level one offenders to petition for early relief, nothing in Woe suggests that an early relief procedure is constitutionally required, nor does the opinion consider the implications of Connecticut Department of Public Safety. This Court thus remains convinced that, even if Doe had a liberty interest at stake here, due process does not require an ongoing ability to petition for discretionary early relief from registration.

Accordingly, summary judgment is granted in favor of defendants on Doe's procedural due process claim.

## VI. Double Jeopardy & Ex Post Facto Claims

Doe argues that the amendments to SORA that took place after his plea and conviction have rendered the statute punitive and thus impermissible under both the Double Jeopardy and Ex Post Facto clauses.

Since both the Ex Post Facto and Double Jeopardy Clauses apply only to statutes

classified as punitive, the Court analyzes these two claims together. In determining whether a statute is civil or punitive, the first inquiry is one of statutory construction and legislative intent: the court "must initially ascertain whether the legislature meant the statute to establish 'civil' proceedings," Kansas v. Hendricks, 521 U.S. 346, 361 (1997). If the legislature intended to impose punishment, the court's inquiry ends. "If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, [the court] must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" Smith, 538 U.S. at 92 (quoting Hendricks, 521 U.S. at 361). Because a court must "ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. (internal quotation marks and citations omitted).

In rejecting a previous Ex Post Facto challenge to SORA, the Second Circuit has already determined that the Act, at least as it existed in 1997, did not, either intentionally or in effect, impose punishment. Doe v. Pataki, 120 F.3d 1263, 1276-86 (2d Cir. 1997). Doe asks this Court to revisit the Second Circuit's conclusions regarding the nonpunitive characterization of SORA in light of the subsequent amendments to the Act.[3] The Court, however, is not persuaded that changes to SORA have been so substantial as to warrant a new conclusion.

    1.    **Punitive Intent**

Doe argues that subsequent amendments to SORA have so transformed the version of the statute deemed nonpunitive in Doe v. Pataki that it is now clearly intended to be punitive. In Doe, the Second Circuit concluded that there was "ample evidence that the New York legislature

---

[3] Doe asks this Court to consider here the opinions of three state high courts that have found amended versions of their respective state sex offender registration laws punitive. These cases are both nonprecedential and inapposite. Most obviously, none of these cases address the statute at issue here. In addition, two cases, Ohio v. Williams, 952 N.E.2d 1108 (Ohio 2011), and Wallace v. Indiana, 905 N.E.2d 371 (Ind. 2009), find their sex offender registration laws punitive under their respective state constitutions; the third, Maine v. Letalien, 985 A.2d 4 (Me. 2009), provokes a concurrence that would the limit the basis for the decision to the more protective state constitution.

intended SORA to further nonpunitive goals." Id. at 1276. Pointing to the Act's preamble and

bill jacket, the court found that the legislature intended SORA to serve the civil purposes of

"protecting communities by notifying them of the presence of individuals who may present a

danger and enhancing law enforcement authorities' ability to fight sex crimes." Id. The court

arrived at this conclusion notwithstanding its acknowledgment that "the comments of some

legislators [during the floor debates] reveal their animosity toward, and even a desire to punish,

sex offenders." Id. at 1277. The court also found that "the Act's text and core structural features

reasonably bear out its nonpunitive goals." Id. at 1277. In particular, the court highlighted that

the extent of community notification was calibrated to the three different risk levels; the

notification was controlled and, in most cases, did not require affirmative dissemination of

offender information; and the statute incorporated protections against misuse of offender

information. Id. at 1277-78.

  To make his case that the Second Circuit's conclusion no longer controls, Doe first

contends that the legislature did not offer sufficient indication that it was acting with nonpunitive

intent in extending his registration period to twenty years. The legislative purpose statement for

the 2006 SORA Amendment states only that "[t]he legislature hereby finds and declares that the

length of require registration terms . . . should be increased to enhance public safety and provide

better tracking and monitoring of sex offenders." 2006 N.Y. Sess. Laws, ch. 1 § 1 (S.B. 6409,

A.B. 9472). As discussed earlier, however, the Sponsor's Memo accompanying the legislation

elaborated on the legislature's belief that a longer minimum registration period was needed for

public safety purposes and that allowing level one offenders to be removed after twenty years

would still promote rehabilitation. Sponsor's Memo, N.Y. State Assemb., A.B. 9472, S.B. 6409

(2006). In any event, although the 2006 legislative history may not offer extensive or empirical

reasons for extending the registration period, the Court cannot locate anything that undermines the Second Circuit's prior conclusion that the Act as a whole was intended to be nonpunitive. Certainly, the legislature's terseness is not "the 'unmistakable evidence of punitive intent' required to demonstrate punitive motivation." Doe, 120 F.3d at 1277 (quoting Flemming v. Nestor, 363 U.S. 603, 619 (1960)).

Second, Doe argues that changes to SORA's "text and core structural features" evidence a punitive intent. He points to the fact that SORA previously provided that "[f]or offenders posing a 'low' risk of re-offense, the sole method of public access to registration information is through a special 900 phone number," id. at 1278. Now, Doe points out, the phone number is free to use and the statute allows (though it does not require) law enforcement to disseminate information about level one offenders to entities with vulnerable populations, who may further disseminate the information in their discretion. N.Y. Correct. Law § 168-l(6)(a). The statute also now requires law enforcement to make registry information available to certain public agencies and insurers in order to ensure that sex offenders do not receive benefits coverage for erectile dysfunction drugs; and to social networking sites in order to allow those sites to screen sex offenders from their services. Id. § 168-b(2), (10).

The Court again concludes that these changes are not substantial enough to alter the Second Circuit's determination of nonpunitive legislative intent. SORA at the time the Second Circuit decided Doe v. Pataki already authorized affirmative disclosure of information regarding level two and three offenders to entities with vulnerable populations. The court found that even in such a case, the dissemination of information reflected a nonpunitive purpose because "the scope of notification is limited." 120 F.3d at 1278. The disclosure of information currently authorized under SORA regarding level one offenders like Doe continues to be very limited in its

32

extent. It still remains the case, for example, that SORA does not require "affirmative dissemination" of information regarding any offenders "to neighbors, employers, landlords, or news agencies." Id. The Second Circuit also noted that nonpunitive intent manifested in SORA's protections against misuse of registration information. See id. The statute in its current form retains all the protections against misuse: callers to the registry telephone number must provide their own name, phone number, and address; must provide specific identifying information of the individual about whom they are inquiring; and are warned that it is illegal to use registry information to commit a crime or engage in illegal discrimination. N.Y. Correct. Law § 168-p(1),(2). The statute, moreover, still imposes fines on unauthorized use of the internet directory information and allows for injunctive actions against such misuses, id. § 168-q(2), and the unauthorized release of offender information is still punishable as a misdemeanor, id. § 168-u. In sum, neither the incremental expansions to community notification for level one offenders nor the removal of a user fee for the DCJS phone number are indicative of a new punitive intent.

Finally, although the Doe Court did note in its discussion that SORA at that time allowed offenders to "petition to be relieved from [the statute's] burdens," 120 F.3d at 1278, this Court does not understand that feature to have been central to the court's analysis of legislative intent. Indeed, the Alaska sex offender registration law that the Supreme Court analyzed in Smith required low-risk offenders to register for fifteen years and higher risk offenders to register for life, Smith, 538 U.S. at 90, with no possibility for early discretionary relief, id. at 117 (Ginsburg, J. dissenting). The Court nonetheless determined that the statute reflected a nonpunitive intent. Id. at 93-96. Thus, this Court cannot conclude that the New York legislature's decision to extend Doe's registration period to a mandatory twenty years reveals a punitive intent that escaped the

Second Circuit in Doe.[4] See Woe, 571 F. Supp. 2d at 388 ("Plaintiff cannot argue that extension of the period of registration from ten to twenty years constitutes a constitutionally impermissible ex post facto punishment.").

### 2.  Punitive Effect

Doe also contends that the amendments to SORA render the statute in its current incarnation punitive in effect.

As discussed above, where, as here, the legislature intended to create a civil regulatory scheme, "only the clearest proof" of an Act's punitive effect will serve to negate the legislature's intent and transform the Act into a criminal penalty. Smith, 538 U.S. at 92 (internal quotation marks omitted).  In analyzing the effects of a statute, the Supreme Court has instructed courts to consider as "useful guideposts":

> whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose.

Smith, 538 U.S. at 97 (citing Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).

The sex offender registration statute the Supreme Court upheld against an ex post facto challenge in Smith provides a useful comparison for this analysis.  The current version of SORA contains only the following provisions that were not present (or harsher) in that statute: (1) low risk offenders like Doe must register for a mandatory period of twenty years (as opposed to fifteen in Smith); (2) low-risk offenders like Doe must appear in person every three years to be photographed; (3) all offenders are barred from a single profession (working on an ice-cream truck); and (4) all offenders are forbidden from obtaining insurance benefits for erectile

---

[4] For the same reason, the Court rejects Doe's suggestion that the elimination of the possibility of early discretionary relief renders SORA punitive in effect.

dysfunction treatments.  Importantly, the statute in <u>Smith</u> made <u>all</u> offenders' registration
information available to the public on a website, while SORA does not.  538 U.S. at 91.  The
Court will consider whether, using the guideposts above, these points of distinction warrant a
departure from the conclusion in <u>Smith</u>.

     The Court turns first to whether the SORA provisions not present in the <u>Smith</u> statute
have "been regarded in our history and traditions as punishment."  The <u>Smith</u> Court has already
rejected historical arguments comparing sex offender registries to public shaming punishments,
and this Court must therefore do the same.  538 U.S. at 97-99.

     Next, the Court considers whether the new SORA provisions "impose[] an affirmative
disability or restraint."  Although the in-person reporting requirement and the minor restrictions
on employment and health insurance provide some evidence of "affirmative disabilities or
restraints" not present in <u>Smith</u>, SORA's limitations can hardly be called burdensome or
compared to the sanctions of probation or parole.  Indeed in <u>Doe</u>, the Second Circuit concluded
that SORA's requirement that "sexually violent predators" register in person <u>every ninety days</u>,
while "onerous," was not "sufficiently severe to transform an otherwise nonpunitive measure
into a punitive one."  <u>Doe</u>, 120 F.3d at 1285; <u>see also</u> <u>Hatton v. Bonner</u>, 356 F.3d 955, 964 (9th
Cir. 2004) ("It is true that, unlike the Alaska statute [in <u>Smith</u>], § 290 requires Petitioner to
register in person.  Although this fact is important, when balanced against the other facts
highlighted above, it is simply not enough to turn § 290 into an affirmative disability or
restraint.").  The Supreme Court, moreover, has already held in prior cases that occupational
debarment based on the fact of conviction is nonpunitive.  <u>Smith</u>, 538 U.S. at 100 (citing <u>De
Veau v. Braisted</u>, 363 U.S. 144 (1960); <u>Hawker v. New York</u>, 170 U.S. 189 (1898)).  Here, Doe
is barred from engaging in one very specific form of an employment—working on an ice cream

truck—and he does not even allege that he previously worked in this profession or has any desire to do so in the future. (See Tr. at 30.) The Court therefore concludes that SORA does not impose affirmative restraints that are sufficient to render it punitive.

Although not core to his claim, the Court also notes that Doe cursorily argues that SORA's notification provisions may have negative consequences that rise to a punitive level. He suggests that SORA may allow law enforcement officials to disseminate misleading information about offenders, dissemination with potentially disabling effects. This assertion is purely speculative, and Doe does not claim that incorrect information about his conviction has ever been shared. (See Pl. Opp. Motion to Dismiss, at 16.) As for whether public notification generally results in disabling effects of a punitive character, the Smith Court found that although registered sex offenders may face significant obstacles in society, those consequences "flow not from the Act's registration and dissemination provisions but from the fact of conviction, already a matter of public record." 538 U.S. at 101; see also Doe, 120 F.3d at 1281 (distinguishing those consequences actually imposed by SORA from other "unfortunate incidents that have occurred in the aftermath of notification" in concluding that notification is not punitive). As the Court observed, the process whereby individuals can obtain information about sex offenders on the public website is thus "analogous to a visit to an official archive." Smith, 538 U.S. at 99. The Court further noted that "[l]andlords and employers could conduct background checks on the criminal records of prospective employees or tenants even with the Act not in force." Id. at 100. In light of Smith, therefore, and the additional fact that under SORA level one offenders are not even displayed on the state's public website, Doe fails to convince the Court that SORA's notification provisions cause effects that are sufficiently independent from his public record of conviction such that they might be considered punitive. See Doe, 120 F.3d at 1282 ("[T]he fact

that the Act permits entities with vulnerable populations to disseminate, at their discretion, information they receive from local law enforcement authorities does not weigh heavily toward rendering it punitive.").

In considering the third guide post, the Court finds that although SORA—with and without its subsequent amendments—clearly means to promote deterrence, a traditional aim of punishment, this fact alone cannot render it punitive.  As the <u>Smith</u> Court observed, "[a]ny number of governmental programs might deter crime without imposing punishment."  <u>Id.</u> at 102.

With respect to the fourth guidepost, the <u>Smith</u> Court emphasized that the statute's "rational connection to a nonpunitive purpose is a 'most significant' factor in [the] determination that the statute's effects are not punitive."  538 U.S. at 102 (quoting <u>United States v. Ursery</u>, 518 U.S. 267, 290 (1996)).  As this Court has already explained in its substantive due process discussion, the statute here meets this rational connection standard.

Finally, the Court cannot conclude that the few additional restrictions present in SORA but not in the statute considered in <u>Smith</u> render SORA "excessive in relation to its regulatory purpose."  <u>Id.</u> at 103.  Doe argues that SORA is excessive because he must continue to register despite his low-risk status and without regard to actual dangerousness.  But as the <u>Smith</u> Court emphasized:

> The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. . . . The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment . . . .

<u>Id.</u> at 103-04; <u>see</u> <u>Hawker</u>, 170 U.S. at 197 ("Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character.  But the legislature has power in cases of this kind to make a rule of universal application . . . .").  The

Supreme Court has squarely rejected arguments that applying registration laws to "all convicted sex offenders," allowing general public access to the registry, or requiring up to lifelong registration are excessive. <u>Smith</u>, 538 U.S. at 104-05. Doe's arguments based on lesser burdens must therefore fail.

The Court thus finds that Doe has also failed to provide "the clearest proof" that amendments to SORA render it punitive in effect. <u>Smith</u>, 538 U.S. at 105. Accordingly, because the Court finds that SORA remains nonpunitive in both its intent and effects, defendants are entitled to summary judgment on the Ex Post Facto and Double Jeopardy claims.

## VII.   Equal Protection Claim

Doe argues that SORA violates equal protection, drawing inspiration from Justice Souter's concurrence in <u>Connecticut Department of Public Safety</u>, which suggests that "[t]he line drawn by the legislature between offenders who are sensibly considered eligible to seek discretionary relief from the courts and those who are not is, like all legislative choices affecting individual rights, open to challenge under the Equal Protection Clause." 538 U.S. 1, 10 (2003) (Souter, J., concurring). Defendants contend that the classification at issue is subject only to rational basis review, a standard which SORA easily meets.

SORA currently provides that a narrow class of offenders—those convicted under subdivision two, three, or four of Penal Law § 250.45, or of an attempt to violate those provisions—are required to register as sex offenders "unless upon motion by the defendant, the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that registration would be unduly harsh and inappropriate." N.Y. Correct. Law § 168-a(2)(e). The relevant section of the Penal Law implicated by this provision provides:

38

A person is guilty of unlawful surveillance in the second degree when:

2. For his or her own, or another person's sexual arousal or sexual gratification, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record a person dressing or undressing or the sexual or other intimate parts of such person at a place and time when such person has a reasonable expectation of privacy, without such person's knowledge or consent; or

3. (a) For no legitimate purpose, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record a person in a bedroom, changing room, fitting room, restroom, toilet, bathroom, washroom, shower or any room assigned to guests or patrons in a motel, hotel or inn, without such person's knowledge or consent.

(b) For the purposes of this subdivision, when a person uses or installs, or permits the utilization or installation of an imaging device in a bedroom, changing room, fitting room, restroom, toilet, bathroom, washroom, shower or any room assigned to guests or patrons in a hotel, motel or inn, there is a rebuttable presumption that such person did so for no legitimate purpose; or

4. Without the knowledge or consent of a person, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record, under the clothing being worn by such person, the sexual or other intimate parts of such person.

Thus, a defendant convicted under one of these provisions is entitled to seek an initial exemption from SORA registration, while all other offenders convicted of an enumerated SORA offense are automatically subject to registration for at least twenty years. In Doe's view, this aspect of SORA establishes that "secretly _making_ pornography against a person's will is not enough to trigger automatic placement on the registry, but _attempting_ to possess child pornography is sufficient." (Pl. Opp. to Motion to Dismiss at 60.)

Analysis of an equal protection claim begins by ascertaining the appropriate level of scrutiny. _See_ Hayden v. Patterson, 594 F.3d 150, 170 (2d Cir. 2010). Because courts "must grant substantial latitude to legislatures 'to establish classifications that roughly approximate the nature of the problem perceived,'" courts will uphold legislation under the Equal Protection

Clause "so long as the classification at issue bears some rational relationship to a legitimate state interest." Id. at 169 (citing Pyler v. Doe, 457 U.S. 202, 216-17 (1982); Schweiker v. Wilson, 450 U.S. 221, 230 (1981)). Only "where a suspect class or fundamental right is at issue in the classification" will the court apply a heightened level of scrutiny. Id.

As Doe acknowledges, courts have already held that distinctions drawn between individuals convicted of different offenses are not suspect classifications, see Roe v. Marcotte, 193 F.3d 72, 82 (2d Cir. 1999) (claim by sex offender challenging "classification based on the nature of his offense" subject to rational basis review), and that convicted sex offenders are not a suspect class, see Selah v. Goord, No. 04 CIV 3273, 2006 WL 2051402, at *6 (S.D.N.Y. July 25, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened equal protection scrutiny."). Accordingly, Doe's challenge to the classification drawn by SORA is subject only to the highly deferential rational basis review. The Court has already elaborated on the rational basis standard in its substantive due process analysis and incorporates those legal principles here. See Zalewska v. County of Sullivan, N.Y., 316 F.3d 314, 323 (2d Cir. 2003) (concluding that legislation that meets rational basis test under due process likewise meets rational basis review under equal protection); HBP Assocs. v. Marsh, 893 F. Supp. 271, 280 (S.D.N.Y. 1995) ("The rational basis analysis under the equal protection clause essentially tracks the arbitrary and irrational analysis under the substantive due process clause."). The question presented here is whether it was rational for the legislature, in furtherance of its aim to promote public safety, to allow offenders convicted of unlawful surveillance in the second degree to seek a judicial exemption from SORA but not to allow offenders like Doe to do so.

The law creating the crime of unlawful surveillance was first created by the New York state legislature in 2003. See 2003 N.Y. Sess. Laws, ch. 69, § 1 (A.B. 8926, S.B. 3060-B). The

40

act was called "Stephanie's Law" after a young woman whose landlord placed a hidden camera in her bedroom. This legislation also created, inter alia, Penal Law § 250.50, Unlawful Surveillance in the First Degree, which applies where the defendant "commits the crime of unlawful surveillance in the second degree and has been previously convicted within the past ten years of unlawful surveillance in the first or second degree." Finally, the act amended SORA to encompass these new offenses. Offenders convicted of unlawful surveillance in the first degree are automatically subject to SORA's registration requirements. See N.Y. Correct. Law §168-a(2)(a)(i). Those convicted of the second degree offense are the only SORA offenders who may qualify for an initial exemption. Id. § 168-a(2)(e).

    As an initial matter, it is unclear that there is even any classification relevant to Doe's challenge. As defendants point out, the narrow SORA exemption that Doe is challenging applies only to the court's initial decision at the time of conviction to certify a defendant convicted of the second degree unlawful surveillance offense as a sex offender subject to SORA. See N.Y. Correct. Law § 168-d(1) ("[U]pon conviction of any of the offenses set forth in subdivision two or three of [§ 168-a] the court shall certify that the person is a sex offender and shall include the certification in the . . . judgment of conviction, except as provided in [§ 168-a(2)(e)] . . . ). Once a defendant is so certified, nothing in § 168-a(2)(e) permits this class of offenders to seek early relief from registration duties. Doe, however, makes clear that he is not challenging his initial certification as a sex offender[5]; rather he is challenging the increased, ongoing burdens that SORA places on him, paired with his inability to petition for early relief, provisions that apply equally to all individuals certified as sex offenders subject to SORA.

    In any event, the Court believes that the legislature's carve-out for unlawful surveillance

---

[5] Indeed, any challenge to the circumstances surrounding his initial registration is time-barred. See Fowlkes v. Rodriguez, 584 F. Supp. 2d 561, 574 (E.D.N.Y. 2008) (due process challenge against the procedures used to register plaintiff as a sex offender barred by three-year limitations period).

in the second degree survives rational basis review. Subdivision four of the unlawful surveillance statute, for example, is a broad one and includes criminalization of using an imaging device to record "under the clothing" of another person without that person's knowledge or consent. This provision thus covers activities conducted in outdoor, public places. See People v. Zapata, 837 N.Y.S.2d 110, 111 (1st Dep't 2007) (probable cause existed to arrest defendant under Penal Law § 250.45(4) where officer observed him "pointing the telephoto zoom lens of his digital camera across the street at a group of girls sitting on the steps of [a museum]" and then "observed in plain view the screen of the camera showing a picture zoomed in between a girl's legs, displaying her undergarments"). The legislature could have concluded that the new criminal provision encompassed conduct that, while objectionable, was not sufficiently harmful or sufficiently demonstrative of deviant sexual urges to warrant certification as a sex offense, and thus that a judicial examination of the particular "nature and circumstances" of the crime was appropriate prior to inclusion on the registry.

A provision in the same legislation suggests another possible reason for judicial examination of the specifics of the crime. The statute expressly provides a safe harbor for

(a) law enforcement personnel engaged in the conduct of their authorized duties; (b) security system wherein a written notice is conspicuously posted on the premises stating that a video surveillance system has been installed for the purpose of security; or (c) video surveillance devices installed in such a manner that their presence is clearly and immediately obvious.

Penal Law § 250.65(1). The legislature might have concluded that businesspersons engaged in, for example, dressing room surveillance who did not "conspicuously post[]" notice of the surveillance could face potential liability under the statute but would not warrant certification as sex offenders. Although subdivision three of the section defining the crime qualifies that the surveillance must have been "for no legitimate purpose" to create liability, the fourth subdivision

does not contain this qualifier.  Notwithstanding the fact that an individual must commit culpable wrongdoing in order to be convicted under § 250.45, the legislature might have concluded that not all instances of such wrongdoing are properly characterized as sex offenses subject to SORA.

All sex offender registries require legislative line-drawing regarding the types of offenses that reflect a sufficient public risk to warrant inclusion.  While expressing no view on the legislature's decision to allow courts, in their discretion, to exempt only a narrow class of low-risk offenders from SORA's reach, the Court finds that Doe has failed to show that there is no conceivable rational basis for affording this exemption to offenders convicted of unlawful surveillance in the second degree but not to those convicted of attempted possession of child pornography.  Summary judgment is thus granted to defendants on the equal protection claim.

## VIII.  Fourth Amendment

Doe argues that SORA's requirement s that he "appear every three years to be photographed, submit ongoing information about himself, and refrain from traveling to certain parts of the state" violate his Fourth Amendment right to be free from unreasonable searches and seizures.  (Pl. Opp. to Motion to Dismiss at 61-62.)  Defendants respond that SORA's provisions simply do not implicate the Fourth Amendment, and even if they did, they would nevertheless pass constitutional muster.

In analyzing this claim, the Court must first decide whether Doe has alleged a search or seizure within the meaning of the Fourth Amendment.  If the Court determines that such a search or seizure exists, it must then decide whether it is reasonable.  See Marcotte, 193 F.3d at 77.  The Court has already concluded that any municipal residency restrictions are not properly considered in this case.  Thus, the only SORA provisions implicated by this claim are the triennial requirement that Doe appear in person to be photographed by his local law enforcement

agency and the requirement that he submit ongoing information about himself.  Neither

requirement rises to the level of a Fourth Amendment seizure.

      In making out his Fourth Amendment claim, Doe equates SORA's reporting

requirements to post-arraignment court orders that a criminal defendant, while on pre-trial

release in a pending criminal proceeding, appear in court "whenever . . . attendance [is] required"

and refrain from interstate travel.  To be sure, the Second Circuit has found such orders in certain

circumstances to be Fourth Amendment seizures.  See Murphy v. Lynn, 118 F.3d 938 (2d Cir.

1997).  It is far from clear, however, that such orders in pending criminal matters are an

appropriate analogy for SORA's requirement that a registrant have his photograph taken at a

local police station once every three years and provide periodic information updates by mail,

without any accompanying restriction on travel.  Nevertheless, even in the context of summonses

requiring a later court appearance, the Second Circuit has made clear that not all such restrictions

impose burdens that constitute a Fourth Amendment seizure.  See Burg v. Gosselin, 591 F.3d 95,

98 (2d Cir. 2010) (determining that "the issuance of a pre-arraignment, non-felony summons

requiring a later court appearance, without further restrictions, does not constitute a Fourth

Amendment seizure.).  It is the extent of the restrictions, including"[t]he number of appearances

[that] . . . bear upon whether there was a seizure."  Id.  A requirement to appear in person once

every three years solely for the purpose of taking a photograph without further restraint is in no

way comparable to the post-arraignment order resulting in eight court appearances during a

single year and forbidding interstate travel held by the Second Circuit to be a Fourth Amendment

seizure.  See Murphy, 118 F.3d at 946.

      Even if SORA's reporting requirements implicated a Fourth Amendment interest, that

intrusion would be reasonable.  As Doe asserts, where, as would be the case here, a search or

seizure is conducted without a warrant and in the absence of individualized suspicion, they are subject to the special-needs test. See Nicholas v. Goord, 430 F.3d 652, 662 (2d Cir. 2005). An analysis of whether a warrantless, suspicionless search or seizure is justified under this test proceeds in two steps: First, the court must determine whether the search or seizure serves a special need, i.e., has "as [its] immediate purpose an objective distinct from the ordinary evidence gathering associated with crime investigation," id. at 663. "'[I]nformation-seeking' searches or seizures, which respond to 'special law-enforcement concerns'" may qualify as a special need, while "those regimes aimed at 'detect[ing] evidence of ordinary criminal wrongdoing'" likely will not. Id. (quoting Illinois v. Lidster, 540 U.S. 419, 423-24 (2004)). Second, if the court finds a special need, it must then apply a balancing test that "weigh[s] that special need against the privacy intrusion it effects to determine whether it is reasonable within the meaning of the Fourth Amendment." Id. at 669.

The Second Circuit has repeatedly upheld, under the special needs test, statutes that require all individuals convicted of certain crimes (in one case, incarcerated sex offenders) to submit a blood sample for inclusion in a DNA database. See Marcotte, 193 F.3d at 77-86; see also United States v. Amerson, 483 F.3d 73 (2d Cir. 2007); Nicholas, 430 F.3d at 672. In those cases, the Second Circuit concluded that the aims of assisting law enforcement in solving past and future crimes and deterring recidivism qualified as special needs. Marcotte, 193 F.3d at 79; see Nicholas, 430 F.3d at 667; Amerson, 483 F.3d at 80-83.

Clearly, by the logic of these precedents, SORA's in-person photographing and periodic information update requirements meet the specials needs threshold. The purpose of these provisions is not to detect evidence relevant to a criminal investigation but to ensure only that the sex offender registry contains up-to-date information about each registrant and to assist in the

45

registry's general purposes of monitoring the whereabouts of convicted sex offenders and disseminating information about those offenders to certain entities. These purposes are wholly "distinct from the ordinary 'crime detection' activities associated with normal law-enforcement concerns," Nicholas, 430 F.3d at 669, and thus qualify as special needs.

Having concluded that SORA serves a special need, the Court next applies the special needs balancing test. This balancing test looks at three factors: "(1) the nature of the privacy interest involved; (2) the character and degree of the governmental intrusion; and (3) the nature and immediacy of the government's needs, and the efficacy of its policy in addressing those needs." Cassidy v. Chertoff, 471 F.3d 67, 75 (2d Cir. 2006).

That any seizure under SORA is reasonable under this balancing test is readily apparent. If the collection and maintenance of DNA records survives Fourth Amendment scrutiny, then triennial appearances for photographing and periodic information submissions by mail certainly do as well. First, the degree of intrusion on Doe's liberty is minimal: SORA requires no physical invasion, and the information captured in its reporting requirements is not particularly intrusive, especially as compared to an individual's genetic markers. The state, meanwhile, has a "strong government interest in obtaining identifying information from convicted offenders and keeping a record of such information," and SORA's reporting requirements are an effective means of obtaining that information. Nicholas, 430 F.3d at 669, 671. The balance thus clearly weighs in favor of reasonableness, a conclusion that holds true even in light of Doe's status as a misdemeanant rather than a felon.

Accordingly, summary judgment is granted to defendants on Doe's Fourth Amendment claim.

## IX. State Law Claims

Although Doe's complaint asserted claims under the New York State Constitution, his opposition brief states that after reviewing the governing case law, "plaintiff will not oppose dismissal of the claims in the Eighth Cause of Action, which are based solely on the New York State Constitution." (Pl. Opp. to Motion to Dismiss at 2 n.1.)  Accordingly, the Court deems any state law claims withdrawn.

## CONCLUSION

For the reasons stated, Doe's constitutional challenges to SORA must be rejected as a matter of law.  Summary judgment is granted to the defendants in full.  The Clerk of Court is directed to terminate all pending motions, enter judgment, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
       September 28, 2012

s/CBA

Carol Bagley Amon
Chief United States District Judge

# DECLARATION OF SERVICE

MARIA BAROUS HARTOFILIS, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

That on the 30th day of November, 2012, I caused to be served the annexed State Defendants' Notice of Motion to Dismiss the Amended Complaint, the State Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint and in Opposition to Plaintiff's Motion for a Preliminary Injunction, and the Declaration of Maria B. Hartofilis, Esq. in Support of the State Defendants' Motion to Dismiss the Amended Complaint and in Opposition to Plaintiff's Motion for a Preliminary Injunction, with Exhibits annexed thereto, upon the following named person:

> Carmel Spiteri
> c/o Gary Spartalian
> 9790 Prescott Creek Court
> Las Vegas, NV 89117-8408

pro se plaintiff, by depositing a true and correct copy thereof, properly enclosed in a pre-paid wrapper, in a post-office box regularly maintained by the government of the United States at 120 Broadway, New York, New York 10271, directed to said plaintiff at the address within the State designated by him for that purpose.

Maria Barous Hartofilis

Executed on November 30, 2012